**Jean Bearcrane**
Attorney at Law
8416 Hwy 87 East
Billings, Montana 59101
Ph:  (406) 661-2870
Email: **j_bearcrane@hotmail.com**

**Patricia S. Bangert**
Attorney at Law, LLC
3773 Cherry Creek North Drive
Suite 575
Denver, Colorado 80209
Ph: (303) 228-2175
Email: pbangertlaw@aol.com
**Attorneys for Plaintiffs**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | | |
|---|---|---|
| **EARLINE COLE**, as an individual and as personal representative of the **ESTATE OF STEVEN BEARCRANE**, **CLETUS COLE**,  as an individual and as personal representative of the ESTATE OF STEVEN BEARCRANE **PRECIOUS BEARCRANE**, minor child, **VERONICA SPRINGFIELD**, as an individual and as personal representative of the **ESTATE OF ROBERT**, **SPRINGFIELD** and **VELMA SPRINGFIELD**, minor child, Plaintiffs, v. **FEDERAL BUREAU OF INVESTIGATIONS**, **SALT LAKE FIELD OFFICE**, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **CV-09-21-BLG-RFC-CFO** <br><br> **PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS ON MOTION TO DISMISS** |

**MARTY JACKLEY,** in his official )
   capacity, )
**UNITED STATES ATTORNEYS** )
   **OFFICE FOR SOUTH DAKOTA**, )
**ERNEST WEYAND**, in his official and )
   individual capacities, and )
**MATTHEW ORAVEC**, in his individual )
   capacity, )
         Defendants. )
_____ )

Plaintiffs, by and through their undersigned attorneys, respectfully file these

objections to the Magistrate Judge's findings and recommendations on

Defendants' motion to dismiss Plaintiff's amended complaint:

# I
# INTRODUCTION

This case was brought by several Native Americans living on the Crow

Reservation against the federal government and several federal employees,

alleging violations of civil rights.  Specifically, the Plaintiffs alleged that the

federal government has failed to investigate and prosecute crimes against Native

Americans in the same manner and frequency with which it investigates and

prosecutes crimes against non-Native Americans.  Plaintiffs here have a special

and personal interest in this discrimination because: (i) they are victims of crime,

as that term is defined under the Crime Victims' Rights Act and the Victims

2

Rights and Restitution Act of 1990; (ii) they were denied benefits and other protections that are available under the crime victims acts to non-Indians; and (iii) they are personally impacted by the crime that results from the failure to adequately investigate and prosecute crimes against Native Americans.

In short, the Plaintiffs allege that the federal government has established a "separate but equal" system of law enforcement on the Crow and other reservations – a system that violates basic constitutional tenets as much as the "separate but equal" educational system did in *Brown v. Board of Education of Topeka, Kansas*.  In so establishing an inferior second-class law enforcement system on the reservations to which it originally send Indians, the government has violated the substantive due process rights of Native Americans such as Plaintiffs.

Defendants filed a motion to dismiss Plaintiffs' amended complaint.  After briefing by both sides, the Magistrate Judge issued her findings and recommendations regarding that motion.  In that decision, the Magistrate Judge dismissed all claims except Plaintiffs' claims in their capacities as personal representatives against defendant Oravec.  Plaintiffs object to those findings, as described below.  In making those objections, Plaintiffs incorporate and include their prior briefs, including document numbers 44, 51 and 52.

**II**

**OBJECTIONS AS TO STANDING**

In her findings and recommendations, the Magistrate Judge found a clear constitutional right to equal enforcement of law under *Elliot-Park v. Manglona*, 592 F3d 1003 (9th Cir. 2010).  The major issue in her decision, then, became: who, if anyone, can assert that right in this case.  The Magistrate Judge found that the Plaintiffs, in their capacity as personal representatives of crime victims Steven Bearcrane and Robert Springfield have standing to assert that right.  The Magistrate Judge, however, found that Plaintiffs do not have standing to assert that right in their individual capacities.  The Plaintiffs object to that conclusion as erroneous.

**A.    STANDING AS INDIVIDUALS: INJURY IN FACT**

The Magistrate Judge's finding that the Plaintiffs failed to show that they suffered an injury-in-fact, and, therefore lacked standing, was erroneous. Plaintiffs showed actual and concrete injury in their complaint. They showed a personal and particularized  interest that separates them from other Native Americans who suffer generalized injury from discrimination.

4

### 1.  _Standard_

"To have standing to sue in federal court, a plaintiff must allege " 'such a _personal stake_ in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." _Thomas_,  _supra,_ 572 F.3d at 760, quoting _Warth v. Seldin_, 422 U.S 490, 498-99 (1975), quoting _Baker v. Carr_, 369 U.S. 186, 204 (1962) _(emphasis added_).  A "particularized" injury is one that "affect[s] the plaintiff in a personal and individual way." _Thomas, supra,_ 572 F.3d at 760.

Because the standing issue was raised in a motion to dismiss, the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." _Thomas v. Mundel_, 572 F.3d 756, 760 (9th Cir. 2009).

### 2.  _Plaintiffs are Crime Victims_

In their complaint, Plaintiffs alleged injury from discrimination as actual crime victims.  Specifically, they are the immediate family of persons who were killed by others or who are dead under suspicious circumstances.  Congress, in the Crime Victims' Rights Act, 18 U.S.C. §3771, and, Victims Rights and Restitution Act of 1990, 42 U.S.C. §10607 (together referred to as "crime victims rights

acts"), recognized that the immediate families of crime victims suffered real

damages that demanded acknowledgment, respect and compensation.  *See, e.g.* 42

U.S.C. §10607(e)(2)(b)(The term "victim" includes spouses, parents, children and

other family members, when the primary victim is deceased).  As crime victims,

Plaintiffs suffer concrete and particularized injury from the unequal provision of

law enforcement services, specifically, they are denied the enforcement services

provided to non-Indians.  *See Elliot-Park v. Manglona*, *supra*, and *In Fajardo v.*

*County of Los Angeles*, 179 F.3d 698 (9th Cir. 1999).

> **3.** ***Plaintiffs Were Denied Benefits and Rights Afforded Non-Indian***
> ***Victims of Crimes***

In their complaint, Plaintiffs alleged a concrete injury from the unequal

provision of law enforcement services, that is the loss of monetary and other

benefits under the crime victims' rights acts.  Specifically, the crime victims'

rights acts provide benefits, such as emergency medical and social services,

protection from a suspected offenders and possible restitution and/or other

payments, as well as other services to victims.  *See, e.g.* 42 U.S.C.

§10607(e)(2)(b).  A failure to investigate and prosecute an offense against an

individual – such as the failure of defendants to investigate crimes against Indians

alleged here – deprives that person of the status as a "victim," and, thus, denies them benefits under those acts.

The Magistrate Judge ignored Plaintiffs' allegations that the failure of the FBI to investigate crimes against their relatives, and to even classify them as crimes, prevented the families of Steven Bearcrane and Robert Springfield from receiving benefits and services under the crime victims' rights acts.  For example, Plaintiffs alleged that: (i) defendant Oravec told the state crime victims compensation office that Mr. Bearcrane had caused his own death, thus making Mr. Bearcrane's close relatives ineligible for benefits and other rights afforded by federal law [Complaint, at para. 41.a.]; and (ii) because Mr. Bearcrane's death was not even classified as a crime, his mother and daughter were not afforded notifications and protections afforded under the crime victims' rights acts and had to see his killer in a local store. Complaint, at para. 51.

In the case of Robert Springfield, Plaintiffs alleged specifically that defendants failure to treat Springfield as a victim of a crime resulted in: (i) significant delays in identifying the remains of Robert Springfield, even though there was compelling evidence for the identification; and (ii) significant delays in getting a death certificate to plaintiff Veronica Springfield, thereby denying

plaintiff Springfield, and her children, including Velma Springfield, benefits and protections afforded to non-Indians under the crime victims' rights acts. *See* Complaint, at para. 52.

### 4. *Plaintiff Cole Was Treated Differently Than Other Family Members of Crime Victims*

The Magistrate Judge also failed to acknowledge the injuries incurred by Cletus Cole in pursuing the right to equal investigation and prosecution of crimes For example, in their complaint, the Plaintiffs cited to an instance in which Earline and Cletus Cole visited the FBI offices to ask about the investigation into their son's murder.  Complaint, at para. 40.a. Defendant Oravec attempted to intimidate Cletus Cole by taking Cole out of the range of office surveillance cameras and showing Cole his gun.  *Id*.  This is the kind of cognizable injury acknowledged by the Supreme Court when it found that standing could be established by a showing that a plaintiff has been "personally denied equal treatment' by challenged discriminatory conduct." U.S. v Hays, 515 U.S. 737, 743-4 (1995), citing to Allen v Wright, 468 U.S. 737, 755 (1984), quoting Heckler v. Mathews, 465 U.S. 728, 740 (1984)); *see also* Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 489-490, n. 26 (1982).

**5.**    ***Plaintiffs Are the Appropriate Parties to Challenge Racial Discrimination***

The Magistrate Judge erred when she found that Plaintiffs had alleged a constitutional violation, but had suffered injuries too generalized to establish standing.  The Supreme Court has recognized that significant harms are caused by racial classifications.  In *Hays*, for example, Justice O.Connor noted that, in general, "[t]hey threaten to stigmatize individuals by reason of their membership in a racial group and to incite racial hostility." 515 U.S at 744, citing to *Shaw v. Reno*, 509 U.S. 630, 643 (1993).

While stigmatic injury is not sufficient for standing in the abstract, when a specific plaintiff can show an injury from that discrimination, he or she may challenge it.  *See Heckler v. Mathews*, *supra,* 465 U.S. at 739-740; *Allen*, *supra,* 468 U.S. at 757, FN 22.  The harm is clearly present here, and the Plaintiffs are appropriate persons to bring the case.  As discussed above, (i) the Plaintiffs are victims of violent crime, (ii) they have been denied benefits afforded non-Indian victims because of the Defendants' refusal to investigate the deaths of their loved ones as crimes, and (iii) they have been intimidated and threatened in their quest for equal law enforcement. For these reasons, Plaintiffs assert that the Magistrate Judge erred in finding that Plaintiffs lacked standing to bring this case.

**B.**    <u>STANDING IN INDIVIDUAL CAPACITIES: CAUSATION AND REDRESSABILITY</u>

The Magistrate Judge also erred in finding that Plaintiffs' injuries were not caused by Defendants' discrimination or redressible by the Court.  In order to establish standing, the injury alleged "must be 'fairly' traceable to the challenged action, and relief from the injury must be 'likely' to follow from a favorable decision." *Allen*,  *supra,* 468 U.S.  at 751, citing to <u>*Simon v. Eastern Kentucky Welfare Rights Org.*</u>, 426 U.S. 26, 38, 41(1976).

Plaintiffs alleged in their complaint that they were denied monetary and other benefits under the crime victims acts because of the FBI's discriminatory practice of not investigating deaths of Native Americans as crimes.  This is analogous to the facts of the <u>*Heckler v. Mathews, supra*</u>, 465 U.S., at 740-741, n. 9, a case in which the male recipient of social security benefits was being denied monetary benefits allegedly on a discriminatory basis.   In that case, the Court found causation and redressability.  Likewise, a ruling that the government must investigate the deaths of Native Americans the same as crimes against non-Native Americans would remedy the discrimination that caused the denial of benefits in this case.  Further, a court ruling that the government and its agents must provide the same services to Indians as to non-Indians would eliminate the type of

intimidation suffered by Cletus Cole in pursuing an adequate investigation of his son's death.

Most significantly, Plaintiffs, as crime victims, have been personally harmed by the policy of unequal provision of law enforcement services.  There is no question that the Court may remedy constitutional violations.  In *Brown v. Board of Education of Topeka, Kansas,* 347 U.S. 483 (1954), the Supreme Court had unquestioned authority to order the Kansas School Board to stop violating the Constitution.  *In Fajardo v. County of Los Angeles*, 179 F.3d 698 (9th Cir. 1999), the Ninth Circuit found no lack of authority for the Court to proceed with a case in which plaintiffs had presented evidence that Los Angeles police had a policy of according less priority to domestic violence calls than to violent crimes not involving domestic violence.

In addition, the Magistrate Judge's finding that Plaintiffs have failed to show the connection between unequal provision of law enforcement authorities and crime on the reservations naively ignores reality.  Worse, it ignores the Plaintiffs' well-pled allegations that such a connection exists.  For example, Plaintiffs cited to testimony of Native American leaders that; (i) "The present status of Indian Country law enforcement has resulted in unsafe communities, victimization of reservation families, promoted drug trafficing, and has deterred

economic development," (ii) "In many cases, the lack of prosecution by federal and state authorities remains unexplained to Tribal leaders and the crime victims," and (iii) "The unexplained failures to prosecute serious felonies on the Reservations gives the tribal membership the impression that it is OK to commit serious crimes against Indian people on the Reservation."  *See* Complaint, at para. 24 and 25.

## C.    THIRD PARTY STANDING

The Magistrate Judge did not specifically address Plaintiffs' arguments that they have third party standing to represent the interests of Steven Bearcrane and Robert Springfield.  Rather, the Magistrate Judge simply found  Plaintiffs object to the Magistrate Judge's findings that there are no injuries in fact for the reasons discussed above.  Plaintiffs rely on their arguments in prior briefs regarding the independent issue of third party standing.

## III.
## OBJECTIONS AS TO FINDINGS ON FAILURE TO STATE A CLAIM

## A.    PLAINTIFFS STATED A BIVENS CLAIM AGAINST WEYLAND

Plaintiffs object to the Magistrate Judge's findings that they have failed to state a claim against defendant Weyand because they did not plead specific actions

on defendant Weyand's part that evidenced discriminatory motives.  In so finding, the Magistrate Judge ignored allegations from which a discriminatory motive could be inferred.  For example, the Plaintiffs alleged that: (i) both Oravec and Weyand destroyed evidence in the Bearcrane case, rather than preserving it, even though they refused to return personal belongings, saying that the belongings were needed for the on-going investigation [Complaint, at para. 30.c.]; (ii) both agents were assigned to investigate Mr. Springfield's disappearance and death [Complaint, at para. 34]; (iii) both Oravec and Weyand refused to investigate Springfield's disappearance [Complaint, at para. 35.a.]; (iv) after Mr. Springfield's body was found, defendants Oravec and Weyand failed to investigate his death, even though many witnesses were available and desired to be interviewed [Complaint, at para. 35.b.]; and (v) both Oravec and Weyand failed to positively identify the remains of Robert Springfield even though there was compelling evidence for the identification [Complaint, at para. 35.c.].  A reasonable inference could be made that Weyand acted with discriminatory motives.

**B.** **P**LAINTIFFS **S**TATED AN **E**QUAL **P**ROTECTION **C**LAIM **A**GAINST THE **FBI** AND **U.S. A**TTORNEY **O**FFICE

Plaintiffs object to the Magistrate's findings that Plaintiffs failed to state an equal protection claim against defendants FBI, Weyand in his official capacity, and U.S. Attorney's Office ("USAO").

**1.** ***Standard of Review***

The Supreme Court, in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-556  (2007), stated that there was no "probability requirement at the pleading stage."  The facts alleged in a complaint "must be enough to raise a right to relief above the speculative level," or must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 557.  The Court referred to the standard as "the plausibility standard." *Id.* at 560.

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 127 S.Ct. at 2200; *see also* *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 325 (1991).  The complaint must be construed liberally in the plaintiffs' favor, and the Court should grant plaintiffs the benefit of all inferences that can be derived from the facts alleged.  *Kowal v. MCI*

14

*Communications Corp*., 16 F.3d 1271 (C.A.D.C., 1994), *citing to Papasan v.*

*Allain*, 478 U.S. 265, 283 (1986).

While the impact and ramifications of the recent Supreme Court decision in

*Ashcroft v. Iqbal*, are still being debated, the Supreme Court made clear in that

case that Rule 8 does not require "detailed factual allegations" in a complaint. 129

S.Ct. 1937, 1949 (2009).  Rather, the Court has maintained the two-step analysis

of a well-pled complaint: first, it must accept the factual allegations contained

there as true; second, a court must then "determine whether they plausibly give

rise to an entitlement to relief." *Id.*

> **2.** **_The Plaintiffs Stated An Equal Protection Claim Against the FBI_**
> **_and Weyand_**

The Magistrate Judge failed to provide the exacting and serious review of

the Plaintiffs' complaint required by this standard when she said simply that

Plaintiffs had not convinced her that a violation occurred.  Specifically, the

Magistrate Judge seemed to find a disparate impact in law enforcement, but

refused to find that the government acted with a "discriminatory motive."  In

doing so, the Magistrate Judge overlooked the numerous facts presented by

Plaintiffs from which inferences of discriminatory motive could be drawn.

Plaintiffs made numerous allegations showing horrendous conditions on reservations resulting from lack of adequate enforcement services.  In fact, Plaintiffs cited to an admission by the United States, through its representative, of that cause and effect.  Specifically, Plaintiffs cited to the admission by John Barrasso, a United States Senator, that the federal lack of law and order on Indian reservations has led to "unacceptable" law enforcement statistics in Indian Country.  Complaint at para. 23.b.

Further, Plaintiffs cite to an admission by Senator Barrasso that the United States is well aware that it has engaged in disparate treatment of Native Americans in law enforcement, saying: "Mr. Chairman, I'm sure that you would agree that non-Indian communities would not tolerate such a low level of protection.  There is no reason that Indian communities should expect anything less than other communities in the way of law and order and public safety." Complaint at para. 25.

Reasonable inferences can certainly be made from these statements that there are discriminatory motives behind the actions of the United States. There is simply no rationale for the Magistrate Judge's ignoring the admissions of wrong-doing by defendants and refusing to draw reasonable inferences therefrom.  The

Magistrate Judge seems to want proof of discriminatory motive not required under the law.

Even if Plaintiffs did not cite to admissions of disparate treatment, the discriminatory motive found lacking by the Magistrate Judge may also be inferred from the high rate of crime in Indian Country alone. In Plaintiffs' complaint, they alleged that: (i) the most recent Bureau of Justice Statistics report showed that: (a) from 1976 to 2001 an estimated 3,738 American Indians were murdered; (b) among American Indians age 25 to 34, the rate of violent crime victimizations was more than 2½ times the rate for all persons the same age; and (c) rates of violent victimization for both males and females were higher for American Indians than for all races [Complaint, at para. 21.a.]; (ii) the highest crime rate per capita in the country occurs on Indian reservations [Complaint, at para. 21.b.]; and (iii) Native American women suffer violent crime at a rate three and a half times greater than the national average [Complaint, at para. 22.a.], and that three-fourths of Native American women have experienced some type of sexual assault in their lives [Complaint, at para. 22.b.].

As Justice O'Connor said, in _Hays_ – a case involving redistricting legislation – when a federal action is so bizarre on its face that it is 'unexplainable on grounds other than race,'" then the actions must be given strict scrutiny. 515

17

U.S. at 744.  In this case, the statistics are so outrageous that there can be no inference except discrimination on the basis of race.

Finally, Plaintiffs provided two specific examples of crimes ignored by the FBI, that is the killing of Steven Bearcrane and the death of Robert Springfield. The facts in those cases raise reasonable inferences that the FBI was driven by discriminatory motives in its refusal to investigate the crimes.  *See* Complaint, at par. 28-30, 34-35, and 40.

Thus, the Plaintiffs have alleged both discriminatory effect and discriminatory motive on the part of the FBI in their complaint.

### 3.    ***Plaintiffs Stated an Equal Protection Claim Against the USAO***

Likewise, the Plaintiffs have stated a claim for a violation of their equal protection rights on the part of the USAO for South Dakota.  For example, in their complaint, Plaintiffs alleged that: (i) between 2004 and 2007, the U.S. declined to prosecute 62 % of Indian country criminal cases referred to federal prosecutors, a statistic the U.S. Senate Committee on Indian Affairs recognizes as unacceptable [Complaint, at para. 24.a.]; (ii) Defendant U.S. Attorney's Office in South Dakota historically has a pattern and practice of declining prosecutions in cases in which the victims of those crimes are Native Americans [Complaint, at para. 44]; and

(iii) in many cases, the lack of prosecution by federal and state authorities remains unexplained to Tribal leaders and the crime victims [Complaint, at para. 24.b.]. Again, the statistics are so outrageous that there can be no inference except discrimination on the basis of race.

Like admissions as to unequal enforcement, the Magistrate Judge also overlooked Plaintiffs' allegations that the United States admitted to disparate treatment of Native Americans in prosecutions, for example, Senator John Barrasso's statements, as quoted above.   Complaint, at para. 25.  As with the claim against the FBI, Plaintiffs provided a specific example of the USAO's irrational refusal to prosecute the case of Steven Bearcrane. *See* Complaint, at paras.  47-49. Thus, the Plaintiffs have alleged both discriminatory effect and discriminatory motive on the part of the FBI in their complaint.

C. **PLAINTIFFS STATED A SUBSTANTIVE DUE PROCESS CLAIM AGAINST THE FBI AND U.S. ATTORNEY'S OFFICE**

Plaintiffs object to the Magistrate Judge's finding that they failed to state a substantive due process claim against the FBI and the USAO.  Plaintiffs agree that, generally, the government has no obligation to protect its citizens. *DeShaney v. Winnebago County Dep't of Soc. Serv.*, 489 U.S. 189, 195-97(1989). The opinion in *DeShaney,* however, set out two exceptions to the general rule: first,

19

where a governmental actor creates the danger to which a citizen is exposed; and second, where a special relationship is created between state and citizen. *See also Kennedy v. City of Ridgefield*, 411 F.3d 1134, 1142-45 (2005); *Armijo By and Through Chavez v. Wagon Mound Pub. Schools*, 159 F.3d 1253, 1260 (10th Cir.1998). When a court finds that one or both exceptions are applicable, the failure to protect is a violation of substantive due process.  *Id.*

In finding that neither exception applied here, the Magistrate Judge read *DeShaney* too narrowly.  As to the first exception, this Circuit has recognized a cause of action when the government places an individual in a worse situation than he or she would have been in had the government not acted.  In *Wood v. Ostrander*, 879 F.2d 583, 588 (9th Cir.1989), *cert. denied*, 498 U.S. 938 (1990), the Circuit applied *DeShaney's* principles to a case in which a state trooper had left a woman, Linda Wood, stranded near a military reservation that had the highest aggravated crime rate in the county. *Id.* at 586.  Wood had allegedly accepted a ride from a man who took her to a secluded area and raped her. *Id.* The Ninth Circuit held that the government's alleged misconduct – stranding Wood in a high crime area – triggered the duty to afford Wood some measure of peace and safety, and that Wood raised a triable issue of fact as to whether the government affirmatively placed her in a position of danger. *Wood*, 879 F.2d at 590.

20

As discussed in Plaintiffs' prior briefs, the United States forced tribes, including the Crow tribe, onto reservations and took away most of their authority to protect themselves. *See* Article 5 of the Treaty with the Crow Tribe, 7 Stat. 266 (it is the duty of the Chiefs to deliver wrong-doers to the U.S. Government); Article I of the Treaty Between the United States of America And the Crow Tribe of Indians, May 7, 1886, 15 Stat. 649 (bad men will be punished by the U.S. alone). In addition, the United States Supreme Court, in <u>U.S. v. Lara</u>, 541 U.S. 193, removed any discretion or ability for the Tribe to prosecute a non-Indian criminal offender, as in this case.

After having taken away the tribes' authority to protect themselves, the government imposed a second-class law enforcement scheme, in which crimes against Indians are not investigated or prosecuted in the same manner as crimes against non-Indians, on reservations, such as the Crow Reservation. In taking these actions, the United States violated Plaintiffs' substantive due process rights.

The Magistrate Judge also read the second exception in <u>*DeShaney*</u> too narrowly, holding that the exception applies only when a person is taken into custody. The gravamen of the exception is the government's action in limiting the freedom of action of a person, not the action of the government in taking that

person into custody.  *DeShaney*, 489 U.S. at 198-201.  Specifically, the Supreme

Court said:

> In the substantive due process analysis, it is the State's affirmative
> act of restraining the individual's freedom to act on his own behalf-
> through incarceration, institutionalization, or other similar restraint
> of personal liberty-which is the "deprivation of liberty" triggering the
> protections of the Due Process Clause, not its failure to act to protect
> his liberty interests against harms inflicted by other means.

Id. at 200.

For that reason, some courts have imposed a constitutional duty to protect

foster children by analogy to involuntarily institutionalized individuals. *See, Doe*

*v. New York City Dept. of Social Services*, 649 F.2d 134 (1981), *after remand*, 709

F.2d 782 (2d Cir.), *cert. denied sub nom*., *Catholic Home Bureau v. Doe*, 464 U.S.

864 (1983); *Taylor By and Through Walker v. Ledbetter*, 818 F.2d 791 (11th

Cir.1987), *cert. denied,* 489 U.S. 1065 (1989), *Nicini v. Morra*, 212 F.3d 798, 806-

809 (3rd Cir. 2000).

As discussed above, the government has taken away substantial authorities

of the tribes to protect themselves on the reservation, but has provided an

inadequate law enforcement scheme.  Under those circumstances, the second

*DeShaney* exception should apply.  Further, Plaintiffs are the appropriate persons

22

to bring a challenge for the substantive due process violations because they are

victims of crimes taking place on the reservation.

## IV.
## OBJECTIONS AS TO FINDINGS ON TRUST AND TREATY OBLIGATIONS

In their complaint, Plaintiffs alleged that the government entity defendants

violated trust and treaty obligations to Plaintiffs as members of established tribes.

The Magistrate Judge found that the Plaintiffs failed to state a claim for such

violations.  Plaintiffs object.

## A.   TRUST OBLIGATIONS

The Magistrate Judge found that Plaintiffs failed to point to a specific trust

duty owed to them.  This finding is clearly erroneous.  In their complaint,

Plaintiffs pointed to two treaties in which the federal government obligated itself

to provide law enforcement for the Crow Tribe in return for the Tribe's forfeiture

of that right – the Treaty with the Crow Tribe of 1825 (The Treaty of Friendship),

7 Stat. 266, and the Treaty Between the United States of America And the Crow

Tribe of Indians, May 7, 1886, 15 Stat. 649 (hereinafter referred to collectively as

"the treaties").  In those treaties, the federal government is obligated to punish

persons committing offenses against Native Americans "***in like manner as if the***

23

***injury had been done to a white man****.*" Article 5 of the Treaty with the Crow

Tribe, 7 Stat. 266 (emphasis added).

In fact, the Court in <u>*Gros Ventre Tribe*</u> found that similar language in

another treaty created an obligation on the part of the government:

> *Nothing in the treaties or the Grinnell Agreement gives any indication
> that Congress intended to impose such a duty on the government. For
> instance, in the Treaty with the Blackfeet, the United States agreed to
> "protect said Indians against depredations and other unlawful acts which
> white men residing in or passing through their country may commit."
> Treaty with the Blackfeet, art. 7.*

<u>*Gros Ventre Tribe v. U.S.*</u>, 469 F.3d 801, 813 (9th Cir. 2006).[1]

## B.   TREATY VIOLATIONS

The Magistrate Judge also found that Plaintiffs failed to state a claim for

violation of treaties, *first*, apparently finding that the Court cannot grant Plaintiffs

the relief they seek.  In so finding, the Magistrate Judge is confused as to the relief

---

[1] To the extent that the Magistrate Judge is arguing that there is no private
cause of action under the treaties, Plaintiffs object. The Ninth Circuit has said that
"some treaty-based rights might be cognizable on behalf of a tribe's members
[under section 1983]." *Skokomish Indian Tribe v. United States*, 410 F.3d 506,
515 (9th Cir.2005), *citing* to *United States v. Washington,* 813 F.2d 1020, 1023
(9th Cir.1987).  The Federal Court of Claims specifically denied a motion to
dismiss a claim based upon the Fort Laramie Treaty of April 29, 1868 <u>*Elk v.
United States*</u>, Fed. Cl, 05-186L (April 28, 2009), finding that the "bad man"
language supports rights in individual Native Americans. Opinion included as an
attachment to document number 51.

sought here.  Plaintiffs are not asking for a specific prosecution in a specific case.

Rather, Plaintiffs are asking that the Court order the Defendant United States

entities to comply with treaty obligations to punish persons committing offenses

against Native Americans "***in like manner as if the injury had been done to a***

***white man****."* Article 5 of the Treaty with the Crow Tribe, 7 Stat. 266 (emphasis

added).  In short, Plaintiffs are asking the Court to declare unlawful and violative

of treaties the unequal provision of legal services demonstrated in this case.

Second, the Magistrate Judge found that there has been no waiver of

sovereign immunity under the APA because there is no law to apply by a court.

That finding also is erroneous. The Administrative Procedure Act allows actions

against the Government by persons "adversely affected or aggrieved" by a final

agency action. 5 U.S.C. §§702, 704.   While there is an exception to that provision

precluding judicial review where "agency action is committed to agency discretion

by law," it is a very narrow exception."  *See* <u>Heckler v. Cheney</u>, 470 U.S. 821. 830

(1985).  Specifically, the exception applies only in those rare situations in which

there is simply no law to apply.  *Id*.

In the present case, there is law to apply – the Treaty with the Crow Tribe of

1825 (The Treaty of Friendship), 7 Stat. 266, and the Treaty Between the United

States of America And the Crow Tribe of Indians, May 7, 1886, 15 Stat. 649. In

those treaties, the federal government is obligated to provide a law enforcement system on the reservation that is equal to the system provided for non-Indians (punish persons committing offenses against Native Americans "*in like manner as if the injury had been done to a white man.*")  Plaintiffs alleged that, instead of complying with treaty obligations, the government entity defendants established an inferior, second-class system of law enforcement that injured them as crime victims.

Finally, the Magistrate Judge again falls back on the disproved contention that Plaintiffs are asking that the Government prosecute a particular individual in a case, arguing that prosecutorial decisions may not be challenged in an APA action. Again, Plaintiffs are simply asking that the Government investigate and prosecute without regard to the race of the victim, and in accordance with its obligations under the Treaties.  The Court in *Shoshone* affirms the obligation of the Government to do exactly that: " A federal attorney may not deliberately base a decision to prosecute on race, religion or the exercise of protected statutory or constitutional rights.  56 F.3d 1481, citing to *Wayte v. United States,* 470 U.S. 598, 608 (1985).  The Court also acknowledged that statutes may limit the Attorney General's discretion.   *Id*, citing to *United States v. California*, 332 U.S. 19 (1942); *Swift v. United States,* 276 U.S. 311, 331(1928).

26

Thus, the Magistrate Judge errered in finding that Plaintiffs had not stated a claim under the treaties applicable here.

## V.
## CONCLUSION

For the reasons discussed and in prior briefs, Plaintiffs respectfully request that the Court not adopt the noted findings and recommendations of the Magistrate Judge.

**DATED** this 7th day of June, 2010.

Respectfully submitted:

*/s/Patricia S. Bangert*

_____

Patricia S. Bangert

*/s/Jean Bearcrane*

_____

Jean Bearcrane
***Attorney for Plaintiffs***

27

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies that this document complies with the word limitation set forth in Local Rule 7.1(d)(2)(A).  Using the word count function of Corel WordPerfect, the number of words contained in this brief is 5,556.

Dated this 7th day of June, 2010.

*/s/Patricia S. Bangert*

_____

Patricia S. Bangert

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 7, 2010, I electronically filed the foregoing using

the CM/ECF system, with notification to the following:

SHON HASTINGS, ESQ
Assistant United States Attorney
Quentin N. Burdick United States Courthouse
655 First Avenue North - Suite 250
Fargo, ND 58102-4932
**shon.hastings@usdoj.gov**


/s/Patricia S. Bangert

_____

Patricia S. Bangert
***Attorney for Plaintiff***

29