LYNN C. JORDHEIM
Acting United States Attorney
**by SHON HASTINGS, AUSA**
Quentin N. Burdick U.S. Courthouse
655 First Avenue North, Suite 250
Fargo, ND  58102-4932
(701) 297-7400
shon.hastings@usdoj.gov
Attorney for Defendants:
USAO-SD, FBI, and FBI
employees Oravec and Weyand

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| EARLINE COLE, as an individual and as personal representative of the ESTATE OF STEVEN BEARCRANE, CLETUS COLE, as an individual and as personal representative of the ESTATE OF STEVEN BEARCRANE, PRECIOUS BEARCRANE, minor child, VERONICA SPRINGFIELD, as an individual and as personal representative of the ESTATE OF ROBERT SPRINGFIELD, and VELMA SPRINGFIELD, minor child, <br><br>           Plaintiffs,<br>   v.<br><br>FEDERAL BUREAU OF INVESTIGA-TION, Salt Lake City Field Office, UNITED STATES ATTORNEYS OFFICE FOR SOUTH DAKOTA, ERNEST WEYAND, in his individual and official capacity, and MATTHEW ORAVEC, in his individual capacity,<br><br>           Defendants. | CV-09-21-BLG-RFC-CSO<br><br>**DEFENDANTS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS AND RESPONSE TO PLAINTIFFS' OBJECTIONS** |

The United States of America, by Lynn C. Jordheim, Acting United States Attorney for the District of North Dakota, and Shon Hastings, Assistant United States Attorney, acting on behalf of the Federal Bureau of Investigation (FBI); the United States Attorney's Office for South Dakota (USAO-SD); Special Agent (SA) Ernest Weyand, in his individual and official capacity; and SA Matthew Oravec, in his individual capacity, submits these Objections to the Findings and Recommendations pursuant to 28 U.S.C. § 636, and Response to Plaintiffs' Objections.  Defendants incorporate by reference all memoranda of law in support of its Motions to Dismiss as support for these Objections and its Response to Plaintiffs' Objections.

**A.   The Personal Representatives of the Estates of Steven Bearcrane and Robert Springfield Have Not Met Their Burden of Establishing Standing to Assert Their Claims Against Defendants.**

Defendants agree with the Magistrate Judge's Article III standing analysis of the individual capacity claims.  As thoroughly discussed in the Findings and Recommendations, Plaintiffs did not allege a concrete, particularized, actual or imminent threat of injury; their alleged injuries are not traceable to the Defendants named in the Amended Complaint (<u>i.e.</u>, the chain of causation alleged by Plaintiffs is too attenuated); their alleged injuries are not redressable; and the relief Plaintiffs seek on behalf of themselves and other Native Americans living on reservations

would impermissibly infringe on the role of the Executive, contrary to the Separation of Powers Doctrine.  However, Defendants object to the Findings with regard to the claims asserted by Plaintiffs Earline and Cletus Cole, who seek relief in their capacities as Personal Representatives of the Estate of Steven Bearcrane; and Plaintiff Veronica Springfield, who seeks relief in her capacity as Personal Representative of the Estate of Robert Springfield (PRs).

    As with the individual representative claims, a favorable decision in this case would not redress the injuries alleged by the PRs.  A more thorough investigation would not guarantee that the prosecutors would present the cases to the grand jury, or charge the alleged wrongdoers with a crime.  Even if the prosecutors decided to present the cases to a grand jury, there is no guarantee that they would indict.  Even if the cases were indicted, there is no guarantee of a conviction.  Likewise, there is no guarantee that the damages Plaintiffs demand in this case would be compensable as the direct and proximate cause of the offense of conviction, thus justifying a restitution order under the Mandatory Victims' Restitution Act.  See 18 U.S.C. § 3663A.

    Further, even if Plaintiffs had alleged facts sufficient to allege a cause of action under the Equal Protection or Due Process Clause against the FBI or USAO-SD (contrary to the Findings and Recommendations and Defendants'

assertions), enjoining the FBI Agents who report to the Salt Lake City Field Office and the USAO-SD from selectively providing law enforcement and prosecution services, would not guarantee that the injuries they list in the Amended Complaint would be remedied. As noted in the Findings and Recommendations, an injunction would not address their complaints about the investigation and the decision to decline to charge a third party for conduct related to the deaths of Mr. Bearcrane or Mr. Springfield. An injunction would not guarantee a lower crime rate, or a reduction in the statistical rate of sexual assaults; it would not remedy the historical trauma allegedly caused by discrimination; it would not ensure that victims of crime will receive compensation for all the harm allegedly caused. Findings and Recommendations, Doc. 53 at 26-27. This analysis remains the same for both representative and individual capacity claims, compelling a dismissal of all claims, not just those asserted by the PRs.

    An additional barrier to redressability is the true nature of the relief sought by Plaintiffs. Plaintiffs would have this Court substitute the Court's Judgment for that of the Executive Branch of government, acting through Defendants FBI agents and the USAO-SD who exercised discretionary decisions to continue an

investigation and decline to charge the alleged wrongdoers,[1] or the Executive and Legislative Branches which allocates resources to various law enforcement priorities.  The only remedy that would truly redress Plaintiffs' complaints is an order by this Court effectively usurping the United States Attorney's prosecutorial discretion and compelling the United States Attorney to go forward and prosecute in the Bearcrane matter, <u>and</u> all other cases in which Native American victims of crime claim they were harmed, regardless of the merit of the case.  Similarly, in the case of Mr. Springfield, the Court would have to set aside the FBI's investigation as insufficient, then order the FBI to interview or re-interview certain

---

[1] The crux of Plaintiffs' Amended Complaint is that, while the FBI investigated the underlying conduct, the FBI did not investigate the conduct in the way Plaintiffs desired and that, while the USAO-SD considered the evidence to determine whether prosecution was warranted, the USAO-SD's decision not to prosecute was contrary to Plaintiffs' wishes.  In a nutshell, Plaintiffs initiated this lawsuit because they were dissatisfied with the USAO-SD's decision to decline to prosecute in the Bearcrane matter, and the FBI's decision to discontinue its investigation of the Springfield matter.

Those discretionary decisions - classic functions of the Executive Branch - are the specific, concrete, particularized, actual conduct that allegedly caused Plaintiffs' harm.  Plaintiffs' request to "enjoin" or restrict this discretion is barred by the Separation of Powers Doctrine.

The discretionary decisions to refuse to institute investigative or enforcement proceedings are likewise immune from judicial review under 5 U.S.C. § 701(a)(2).  Accordingly, Plaintiffs have not established a waiver of sovereign immunity for claims against the FBI and USAO-SD under the APA.  <u>See</u> Memo. of Law, Doc. 29 at 35-39.

witnesses, conduct new or different crime-scene analysis, identify for the FBI which evidence was deserving of weight or was credible, and ultimately direct the FBI to reach a conclusion satisfactory to the Plaintiffs and contrary to that which the FBI previously reached in this case. If Plaintiffs receive the relief they request, it appears that the FBI would also be required to reinvestigate other cases in which a Native American living on a reservation claims he/she was a victim of crime and the matter was not prosecuted.

    As acknowledged in the Findings and Recommendations, the wrongs alleged here are not within the powers of the Judiciary to redress. Findings and Recommendations, Doc. 53 at 25-26. The remedial scheme demanded would impermissibly infringe on other branches of the government, contrary to the separation of powers doctrine. <u>Roe v. City and County of San Francisco</u>, 109 F.3d 578, 586 (9th Cir. 1997); <u>Comty. for Creative Non-Violence v. Pierce</u>, 786 F.2d 1199, 1201 (D.C. Cir. 1986); <u>Inmates of Attica Corr. Facility v. Rockfeller</u>, 477 F.2d 375, 379-380 (2d Cir. 1973); Memo. of Law, Doc 29 at 12-16.

    Plaintiffs (including the PRs) claim that they are not seeking to compel a more thorough investigation or prosecution, does not further their redressability argument. By abandoning their request for a new investigation or a prosecution, Plaintiffs (including the PRs) concede that they are not seeking a remedy for a

6

specific injury personal to each of them resulting from the alleged failure to adequately investigate or prosecute. Rather, they attempt to elevate the significance of the Bearcrane and Springfield investigations by alleging that they are connected to a broad array of alleged societal harms listed in their Amended Complaint, including: the crime rate in Indian Country, unsafe communities, increased drug trafficking, lack of economic development, high suicide rates, historical trauma which severely impacts and cripples normal life activities, and lack of an organized society where public order is maintained. It is these societal wrongs that the PRs are asking this Court to address. In other words, the PRs (like the other Plaintiffs) are pursuing the interest all Native Americans have in the evenhanded administration of justice; or, more specifically, the equity and fairness in enforcement of criminal laws. However, none of those alleged wrongs constitute the individualized, particularized harm necessary to confer Article III standing to a party seeking relief in federal court. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992); Allen v. Wright, 468 U.S. 737, 751-754 (1984); McCollum v. Smith, 596 F. Supp. 165, 168-169 (D.D.C. 1984). To the contrary, they are the kind of generalized grievances more appropriately addressed by the political process. Warth v. Seldin, 422 U.S. 490, 499 (1975); Parkhurst v. Tabor, 07-2068, 2007 WL 3227305 at *4 (W.D. Ark. Oct. 30, 2007). There is no

basis to distinguish the claims made by the PRs from those asserted by the Plaintiffs in their individual capacity. Both fail to meet Article III standing. Their claims and causes of action should be dismissed.

In addition, the PRs have not shown that they are the proper party to assert a violation of a constitutional right arising from the alleged failure to investigate and prosecute crimes in Indian Country. Victims of crime, like other private citizens, lack a judicially-cognizable interest under the Equal Protection Clause, or the Due Process Clause, to secure a thorough investigation and prosecution of a third party. See Linda R. S., 410 U.S. 614, 619 (1973); Sattler v. Johnson, 857 F.2d 224, 227 (4th Cir. 1988); Mitchell v. McNeil, 487 F.3d 374, 378 (6th Cir. 2007); Memo. of Law, Doc. 29 at 6-22; Reply Br., Doc. 48 at 1-6; Supp. Br., Doc. 50. The only person who can show injury-in-fact resulting from discriminatory investigations and prosecutions, is the person who is convicted of a crime in circumstances similar to the person who was not charged or convicted. See id. As the Parkhurst court noted, there is a "distinction in standing between those prosecuted by the state and those who would urge the prosecution of others, even when the failure to prosecute is allegedly discriminatory." Parkhurst v. Tabor, 569 F.3d 861, 866 (8th Cir. 2009); Hageman v. Bates, 2007 WL 927584, at *1 (D. Mont. Mar. 23, 2007); Lawrence H. Tribe, American Constitutional Law, 124 (2d ed. 1988).

Accordingly, this Court should refrain from deciding the questions raised in the Amended Complaint because the decedents' individual rights are not implicated. Gladstone Realtors v. Vill. of Bellwood, 441 U.S. 91, 99-100 (1979) ("Even when a case falls within these constitutional boundaries, a plaintiff may still lack standing under the prudential principles by which the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim.").

In the Findings and Recommendations, the Magistrate Judge relied on Elliot-Park v. Manglona, 2010 WL 92482 (9th Cir. 2010), for the proposition that crime victims may assert a cause of action under the Equal Protection Clause in the context of this case. Defendants submit that Elliot-Park is distinguishable.

Elliot-Park is not about constitutional standing. There, the defendant police officers did not attack subject matter jurisdiction, or raise any defenses related to justiciability in their appeal. Here, Defendants submit that Plaintiffs lack constitutional standing to pursue their claims, an argument not even addressed in Elliot-Park. The question remains whether Plaintiffs "stand" in a position to enforce the duty to investigate and prosecute free from racial bias. As noted in footnote 4 of the Memorandum of Law in Support of the Motion to Dismiss,

Defendants do not suggest the exercise of a law enforcement agent's or prosecutor's discretion is unlimited, or that there can never be a remedy for a refusal to investigate or prosecute because of racial-based animus.  Memo. of Law, Doc. 29, at 29.  Both the Elliot-Park court and the United States Supreme Court have ruled that discretionary decisions may not be based on "an unjustifiable standard such as race, religion, or other arbitrary classification." United States v. Armstrong, 517 U.S. 456, 464 (1996); Elliot-Park at *2.  However, the PRs are not the proper parties to assert this claim in this case.

    Elliot-Park is distinguishable from this case for other reasons as well.  First, the Ninth Circuit in Elliot-Park did not address whether the victim of a car accident caused by a drunk driver was the proper party to enforce the police officers' duty to conduct investigations in a nondiscriminatory manner.  Instead, the court's analysis focused on whether such a duty existed, and whether the duty was "clearly established," thereby barring a qualified immunity defense.  Defendants respectfully suggest that, had the Ninth Circuit considered the authority and argument offered to this Court on the issue of Article III standing, Elliot-Park should have been dismissed.

    Even if the decision may be read to permit a victim of crime to enforce this duty by seeking damages under § 1983, Ms. Elliot-Park's experience with law

enforcement is distinguishable from Plaintiffs in this case.  In Elliot-Park, the plaintiff not only observed racial bias, she was personally treated in a discriminatory manner when the police officers "shoved her inside her car and told her to shut up and calm down."  Elliot-Park, at *1.  In this case, there are no facts supporting the inference that Mr. Bearcrane or Mr. Springfield personally experienced racial discrimination or received substandard law enforcement services because of their race.  The PRs bring their claims and causes of action based on conduct they did not observe and investigations and prosecutions in which they did not participate.  The facts are not analogous.

The PRs have not met their burden of establishing constitutional standing.  The claim against SA Oravec, as well as the claims against the other Defendants, should be dismissed for lack of standing.[2]

---

[2] For the reasons set forth in the Supplemental Brief in Support of Defendants' Motion to Dismiss, the Plaintiffs' claims that they have standing to pursue a cause of action against the USAO-SD are even less persuasive than those asserted against the FBI and its agents.  Elliot-Park does not affect the long-standing principle that victims do not have a judicially-cognizable interest in the prosecution or non-prosecution of another.  Linda R. S., 410 U.S. at 619; Sattler, 857 F.2d at 227; Castle Rock v. Gonzales, 545 U.S. 748, 768 (2005).

## B. The Amended Complaint Does Not Allege Facts Sufficient to State a Claim for Relief Against SA Oravec.

The USAO-SD, the FBI and Ernest Weyand agree that Plaintiffs failed to state a claim against SA Weyand and the federal agencies sufficient to withstand scrutiny under Rules 8 and 12.  However, SA Oravec objects to the Findings and Recommendations because the PRs failed to allege facts against him sufficient to meet Rule 8 pleading standards under Iqbal.  Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  SA Oravec submits that the allegations against him do not infer, let alone establish, that he conducted an inadequate investigation based on the race of the victims.

For example, with regard to the investigation of Mr. Bearcrane's death, Plaintiffs do not even allege facts sufficient to infer that the FBI's investigation was inadequate.  See Memo. of Law, Doc. 29 at 27-41.  The Coles did not show that there was information gathered by the FBI that would have been sufficient to charge manslaughter or to refute a claim of self-defense.  They allege that "there is no evidence that the FBI performed or used common investigative tests and data gathering," but offer no facts to support this conclusory statement.  A. Compl., Doc. 21 at 14.  Even if the PRs had alleged facts sufficient to infer that a criminal case could have been brought, they have not offered any evidence inferring that

12

SA Oravec intentionally refused to gather this information based on the victim's race. A conclusory statement about intent is not sufficient to meet this burden.

In addition, the allegations pertaining to the attempt to intimidate the Coles, or preclude them from making a claim for victims' compensation, did not stop the Coles from asserting their rights or making a claim for compensation, or prevent them from accessing the courts. Therefore, even if these claims were true -- which the defendants do not concede -- they would not be sufficient to show harm to the Coles.

More importantly, the Bearcrane matter was not a case in which the investigators sat on their hands. To the contrary, they investigated the matter and referred it to the USAO-SD. A. Compl., Doc. 21 at 20-22. Plaintiffs have not offered any facts suggesting that SA Oravec deliberately withheld evidence from the prosecutors who exercised the discretion to decline the case, or that he was motivated by racial bias to influence the USAO-SD's declination. The PRs allegation that SA Oravec destroyed evidence is not only unsubstantiated, it is free from any inference of racial animus. The PRs also failed to show that similarly-situated people of other races were treated differently. Simply alleging that the person responsible for Mr. Bearcrane's death was a "non-Indian man" does not create an inference of race-based discrimination in the investigation. Likewise,

13

the congressional testimony, speeches, newspaper articles, and reports about crime in Indian Country do not create an inference that race was a motivating factor which influenced the outcome of the Bearcrane or Springfield investigations. Statements that SA Oravec did not adequately investigate, refused to adequately investigate, or deliberately hindered the investigation, without particularized facts demonstrating a violation of Plaintiff's right to Equal Protection and Due Process, are conclusory in nature and not entitled to any weight. Iqbal, 129 S. Ct. at 1949-1950 (the court is not "bound to accept as true a legal conclusion couched as a factual allegation."). Accordingly, SA Oravec maintains that the PRs failed to state a claim upon which relief may be granted against the FBI or its agents.

The Springfields also failed to plead more than threadbare claims and conclusory legal arguments. The PR provided no factual detail to support her claim against SA Oravec other than to allege that Mr. Springfield died under suspicious circumstances, he was missing for a year before his body was discovered, the FBI allegedly failed to investigate his disappearance and death, the FBI refused to return some of Mr. Springfield's remains, and the FBI failed to promptly identify the remains discovered. A. Compl., Doc. 21 at 15-16. These allegations do not show _SA Oravec's_ intent to discriminate, or otherwise deprive Mr. Springfield of his constitutional rights. They have not even alleged that SA

Oravec was responsible for, or had a duty to, make an identification of the remains or transfer a death certificate to Mr. Springfield's family.  Again, simply alleging that Mr. Springfield was Native American, and citing authorities not relevant or specifically linked to facts in the Springfield investigation, does not show that SA Oravec was motivated by racial animus to do a poor job.  The PR has not even alleged facts sufficient to infer the investigation was inadequate.  She has not established a plausible claim for the relief she seeks.  The PRs' allegations are inadequate to state a claim against SA Oravec under Rules 8 and 12 of the Federal Rules of Civil Procedure and should be dismissed.  Iqbal, 129 S. Ct. at 1949-1950.

**C.     Response to Plaintiffs' Objections.**

Defendants agree with the Findings and Recommendations except as to the analysis of Article III standing asserted by the PRs against all defendants, sovereign immunity defense analysis asserted by the FBI and USAO-SD, and the qualified immunity and fact-based analysis of claims against SA Oravec.  Each of these issues was addressed above and thoroughly briefed in docket numbers 29, 48 and 50.

In response to Plaintiffs' arguments on the other issues outlined in their objections, the defendants incorporate by reference the argument they asserted in docket numbers 29, 48 and 50.

## CONCLUSION

For the reasons set forth above, and in the Supplemental Brief, Reply Brief, and memoranda of law in support of the Defendants' Motions to Dismiss, the Defendants respectfully request this Court to dismiss the Amended Complaint because Plaintiffs do not have standing, and because the PRs failed to state a claim upon which relief may be granted against SA Oravec as well as the other Defendants named in this case.

                                            LYNN C. JORDHEIM
                                            Acting United States Attorney

Dated: <u>June 10, 2010.</u>

                                            /s/ Shon Hastings
                      By:   _____
                                            SHON HASTINGS
                                            Assistant United States Attorney
                                            Quentin N. Burdick United States Courthouse
                                            655 First Avenue North - Suite 250
                                            Fargo, ND  58102-4932
                                            (701) 297-7400
                                            N.D. Bar Board ID No. 05084
                                            Attorney for Defendants:
                                            USAO -SD, FBI, Oravec and Weyand

## **CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that these Objections to Findings and Recommendations and Response to Plaintiffs' Objections complies with the Court's word limitation set forth in Local Rule 7.1(d)(2)(A) of 6500 words. Using the word count function of Corel WordPerfect X4, the number of words contained in this brief is 3375, excluding caption and Certificates of Compliance, and of Service.

Dated this 10th day of June, 2010.

/s/ Shon Hastings
SHON HASTINGS, AUSA
Attorney for Defendants:
USAO D/SD, FBI, Oravec and Weyand

## CERTIFICATE OF SERVICE
### L.R. 5.2(b)

I hereby certify that on June 10, 2010, a copy of the foregoing document was served on the following persons by the following means:

| | |
|---|---|
| 1,2,3 | CM/ECF |
| _____ | Hand Delivery |
| _____ | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | E-Mail |

1. Clerk, United States District Court

2. Jean Bearcrane
   Attorney for Plaintiffs
   j_bearcrane@hotmail.com

3. Patricia S. Bangert
   Attorney for Plaintiffs
   pbangertlaw@aol.com


/s/ Shon Hastings
SHON HASTINGS, AUSA
Attorney for Defendants:
USAO D/SD, FBI, Oravec and Weyand