# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

EARLINE COLE, as an individual          )
and as personal representative of       )
the ESTATE OF STEVEN                    )
BEARCRANE, et al.,                      )          CV-09-21-BLG-SEH-CSO
                                        )
    Plaintiffs,     )          <u>FINDINGS AND</u>
                                        )          <u>RECOMMENDATIONS OF</u>
    v.              )          <u>U.S. MAGISTRATE JUDGE</u>
                                        )
MATTHEW ORAVEC, in his                  )
individual capacity,                    )
                                        )
    Defendant.      )
_____          )

    Plaintiffs allege that Defendant Matthew Oravec ("Oravec"), an FBI special agent, was motivated by racial animus toward Native Americans in refusing or failing to adequately investigate the death of Steven Bearcrane ("Bearcrane") and the disappearance and death of Robert Springfield ("Springfield") in violation of their equal protection rights. Plaintiffs are Bearcrane's and Springfield's Personal

1

Representatives who originally brought this action generally alleging discrimination against Native Americans. *Cmplt. (ECF 1).*[1]

All claims and Defendants have been dismissed except Plaintiffs' equal protection *Bivens*[2] claims against Oravec. *See ECFs 56 and 69.* This Court has jurisdiction under 28 U.S.C. § 1331. The matter is referred to the undersigned under 28 U.S.C. § 636(b)(1)(A)-(B). *In re: Reassignment of Pending Civil Cases (ECF 95).* Now pending is Oravec's Motion for Judgment on the Pleadings and for Partial Summary Judgment (*ECF 96*). Having heard oral argument on November 19, 2013, and having carefully considered the parties' briefs and the applicable law, the Court enters the following Findings and Recommendations.

## I.    BACKGROUND

The Court described this matter's factual background, including Plaintiffs' allegations and claims, in its Findings and Recommendations

---

[1] "ECF" refers to the document as numbered in the Court's Electronic Case Files. *See The Bluebook, A Uniform System of Citation, § 10.8.3.*

[2] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

filed on May 25, 2010. *ECF 53 at 2-9.* The Court will not repeat that information here except as necessary for clarity.

This matter's procedural background warrants more discussion. In the May 25, 2010 Findings and Recommendations, the undersigned recommended that Counts I, II, IV, and V of Plaintiffs' Amended Complaint be dismissed, and that "Count III be dismissed except as to the Personal Representatives against Defendant Matthew Oravec." *Id. at 57*.

On June 17, 2010, then-Chief Judge Cebull adopted the Findings and Recommendations in their entirety. *Order Adopting Findings and Recommendations (ECF 56) at 13.* Thus, Judge Cebull dismissed all Counts except that portion of Count III relating to the claims of the Personal Representatives against Oravec.

On August 13, 2010, Plaintiffs and Oravec appealed to the Ninth Circuit Court of Appeals. *Oravec's Notice of Appeal (ECF 59) (USCA Case Number 10-35710) and Plaintiffs' Notice of Appeal (ECF 60) (USCA Case Number 10-35717).* On October 7, 2010, the Ninth Circuit mediator issued an Order granting Plaintiffs' motion to dismiss their

appeal – USCA Case Number 10-35717 – under Fed. R. App. P. 42(b). *Order (ECF 66)*.

Respecting Oravec's appeal, on January 10, 2012, the Ninth Circuit issued an unpublished memorandum decision affirming this Court's denial of Oravec's motion to dismiss the equal protection claim against him based on qualified immunity to the extent the claim related to the investigation into Bearcrane's death. *Memorandum (ECF 69) at 2-4.* The Ninth Circuit reversed a portion of this Court's decision, however, "because the allegations made on deceased Robert Springfield's behalf are not sufficient[.]" *Id.* The court remanded to allow Plaintiffs "leave to amend their complaint with regard to the Springfield investigation." *Id. at 5*.

The Ninth Circuit later denied Oravec's petitions for panel rehearing and rehearing en banc. *Order (ECF 71) at 1-2.* It also granted Oravec's motion for a stay of the issuance of the mandate pending application for a writ of certiorari. *Order (ECF 72)*.

The United States Supreme Court denied Oravec's petition for a writ of certiorari. *Letter (ECF 75)*. The Clerk of the Ninth Circuit then

issued the formal mandate, remanding the case to this Court.  *Mandate (ECF 76).*

On February 27, 2013, the Court and counsel participated in a scheduling conference.  *ECF 81.*  On February 28, 2013, the Court issued a Scheduling Order.  *ECF 82.*

On April 11, 2013, with no objection by Oravec and having received the Court's leave, Plaintiffs filed an Amended Complaint ("Amended Complaint (Second)").[3]  *ECF 93.*  On April 25, 2013, Oravec

---

[3]The pleading is actually Plaintiffs' second Amended Complaint.  The Court will refer to the pleading as "Amended Complaint (Second)." Although, as noted above, the Court previously dismissed all counts and defendants except that portion of Count III relating to the claims of the Personal Representatives against Oravec, Plaintiffs included the dismissed claims and defendants in their Amended Complaint (Second). It is unclear why Plaintiffs did so.  If they did so to preserve the claims and defendants for appeal, it was unnecessary.  "An appeal from a final judgment draws in question all earlier, non-final orders and rulings which produced the judgment."  *Harvey v. Waldron*, 210 F.3d 1008, 1015 (9th Cir. 2000), *overruled in part on other grounds by Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) (quoting *United Ass'n of Journeymen & Apprentices v. Bechtel Constr. Co.*, 128 F.3d 1318, 1322 (9th Cir. 1997)); *see also Patchick v. Kensington Publ'g Corp.*, 743 F.2d 675, 677 (9th Cir. 1984) (per curiam) (holding that dismissal of some, but not all, of defendants who had been served with complaint is not a final order). Because, in this case, all other counts and defendants already have been dismissed, the Court will not address them further.

filed his "Answer to the Plaintiffs' Amended Complaint (Second)." *Answer (ECF 94)*.

On June 7, 2013, Oravec filed the pending "Motion for Judgment on the Pleadings and for Partial Summary Judgment." *ECF 96*. On July 29, 2013, Plaintiffs filed a "Rule 56(d) Motion for Court to Defer Consideration of Defendant's Motion for Summary Judgment and, if not Granted, for One-Week Extension." *ECF 102*. In an Order filed September 12, 2013, the Court denied Plaintiffs' motion to the extent it sought deferral of consideration of Oravec's summary judgment motion until after the close of discovery, but granted the motion to the extent Plaintiffs sought a one-week extension of time to respond to Oravec's motion. *Order (ECF 105)*. The Court set deadlines for Plaintiffs to respond to Oravec's motion and for Oravec to respond. The Court also permitted oral argument, which was held on November 19, 2013. At the conclusion of oral argument, the Court also permitted the parties to file supplemental briefs, which they did. *ECF 116* (Oravec's Supp. Br.) *and ECF 117* (Plaintiffs' Resp. to Oravec's Supp. Br.).

## II.    <u>DISCUSSION</u>

As noted, only the Personal Representatives' equal protection *Bivens* claims against Oravec in Count III remain.  *See ECF 93 at ¶¶ 10, 12, 15, 38-40, and 72-75.*  All other claims and Defendants have been dismissed.  *ECFs 56 and 69.*

In seeking dismissal of the remaining claims, Oravec advances two principal arguments.  First, respecting Plaintiffs' constitutional claims on behalf of Bearcrane ("Bearcrane claims"), Oravec seeks summary judgment under Rule 56(a)[4] arguing that the applicable statute of limitations bars the claims.  *ECF 96 at 2.*  Second, respecting Plaintiffs' constitutional claims on behalf of Robert Springfield ("Springfield claims"), Oravec seeks judgment on the pleadings under Rule 12(c).  He argues that the Amended Complaint (Second), like the first Amended Complaint found deficient by the Ninth Circuit, fails to adequately allege a Fifth Amendment equal protection violation.  *Id*.  The Court addresses each argument in turn.

---

[4]References to rules are to the Federal Rules of Civil Procedure unless otherwise indicated.

## A. Oravec's Summary Judgment Motion Respecting the Bearcrane Claims

### 1. Parties' Arguments

Oravec argues that Montana's three-year statute of limitations for personal injury actions applies to Plaintiffs' *Bivens* claims. *Oravec's Opening Br. (ECF 97) at 4-6.* He maintains that, absent any reason for tolling the limitations period, Plaintiffs were required to bring their claims within three years after their causes of action accrued. He argues that, under applicable federal law, a *Bivens* cause of action accrues when the plaintiff knows or should have known that he or she has been harmed. Because undisputed facts show that Plaintiffs knew or should have known that they were harmed more than three years before they filed this action, Oravec argues, the Bearcrane claims are barred. *Id.*

He argues specifically that the Bearcrane claims accrued when Plaintiffs suspected, or should have suspected, that racial animus, bias, or prejudice against Native Americans motivated him to conduct an inadequate investigation thus violating Bearcrane's Fifth Amendment rights. *Id. at 6.* Oravec argues that the following evidence proves

Plaintiffs' awareness, and thus accrual of their claims, more than three years before the February 24, 2009 filing of this action:

(1) throughout 2005 and 2006 after the February 2, 2005 fight during which non-Indian Bobby Holcomb ("Holcomb") shot and killed Bearcrane, Bearcrane's parents ("the Coles") visited with Oravec and his FBI supervisor to request investigation records and the Coles repeatedly told Oravec's supervisor that Oravec was failing to perform an adequate investigation, *id.*;

(2) on February 11, 2005, the Coles presented a formal request for assistance to the U.S. Commission on Civil Rights, a representative of which, in turn, wrote to the FBI seeking information on the progress and status of the FBI's investigation of the Bearcrane shooting, *id. at 7*;

(3) on October 11, 2005, the Coles formally complained to the FBI's Salt Lake City office, *id.*;

(4) also on October 11, 2005, the Coles sent a written complaint to U.S. Senator Max Baucus, in which they wrote:

> We are requesting a Congressional inquiry on the handling of the investigation of the murder of our son, Steven Thomas Bearcrane, who was shot Feb. 2, 2005. Since the day this devastating

9

> incident occured [sic] our questions remain
> unanswered by Federal Bureau of Investigation.
> We believe the initial investigation was not only
> inappropriately handled but also biased. The
> man who killed our son was never arrested or
> charged for his crime and continues to go on with
> his life.

*Id.*;

(5) on October 12, 2005, the Coles met with Assistant U.S. Attorney Mara Kohn ("Kohn"), who told them that the South Dakota U.S. Attorney's Office, which was handling the case, would not prosecute Holcomb for the shooting, *id. at 8*;

(6) the same day, Kohn annotated in the office file that the primary reason for declining to prosecute was "lack of evidence of criminal intent[,]" *id.*;

(7) on October 17, 2005, the Coles acknowledged the decision to decline to prosecute in a letter to Kohn, *id.*;

(8) in a November 2, 2005 letter Kohn responded to the Coles noting that "[n]one of the factors discussed have changed since our meeting[,]" *id.*;

(9) also on November 2, 2005, Kohn officially closed the file, *id.*; and

(10) around October 25, 2005, the Coles prepared an "Outline of Complaint Against the Federal Bureau of Investigation, Billings, Montana," noting Oravec's anti-Native American prejudice influenced his investigation and violated civil rights, *id. at 8-9.*

From the foregoing evidence, Oravec argues, Plaintiffs knew or should have known of Oravec's violation of Bearcrane's equal protection rights at least as early as October 11, 2005. *Id. at 10.* Applying Montana's three-year statute of limitations for personal injury to this *Bivens* action, Oravec argues, Plaintiffs were required to file this case by October 11, 2008. Because they filed it on February 24, 2009, Oravec argues, their claims against him are beyond the limitations period and summary judgment in his favor is appropriate. *Id.*

Plaintiffs filed two responses to Oravec's summary judgment motion. *See Bearcrane Plaintiffs' Mtn. for Court to Defer Consideration of Oravec's Summary Judgment Mtn. (ECF 102) and Bearcrane Plaintiffs' Resp. to Defendant's Mtn. for Partial Summary Judgment*

*(ECF 106)*.  In their initial response, Plaintiffs agree that a three-year limitations period applies to *Bivens* actions in Montana.  *ECF 102 at 6*.  But, they argue, summary judgment is inappropriate for two reasons.  First, Plaintiffs maintain that genuine issues of material fact exist respecting when the limitations period began.  *Id. at 6-12*.  Second, they argue that, even if the limitations period started before February of 2006, Oravec's and other's concealment of facts tolls it.  *Id. at 6, 13-17*.

Respecting their first argument, Plaintiffs contend that they did not know until after February 24, 2006, that the government prosecutor decided not to prosecute.  *Id. at 6-9*.  Their causes of action did not accrue, they argue, until: (1) the government closed the Bearcrane death case "without provision of additional law enforcement services[ ]"; and (2) they learned of the final government action – that the government would not prosecute Holcomb.  *Id. at 7-8*.  Thus, Plaintiffs argue, the operative factual question to be answered is "when did the Plaintiffs learn that the government had finally closed Bearcrane's murder without a prosecution[?]" *Id. at 9* (emphasis omitted).  Because fact issues exist respecting when they knew that the

government finally decided not to prosecute, Plaintiffs argue, summary judgment is inappropriate. *Id. at 9-10.*

Also, Plaintiffs argue, they did not know of Oravec's discriminatory investigation until after February 24, 2006. *Id. at 10-12.* They note that the FBI failed to provide them with records of Oravec's investigation until after May of 2006. *Id. at 11.* And, although they "may have had suspicions about an inadequate investigation, they did not have actual knowledge of a discriminatory investigation until they received all of the records of the investigation[,]" which was not until after May of 2006. *Id.*

Respecting their argument that the Court should toll the limitations period, Plaintiffs argue that "the government acted affirmatively to convince the Bearcrane plaintiffs that they did not have a cause of action." *Id. at 13.* They argue that the FBI delayed providing them with relevant files of Oravec's investigation, and the U.S. Attorney for South Dakota told them that the murder case was still open and that a prosecution was possible. *Id. at 13-14.* Thus, Plaintiffs argue, genuine issues of material fact exist respecting

whether the limitations period should be tolled, and summary judgment is inappropriate. *Id. at 14-15*.

In their subsequent response to Oravec's summary judgment motion, Plaintiffs again argue that genuine issues of material fact – particularly the issue of when "Plaintiffs knew that they had suffered a cognizable injury" – preclude summary judgment. *ECF 106 at 2*. They argue that: (1) the limitations began to run when Plaintiffs "knew ... that the completed investigation was inadequate; ... prosecution had been formally declined[,] ... agent Oravec had an animus toward Native Americans, ... [and] Plaintiffs did not know these things until well after February 24, 2006[,]" *id. at 4-13*; (2) even if the limitations period started to run before February 2006, it was tolled by concealment of facts by the government, *id. at 13-15*.

In reply, Oravec argues that: (1) Plaintiffs misinterpret and misapply the doctrine of claim accrual because both the prosecution declination and investigation closure date are irrelevant to claim accrual, *Oravec's Reply Br. (ECF 109) at 2-8*; (2) he is entitled to summary judgment as a matter of law because undisputed evidence

shows that Plaintiffs made repeated complaints regarding Oravec's actions and motivations in 2005, *id. at 8-11*; and (3) Plaintiffs' tolling argument fails because Plaintiffs have presented no evidence that Oravec concealed any information or documents from them and that Plaintiffs suspected Oravec was racially biased and intentionally failed to provide law enforcement services shortly after the February 2005 shooting, *id. at 12-14*.

As noted, following oral argument held on November 19, 2013, the Court permitted the parties to file supplemental briefs to address relevant testimony expected to be elicited from Plaintiff Earline Cole's upcoming deposition. Specifically, the Court permitted the parties to file supplemental briefs on the issue of the authorship of the "Outline of Complaint Against the Federal Bureau of Investigation, Billings, Montana" ("Outline"). In his supplemental brief, Oravec argues that Earline Cole testified that she wrote the Outline with her mother's help in mid-November 2005. *Oravec's Supp. Br. (ECF 116) at 2-5.* Because her testimony shows that Plaintiffs knew or should have known that their cause of action against Oravec accrued in mid-November 2005,

Oravec argues, it is barred by Montana's three-year statute of limitations applicable to *Bivens* actions and summary judgment is appropriate. *Id. at 4-5.*

Plaintiffs filed a responsive supplemental brief and filed a declaration of Earline Cole in support. *Bearcrane Plaintiffs' Resp. Br. (ECF 117)* and *Declaration of Earline Cole ("Cole Decl.") (ECF 117-1).* Plaintiffs argue that: (1) when the Outline was written, Ms. Cole was upset and emotionally distraught because law enforcement agencies had not yet produced enough evidence to warrant a prosecution of Bearcrane's killer, *id. at 2*; (2) Ms. Cole's mother, Rosie Bearcrane, "actually composed" the Outline and put things in it that Ms. Cole had not said, *id. at 3*; (3) Oravec's attorney did not ask Ms. Cole at her deposition "what she understood her mother's writing to mean[,]" *id.*; (4) Plaintiffs were excited that the FBI was joining the investigation and Cletus Cole testified that he believed the FBI would counter racism shown by the Yellowstone County Sheriff's Office because Earline Cole's sister worked for the U.S. Attorney and thus worked closely with the FBI, *id.*; (5) it was not until 2008 or later that Linda Cole revealed

that Oravec had an animus toward Native Americans, *id.*; (6) in the Outline, Rosie Cole distinguished between "bias" and "racism", *id.*; (7) in the Outline, it states that Earline Cole believed racist overtones came from the Yellowstone County Sheriff's Office and that she believed Oravec was disrespectful, rude, and disinterested in the case and was thus biased, but she did not yet believe that he was a racist, *id. at 3-4*; (8) Earline Cole did not receive the case files until the summer of 2006 and it was after that when she began to talk with other Native American families about their experiences with Oravec, *id. at 4*; (9) Oravec has produced no evidence that predates February 2006 showing that Plaintiffs accused Oravec of racism, *id. at 5*; and (10) genuine issues of material fact are present from the foregoing and render summary judgment inappropriate, *id. at 5-6*.

## 2.  **Summary Judgment Standard**

Fed. R. Civ. P. 56(a) requires the court to grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The movant bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. A moving party without the ultimate burden of persuasion at trial has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue as to any material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

trial. *Id.* at 587 (quotation omitted). In resolving a summary judgment motion, the evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citation omitted).

### 3. Analysis

In a *Bivens* action such as this one, the forum state's personal injury statute of limitations provides the applicable limitations period. *Western Center for Journalism v. Cederquist*, 235 F.3d 1153, 1156 (9th Cir. 2000) (citing *Van Strum v. Lawn*, 940 F.2d 406, 408-10 (9th Cir. 1991)). Montana's personal injury statute of limitations is three years. MCA § 27-2-204(1). Plaintiffs filed this action on February 24, 2009. *ECF 1.* Thus, absent a reason for tolling the limitations period, for their *Bivens* claim against Oravec to be timely, it must have accrued on or after February 25, 2006. The issue at hand, then, is the date on which Plaintiffs' *Bivens* claim against Oravec accrued.

"While the statute of limitations period is derived from state law, federal law determines when the statute of limitations period accrues."

*Cederquist*, 235 F.3d at 1156 (citing *Compton v. Ide*, 732 F.2d 1429, 1432 (9th Cir. 1984), abrogated on other grounds, *Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143 (1987)). "A *Bivens* claim accrues when the plaintiff knows or has reason to know of the injury." *Id*. (citing *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 761-62 (9th Cir. 1991)).

In this case, the injury about which Plaintiffs either had to know or have reason to know for their claim to accrue for limitations period purposes was the deprivation of adequate law enforcement services motivated by animus toward Native Americans. *ECF 93 at 34-36*. The critical inquiry is whether Plaintiffs knew or had reason to know of this injury before February 25, 2006. For the reasons discussed below, the Court concludes that genuine issues of material fact exists concerning this question. Thus, the Court cannot determine, as a matter of law, that Plaintiffs' *Bivens* claims are untimely. Summary judgment, therefore, is inappropriate.

It cannot reasonably be disputed that Plaintiffs were dissatisfied with law enforcement efforts aimed at investigating Bearcrane's death

shortly after it occurred and well before the three-year limitations period preceding the filing of this action. As noted above, beginning soon after the shooting from which Bearcrane died, Bearcrane's parents met with Oravec and FBI officials to complain about the adequacy of the investigation. Also, well before February 25, 2006, Plaintiffs, among other things: (1) presented a formal request for assistance to the U.S. Commission on Civil Rights, from which a representative wrote to the FBI seeking information on the status of the investigation; (2) complained to the FBI's Salt Lake City office; (3) sent a written complaint to U.S. Senator Max Baucus in which they noted the investigation appeared to them to be "biased" and "inappropriately handled[;]" (4) met with and complained to the assistant U.S. Attorney assigned to the case; and (5) prepared, with the help of Earline Cole's mother, a written Outline of a complaint against the FBI.

Plaintiffs also have expressly acknowledged that they may have had suspicions about an inadequate investigation before February 25, 2006. But the relevant inquiry before the Court is more complicated than whether Plaintiffs were merely dissatisfied with law enforcement

21

efforts in general or even with whether they vaguely suspected some sort of bias in the investigation.  Plaintiffs, as evidenced by Earline Cole's sworn declaration, maintain that "they did not have actual knowledge of a constitutionally discriminatory investigation" until later when they received all records of the investigation.  *ECF 106 at 11*.

None of the evidence upon which Oravec relies, except for the Outline of a complaint against the FBI, specifically mentions racial prejudice or animus as a possible factor contributing to Plaintiffs' dissatisfaction with the investigation.  While many of the documents mention a concern about "bias" on the part of the law enforcement agencies, that word, in the context of the content of each document, may not necessarily indicate racial bias.  And even though the letter written on Plaintiffs' behalf by the U.S. Commission of Civil Rights notes that the commission is "charged with studying issues involving discrimination or a denial of the equal protection of the laws in the administration of justice[,]" it does not allege racial discrimination or prejudice respecting the investigation.  Rather, the commission

mentions the mission with which it is charged in the context of noting that it "has no enforcement authority[.]" *ECF 98-1.*

Respecting the Outline of a complaint against the FBI, as noted above, Earline Cole stated in a sworn declaration filed as part of Plaintiffs' response to Oravec's summary judgment motion that her mother "actually composed" the document and put things in it that Earline Cole did not say. *ECF 117 at 3; ECF 117-1 at ¶ 2.*

And even if Earline Cole had written the Outline, those portions that reference possible racial overtones or prejudice, taken in context, refer to Yellowstone County Sheriff's Office and Montana Highway Patrol involvement with the response to and investigation of Bearcrane's death and failure to act on a warrant for Holcomb the day before Bearcrane's death. The Outline does not refer to racial prejudice or animus by Oravec, but rather describes Oravec as "rude," "extremely disinterested[,]" "totally apathetic[,]" "intimidat[ing,]" "disrespectful," and exhibiting an "extreme lack of overall interest." *ECF 98-5 at 2, 4.* Although the Outline states that there was strong suspicion that "the investigation was "BIASED, based on Matt Oravec's actions[,]" it

explains only that it "[s]eemed like he had his mind made up immediately." *Id. at 2.* Again, in context, the Outline does not mention racial prejudice, bias, or animus against Native Americans as affecting Oravec's motivation during the investigation. To the extent one could reasonably draw such an inference from the evidence, there is also evidence from which a jury could conclude that Plaintiffs did not suspect racial prejudice or animus against Native Americans as Oravec's motivation until sometime after February 25, 2006, and thus within the applicable limitations period.

In reaching this conclusion, the Court finds instructive the Ninth Circuit's decision in *Bibeau v. Pacific Northwest Research Foundation Inc.*, 188 F.3d 1105 (9th Cir. 1999). There, Bibeau sued decades after having been a paid participant in experiments on prison inmates designed to test the human body's responses to various experiments, including "the effect of radiation on human testicular function." *Id. at 1107.* The defendant moved for summary judgment on statute of limitations grounds, and the district court granted the motion. *Id.* In reversing the district court, the Ninth Circuit, applying the discovery

rule respecting when Bibeau had knowledge of the "critical facts" of his injury, noted that "what [a plaintiff] knew and when [he] knew it are questions of fact." *Id.* at 1108 (quoting *Simmons v. United States*, 805 F.2d 1363, 1368 (9th Cir. 1986)). In doing so, the court observed that the district court, in granting summary judgment after determining that Bibeau did not diligently investigate his injury after experiencing symptoms, failed to "specify *when* Bibeau was, or should have been, aware of the fact that he had been injured by" defendants' actions. *Id.* (emphasis in original). The Ninth Circuit, in noting "the fact-intensive nature of the issue the district court resolved in granting summary judgment[,]" observed that "[a] trier of fact could find that a reasonable person would not necessarily have connected Bibeau's symptoms to" the experiments. *Id.* at 1109.

Similarly, in the case at hand, a trier of fact reasonably could determine that Plaintiffs' initial concerns about the investigation were not necessarily attributable, at the time, to the belief they have now – that Oravec's investigation was the result of racial prejudice or animus that he had toward Native Americans. Under Rule 56(a), the Court is

not permitted to resolve genuine issues of material fact, but only to identify whether they exist. As the foregoing discussion explains, genuine issues of material fact here must be resolved by the trier of fact. Summary judgment is, therefore, inappropriate.

### B. <u>Motion for Judgment on the Pleadings – Springfield Claims</u>

#### 1. <u>Parties' Arguments</u>

Respecting Plaintiffs' Springfield claims, Oravec seeks judgment on the pleadings under Rule 12(c). As noted above, he argues generally that the Amended Complaint (Second), like the first Amended Complaint found deficient by the Ninth Circuit, fails to adequately allege a Fifth Amendment equal protection violation. He argues that it "once again fails to assert sufficient non-conclusory factual allegations to permit a plausible inference that Oravec violated Robert Springfield's Fifth Amendment right to equal protection by putting less effort into the investigation because Springfield was a member of the Crow tribe." *ECF 97 at 11*.

Specifically, Oravec argues that: (1) the Ninth Circuit previously concluded that the Springfield Plaintiffs' prior allegations were

insufficient to "demonstrate both differential treatment and discriminatory motive" by him during the Springfield investigation, *id. at 13* (citing *ECF 69 at 2, 4*); (2) despite receiving guidance from the Ninth Circuit, the Amended Complaint (Second) "is not substantially or materially different from the previous two complaints[,]" *id. at 14*; (3) the Springfield Plaintiffs again "have failed to assert sufficient relevant, non-conclusory factual allegations to allow the reasonable inference that Oravec's limited conduct during the Springfield investigation was motivated by discriminatory animus toward Native Americans, or that it was the 'but-for' cause of an inadequate investigation[,]" *id.*; (4) a comparison of the two complaints demonstrates the addition of only "a few inconsequential facts" that "fail to ... support [a] plausible inference of improper conduct[ ]" and "the bulk of the Springfield allegations ... remain unchanged[,]" *id. at 14-15*; (5) the newly-added factual allegations only "provide further description of the scene where Springfield's remains were found, which has no relevance to the question of whether Oravec was motivated by racial animus during the course of his involvement with the

27

investigation sufficient to demonstrate differential treatment and discriminatory motive[,]" *id. at 15-16*; (6) the new factual allegations are inadequate because: (a) the assertion that the FBI improperly held Springfield's remains without conducting testing is conduct that cannot be imputed to Oravec; (b) the assertion that Oravec failed to interview anyone other than Springfield's son lacks necessary specificity respecting witnesses' identities and the substance of their statements; (c) the assertion that Oravec refused to allow a local coroner access to the crime scene is not sufficient to cure the Complaint's deficiencies; and (d) the Springfield Plaintiffs' characterization of the crime scene with additional factual allegations about missing items and Springfield's clothes "sheds little light on Oravec's intent[,]" *id. at 16-17*; and (7) the Amended Complaint (Second) fails not only to allege how Oravec violated Springfield's equal protection rights but also fails to allege when he allegedly did so, *id. at 17*.

In response, the Springfield Plaintiffs advance a two-pronged argument. *Springfield Plaintiffs' Resp. to Defendant's Mtn. for Judgment on the Pleadings (ECF 101) at 4-10.* First, they argue that

they have pled sufficient factual allegations to raise a plausible claim that Oravec failed to provide law enforcement services to Springfield. *Id. at 4-8.*

Specifically, the Springfield Plaintiffs argue that they have alleged that: (1) Oravec refused to investigate Springfield's disappearance at all, *id. at 4*; (2) even after Springfield's body was found, Oravec "failed to even go through the motions of conducting an adequate investigation" even in light of facts that: (a) gun shots were heard in the mountains on the day Springfield went missing; (b) a hole that could have come from a bullet was found in the back of Springfield's hunting jacket; (c) a bow, arrow, and other items that Springfield had with him at the time he disappeared were not found with his remains; and (d) Springfield's shoes and a belt, found neatly rolled up, were found next to his remains, *id. at 5*; (3) Oravec refused to interview anyone other than Springfield's son "despite the fact that there were many possible witnesses who were available and desired to be interviewed regarding Mr. Springfield's death[,]" *id. at 5-6*; (4) the FBI lab held Springfield's remains for more than two years without

performing any testing of them, *id. at 6*; and (5) Oravec refused to allow the Big Horn County coroner to examine the site on which Springfield's remains were found or to examine the remains, *id.*

Second, the Springfield Plaintiffs argue that they have sufficiently alleged that Oravec acted out of animus toward Native Americans to create a plausible claim. *Id. at 8-10.* They argue that they have alleged that: (1) "Oravec consistently closed cases involving Indian victims without adequate investigation," *id. at 9*; (2) "Oravec has been heard to say that female Native American victims of sexual assaults were asking for assault or words to that effect[,]" *id.*; (3) in another case involving the killing of a Native American, Oravec refused to listen to a witness who indicated the killing may have been a murder and instead stated that victim had been drinking and commented "words to the effect that 'everyone knows that Indians cannot hold their liquor[,]' " *id.*; and (4) Oravec hindered investigations of crimes in which Native Americans were victims and acted to prevent them from receiving assistance and other rights afforded crime victims – for example, Oravec: (a) "actively interfered with the work of county

officials ... regarding Indian cases, including the cases of Steven Bearcrane-Cole and [Robert] Springfield[,]"; (b) failed to have Springfield's remains identified or investigated; and (c) "failed to provide plaintiff Springfield with necessary information; and delayed getting information to the local coroner so that a death certificate could be issued ... thereby denying [her] and her children ... benefits and protections available and due to them[,]" *id. at 9-10.*

For all of these reasons, the Springfield Plaintiffs argue that they have alleged sufficient facts to support a Fifth Amendment claim against Oravec. Thus, they argue, Oravec's motion should be denied.

In reply, Oravec argues that the Springfield Plaintiffs' response to his motion "merely reiterates the insufficient and conclusory allegations previously raised in the complaint that was rejected by the Ninth Circuit, and fails to remedy the deficiencies in her Amended Complaint [(Second)]." *Oravec's Reply Br. (ECF 103) at 2.* He argues that, despite the Ninth Circuit's instruction, the Springfield Plaintiffs "ha[ve] failed to include additional factual allegations that could give rise to a plausible inference that Oravec's investigation into

Springfield's death was inadequate because he was motivated by racial animus." *Id. at 3.* Thus, Oravec argues, the Amended Complaint (Second) "fails to remedy the deficiencies cited by the Ninth Circuit, and should again be dismissed." *Id.*

Oravec notes that the Springfield Plaintiffs have added some new factual allegations, but they are not sufficient. He argues that the new allegations fall into two categories – allegations regarding the scene where Springfield's remains were discovered and the subsequent treatment of his remains, and allegations regarding the Bearcrane claim that are unrelated to the Springfield investigation or to the Springfield Plaintiffs' claims. *Id. at 4.*

He argues that allegations in the first category "are irrelevant to the core issue that prompted the Ninth Circuit's decision[ ]" because "they provide no additional facts to show that Oravec 'conducted the Springfield investigation any differently than he would have conducted any other investigation.' " *Id.* Respecting the allegations in the second category, Oravec argues that they are related to the Bearcrane investigation and "[t]he Ninth Circuit's decision [that Bearcrane had

32

stated a claim but that the Springfield Plaintiffs had not] forecloses [the Springfield Plaintiffs'] attempt to piggyback [their] claim on the Bearcrane claim." *Id. at 6.*

Oravec also argues that the Springfield Plaintiffs have relied on facts previously alleged in the first Amended Complaint arguing that they have adequately alleged Oravec's discriminatory intent. But he notes that the Ninth Circuit already has considered these allegations and found them inadequate to state a *Bivens* claim against Oravec. *Id. at 6-8.* Without additional relevant allegations, Oravec argues, those previously-pled facts remain inadequate. *Id. at 8.*

Finally, Oravec argues that the Springfield Plaintiffs are asking the Court to find their factual allegations sufficient by urging it to draw unreasonable and unwarranted inferences. *Id. at 9-10.* For example, he argues, the Springfield Plaintiffs argue that the Court should infer from allegations that Oravec would not allow a county coroner to examine the site where Springfield's remains were found that Oravec interfered with the criminal investigation of another agency. Oravec

argues that this inference is unwarranted because "it is neither reasonable nor supported by the alleged fact itself." *Id.*

For all of the foregoing reasons, Oravec argues that the Court should dismiss the Springfield Plaintiffs' remaining claim, with prejudice, because they already have had an opportunity to amend yet again failed to provide additional facts to cure the deficiencies identified by the Ninth Circuit. *Id. at 11*.

### 2.  <u>Legal Standard</u>

Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  In addressing a Rule 12(c) motion, courts "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citation omitted).  Courts properly grant a Rule 12(c) motion "when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Id*. (citation omitted).

A Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Cafasso, United States ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 n.4 (9ᵗʰ Cir. 2011). Thus, the same legal standard "applies to motions brought under either rule." *Id.*

The Court may dismiss a cause of action under Rule 12(b)(6) either when it asserts a legal theory that is not cognizable as a matter of law, or when it fails to allege sufficient facts to support an otherwise cognizable legal claim. *SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9ᵗʰ Cir. 1996) (citation omitted). The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading "contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Rule 8). Although Rule 8(a)(2) does not require "detailed factual allegations[,]" a plaintiff must set forth more than bare allegations that the defendant unlawfully harmed the plaintiff. *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Id*.

Plausibility is not "probability[.]" Rather, plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Allegations which permit only an inference of the "mere possibility of misconduct" do not "show[ ] that the pleader is entitled to relief[.]" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

Applying the foregoing to the Rule 12(c) motion at hand, the Court must "assume the facts alleged in the [Amended Complaint (Second)] are true[,]" and consider whether those "factual allegations, together with all reasonable inferences, state a plausible claim for relief." *Yakima Valley Memorial Hospital v. Washington State*

*Department of Health*, 654 F.3d 919, 925 (9th Cir. 2011) (quoting

*Cafasso*, 637 F.3d at 1054).

### 3.   <u>Analysis</u>

This Court previously determined that the Springfield allegations,

although "more sparse" than the Bearcrane allegations, were sufficient

to state an equal protection claim against Oravec.  *ECF 53 at 44-45.*

The Ninth Circuit reversed, concluding that the allegations made in the

Springfield Plaintiffs' first Amended Complaint were insufficient.  The

Ninth Circuit explained as follows:

> To state a violation of equal protection, the [Springfield Plaintiffs]
> must demonstrate both differential treatment and discriminatory
> motive. ....
> [T]he amended complaint does not contain sufficient non-
> conclusory allegations of differential treatment as to the
> Springfield investigation.  There are no allegations that Oravec
> conducted the Springfield investigation any differently than he
> would have conducted any other investigation.  Even viewed
> together with the allegations of differential treatment of Native
> Americans in general, the allegations as to the Springfield
> investigation are "merely consistent with" Oravec's liability, and
> therefore "stop[ ] short of the line between possibility and
> plausibility of entitlement to relief."

*ECF 69 at 2, 4 (citations omitted).*  Thus, this Court must now examine

the Amended Complaint (Second) to determine if the Springfield

37

Plaintiffs have pled sufficient non-conclusory allegations of differential treatment as to the Springfield investigation.

Having compared the first Amended Complaint (*ECF 21-1*) found insufficient by the Ninth Circuit with the Amended Complaint (Second) (*ECF 93*) now before the Court, and applying the holding of the Ninth Circuit, the Court concludes that the Springfield Plaintiffs again have stopped short of the line between possibility and plausibility of entitlement to relief.

Most of the factual allegations respecting the Springfield claims in the first Amended Complaint remain unchanged in the Amended Complaint (Second). *Compare ECF 21-1 at ¶¶ 33, 34, 35, 35a, 40c, and 40d with ECF 93 at ¶¶ 33, 34, 35, 35a, 40c, and 40d.* The only changes or additions made to the Springfield claims are:

(1) the addition of four subsections to paragraph 35b that allege:

(a) when Springfield's remains were discovered, a "bow and arrow and some other items that Mr. Springfield had with him at the time he disappeared were not found";

(b) shoes and a "neatly rolled up" belt were found near the body;

(c) "[g]un shots were heard in the mountains on the day [he] disappeared[;]" and

(d) there was a hole in Springfield's jacket that "could have come from a bullet[,]" *ECF 93 at ¶¶ 35b (i)-(iv)*;

(2) that Oravec "refused to interview any person except Mr. Springfield's son[,]" *id. at ¶ 35c*;

(3) that "the FBI" held Springfield's remains for two years without conducting any investigatory tests on them, *id. at ¶ 35d*;

(4) that Oravec "refused" to allow the local coroner to examine the site or Springfield's remains, *id. at ¶ 35e*; and

(5) that Oravec "delayed getting information to the local coroner so that a death certificate could be issued [for his family to get] benefits and protections available and due to them[,]" *id. at ¶ 41c*.

As in the first Amended Complaint, no dates are alleged regarding when Springfield disappeared, when his remains were found, or when Oravec was involved in the FBI investigation after the remains were found. None of the additional factual details contain sufficient non-conclusory allegations of differential treatment by Oravec as to the Springfield investigation. And, the Court concludes that none of them, whether taken separately or in combination, reasonably support an inference that Oravec was motivated by animus toward Native Americans during the Springfield investigation.

First, the additional factual allegations about the site where Springfield's remains were found merely provide a few more details regarding the scene where Springfield's remains were discovered. The allegation that there was a hole in Springfield's jacket that "could have" come from a bullet is speculative and unsupported by additional fact allegations to support such speculation. The Springfield Plaintiffs urge the inference that these details made Springfield's death so suspicious that it warranted a better investigation. But that inference, even if it could be made, cannot be said to give rise to another inference – that is, that Oravec's alleged failure to adequately investigate a suspicious death was motivated by racial animus in this instance.

Second, the allegation that the FBI held Springfield's remains for two years without testing them also does not support an inference that Oravec's actions were motivated by racial animus toward Native Americans. The allegation does not implicate Oravec's conduct, but rather that of the FBI. And even if one could infer from this alleged fact that Oravec, as an investigator on the case, "did not put any rush

on obtaining [test] results" from Springfield's remains, it would not be reasonable, without more, to further infer that his failure to do so was motivated by racial animus. Additionally, similar allegations were stated in the previous complaint found to be insufficient. *See ECF 21-1 at 19 ¶ 41(c)* (alleging that Oravec "failed to positively identify the remains of Robert Springfield....").

Third, that Oravec refused to interview anyone other than Springfield's son does not give rise to an inference of differential treatment or that Oravec was motivated by racial animus. There is no allegation respecting the identities of other witnesses or the content of what they might say. Thus, the allegations are insufficient to permit an inference that Oravec's conduct was motivated by racial animus. Additionally, allegations regarding Oravec's failure to interview witnesses were stated in the previous complaint found insufficient by the Ninth Circuit. *Id. at 16, ¶ 35(b)* (alleging failure to investigate "even though many witnesses were available and desired to be interviewed").

Fourth, the allegation that Oravec refused to allow the Big Horn County coroner access to the site where Springfield's remains were found or examine the body also does not reasonably permit an inference that Oravec did so out of animus toward Native Americans. Again, similar allegations were made in the complaint previously found to be insufficient. *Id. at 18, ¶ 40(c)* (alleging that Oravec "actively interfered with the work of county officials, including the county coroner").

Similarly, the Springfield Plaintiffs' description of items found at the crime scene do not suggest that Oravec was motivated by racial animus.

The Springfield Plaintiffs' additional argument is also unavailing. They argue that they have alleged other facts that show Oravec's discriminatory intent, including that he: (1) "consistently closed cases involving Indian victims without adequate investigation, especially sexual and other assaults involving Indian children and women[,]" *ECF 101 at 9*; (2) has "been heard to say that female Native American victims of sexual assault were asking for assault or words to that effect[,]" *id.*; (3) interfered with other officials, including the county

coroner, regarding cases involving Native Americans, *id. at 9-10*; (4)

failed to have Springfield's remains identified or properly investigated,

*id. at 10*; and (5) denied Springfield's family members "benefits and

protections" by "delay[ing] getting information to the local coroner so

that a death certificate could be issued[,]" *id. at 10*.

The Court is not persuaded, however, because the Springfield

Plaintiffs included these allegations in the first Amended Complaint.

As noted, the Ninth Circuit already considered them and found them

inadequate to state a *Bivens* claim against Oravec stemming from the

Springfield investigation.  *See ECF 69 at 4.*

In sum, the Amended Complaint (Second) alleges that a Native

American man disappeared while hunting.  At some unspecified time

later, his remains were found.  The FBI and Agent Oravec allegedly did

an inadequate investigation into the disappearance.  In other

situations, the FBI and Oravec have allegedly been motivated by racial

animus toward Native Americans.  But there are no plausible non-

conclusory allegations that support an inference that Oravec engaged

in racially motivated differential treatment in this case.  To hold

otherwise would allow complaints to proceed without factual allegations that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged in the complaint. It would allow complaints to proceed where the well-pleaded facts permit only the possibility of misconduct. *Iqbal* requires more. 556 U.S. at 678.

For all of the foregoing reasons, the Court concludes, as did the Ninth Circuit in considering the first Amended Complaint, that the Springfield Plaintiffs' allegations as to the Springfield investigation in the Amended Complaint (Second) are "merely consistent with" Oravec's liability but do not "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Thus, Oravec is entitled to judgment on the pleadings.

Because the Springfield Plaintiffs already have been afforded an opportunity to amend, the Court concludes that further amendment would be futile. Accordingly, if this recommendation is adopted, dismissal of the Springfield Plaintiffs' claims should be with prejudice. *See Okwu v. McKim*, 682 F.3d 841, 844 (9th Cir. 2012) (reviewing a

district court's decision to dismiss with prejudice for abuse of discretion).

III. **CONCLUSION**

Based on the foregoing, IT IS RECOMMENDED that Oravec's motion (*ECF 96*) be DENIED to the extent he seeks partial summary judgment respecting the Bearcrane claims, but GRANTED to the extent it seeks judgment on the pleadings respecting the Springfield claims, as set forth herein.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 23rd day of January, 2014.

/s/ Carolyn S. Ostby
United States Magistrate Judge