IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

EARLINE COLE, as an individual )
and as personal representative of )
the ESTATE OF STEVEN )
BEARCRANE, et al., )          CV-09-21-BLG-SEH-CSO
)
        Plaintiffs, )          <u>FINDINGS AND</u>
)          <u>RECOMMENDATION OF</u>
        v. )          <u>U.S. MAGISTRATE JUDGE</u>
)
MATTHEW ORAVEC, in his )
individual capacity, )
)
        Defendant. )
_____ )


        Plaintiffs claim that FBI Special Agent Matthew Oravec

("Oravec"), motivated by racial animus toward Native Americans,

refused or failed to adequately investigate the death of Steven

Bearcrane ("Bearcrane") in violation of equal protection rights.  The

remaining Plaintiffs are Bearcrane's Personal Representatives who,

together with others, originally brought this action generally alleging

discrimination against Native Americans.  *Cmplt. (ECF 1).*[1]  All claims

_____

 [1]"ECF" refers to the document as numbered in the Court's Electronic
Case Files.  *See The Bluebook, A Uniform System of Citation, § 10.8.3.*

and Defendants have been dismissed except the equal protection *Bivens*[2] claim against Oravec brought by Plaintiffs Earline Cole and Cletus Cole ("the Coles") as personal representatives of the Estate of Steven Bearcrane. *See ECF 56, 69, and 122.*

Now pending is Oravec's Motion for Summary Judgment. *ECF 126.* This Court has jurisdiction under 28 U.S.C. § 1331. The matter is referred to the undersigned under 28 U.S.C. § 636(b)(1)(A)-(B). *In re: Reassignment of Pending Civil Cases (ECF 95).*

## I.  <u>BACKGROUND</u>

The Court described the pertinent factual background, including Plaintiffs' allegations and claims, in its Findings and Recommendations filed on May 25, 2010. *ECF 53 at 2-9.* The Court set forth the pertinent procedural background, up to January 23, 2014, in its Findings and Recommendations issued on that date. *ECF 119 at 3-6.* The Court will not repeat background information here except as necessary for clarity.

---

[2]*See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

## II. SUMMARY OF PARTIES' ARGUMENTS

Oravec advances two principal arguments in seeking summary judgment on the only remaining claim. First, he maintains that he is entitled to qualified immunity from liability. Second, he argues that the Coles cannot prove that he acted with a discriminatory motive, which is an essential element of an equal protection violation claim.

Respecting qualified immunity, Oravec argues that his conduct did not violate a constitutional right. *Oravec's Opening Br. (ECF 127) at 12-21*. He notes that the discriminatory acts that he is alleged to have committed occurred after Bearcrane's death. He argues that Ninth Circuit authority provides that there can be no violation of Bearcrane's constitutional rights if the alleged acts giving rise to the claimed violation occurred after Bearcrane's death. *Id at 15-20*. Thus, Oravec argues, the Coles, who are suing him solely in their capacity as personal representatives of Bearcrane's estate, cannot establish the violation of a clearly-established constitutional right. *Id*.

Next, Oravec argues that even if the Coles' claim survives the foregoing argument, he is entitled to qualified immunity "because his

particular actions violated no clearly-established right." *Id. at 21*. He argues that there is not now – and was not in 2005 when events giving rise to this action occurred – a clearly-established "standard for assessing the adequacy of police services when applying equal protection scrutiny to a homicide investigation." *Id*. (emphasis omitted). Oravec maintains that it is not enough for the Coles to allege or even offer some proof of discriminatory intent. Rather, he argues, they must show that: (1) police services provided to Bearcrane were "clearly inadequate[ ]" by either identifying "a similarly-situated person whose treatment was appreciably better than his own[ ]"; or (2) Bearcrane "was denied services otherwise made available to the general public and that the denial was due to some arbitrary or otherwise constitutionally impermissible reason." *Id. at 22-23*. Here, Oravec argues, the Coles can show neither and he is entitled to qualified immunity. *Id. at 22-32*.

Respecting Oravec's second argument for summary judgment in his favor – that the Coles "have failed to demonstrate the required discriminatory motive element necessary to prove an equal protection

violation[ ]" – Oravec argues that the Coles "rely on only conclusory allegations derived from inadmissible hearsay and rumor to prove this vital element." *Id.* Because the Coles cannot rely on inadmissible evidence to demonstrate a genuine issue of material fact, Oravec argues that he is entitled to summary judgment on the remaining claim. *Id. at 33-35*.

In response, the Coles argue that Oravec has waived reliance on qualified immunity. *Coles' Resp. Br. (ECF 132) at 30-32.* They maintain that: (1) Oravec has not timely brought this "new theory of qualified immunity" and thus is in violation of the purpose of the doctrine, which is "to prevent federal employees from going to trial on insubstantial matters[,]" *id. at 30*; (2) Oravec simply waited too long to file his summary judgment motion and thus waived qualified immunity, *id. at 30-31*; (3) allowing Oravec to again assert qualified immunity "is bad public policy[ ]" because he has raised it before and has had "ample opportunity to raise the present qualified immunity issues[,]" *id. at 31*; (4) when federal agents are allowed "to repeatedly file motions for qualified immunity [it] creates an insurmountable

barrier to citizen suits seeking to vindicate constitutional rights ...
[because] [t]he United States has unlimited funds and can file the same
motions over and over again[,]" *id*.; (5) Oravec did not need to wait until
after conducting discovery to file his motion and could have "raised the
issue of whether deceased persons, through representatives, can
vindicate constitutional violations back four years ago[,]" *id. at 32*; and
(6) Oravec could have earlier "raised the issue of whether the courts
must define an adequate investigation before a law enforcement officer
is deemed to know that he has violated equal protection provisions of
the constitution[,]" *id.*

The Coles next argue that if Oravec has not waived qualified
immunity, he nevertheless is not entitled to qualified immunity for two
reasons. First, they maintain that there was a constitutional violation
in this case. They argue that: (1) "constitutional violations may be
raised under *Bivens* by personal representatives of dead individuals[,]"
*id. at 7*; (2) Oravec cited no authority for his argument that personal
representatives have only those rights that a decedent had when alive,
*id. at 8-9*; (3) the law recognizes that "deceased persons may have

rights that can be asserted even after death[,]" such as a right not to be defamed or libeled after death, *id. at 9-10*; (4) the Ninth Circuit has not limited the definition of "person" to include only living persons – except in actions brought under 42 U.S.C. §§ 1983 and 1985 – and since this is a *Bivens* action, the exception does not apply, *id. at 10-12*; (5) *Bivens* actions "are different creatures than section 1983 cases[ ]" in that the term "person" "has a very expansive reach" under federal law, *id. at 13*; and (6) in *Bivens* cases claiming violations of the U.S. Constitution, "the vindication of the right" is more important than "the source of the challenge[,]" *id. at 13-16*.

Second, the Coles argue that the constitutional right involved in this case was clearly established at all relevant times, thus depriving Oravec of qualified immunity. They argue that the constitutional right at issue in this action is generally equal protection and, more specifically, "the right to have law enforcement services provided to Native Americans on an equal basis with non-Indians." *Id. at 18.* The Coles argue that Oravec's position – that the right to equal provision of law enforcement services cannot be established absent a universal

standard for an "adequate" investigation – "is simply asking too much under the doctrine of qualified immunity." *Id. at 20.* They argue that "a right can be clearly established despite a lack of factually analogous preexisting case law, and officers can be on notice that their conduct is unlawful even in novel factual circumstances." *Id*.

The Coles further argue that even if the Court requires that there be "contours" of adequate investigations, fact issues preclude summary judgment. They argue that Oravec himself "set out the contours of adequacy" by testifying at his deposition that his background as a certified public accountant makes him "thorough" and "detail oriented." *Id*. But, they argue, factual disputes exist respecting whether Oravec adhered to the contours of adequacy that he set, including whether he: (1) investigated the killer's self-defense theory; (2) failed to conduct or have conducted basic investigative tests; and (3) wrote a summary of his investigation that distorted or misstated facts that led to the grand jury failing to indict the killer. *Id. at 20-28.*

Finally, the Coles argue that they have shown that Oravec acted with malice toward Native Americans. They argue that "there is

sufficient evidence in the record to show malice, or, at the least, to create genuine issues of fact regarding malice." *Id. at 28*. The Coles maintain that the following evidence supports their argument: (1) "the biased nature" of the "prosecution letter" that Oravec prepared for the assistant United States attorney assigned to the case; (2) "Oravec's apparent need to lie about his actions in investigating Bearcrane's murder ... to cover up his discriminatory actions" by, for example, denying that he excluded the BIA from the investigation when evidence exists that he did; and (3) admissible testimony by witnesses who heard Oravec make statements demonstrating animus toward Native Americans. *Id. at 28-30.*

## III.  SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56(a) requires the court to grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. A moving party without the ultimate burden of persuasion at trial has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue as to any material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. *Id.* at 587 (quotation omitted). In resolving a summary judgment motion, the evidence of the opposing party is to be believed, *Anderson*,

477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citation omitted).

## IV.   DISCUSSION

### A.   Has Oravec Waived Qualified Immunity?

The Court must first address as a threshold matter whether Oravec has waived reliance on qualified immunity. Oravec first raised the affirmative defense in pre-Answer motions to dismiss. *ECF 14 at 1; ECF 28 at 2.* He subsequently raised qualified immunity as an affirmative defense in his Answer. *ECF 94 at 34.* Finally, Oravec filed the pending motion for partial summary judgment based on qualified immunity before expiration of the motions deadline set by the Court. *See Text Order (ECF 120)* (extending motions deadline to March 21, 2014). Plaintiffs can claim no surprise by Oravec's reliance on the qualified immunity defense.

The Ninth Circuit has not directly addressed whether a defendant waives qualified immunity where, as here, the defendant previously sought dismissal based on qualified immunity but later seeks summary

judgment under a different qualified immunity theory. Other Circuit Courts of Appeal have concluded that district courts have discretion to find waiver of qualified immunity if a defendant fails to act with due diligence or asserts qualified immunity for dilatory purposes. *See Guzman–Rivera v. Rivera–Cruz*, 98 F.3d 664, 668 (1st Cir. 1996); *Eddy v. Virgin Islands Water and Power Authority*, 256 F.3d 204, 209-10 (3d Cir. 2001) (noting that a district court "must exercise its discretion and determine whether there was a reasonable modicum of diligence in raising the defense ... [and] whether the plaintiff has been prejudiced by the delay."); *English v. Dyke*, 23 F.3d 1086, 1090 (6th Cir. 1994); *Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2001).

A district court may, however, permit successive motions for summary judgment on qualified immunity. *Hoffman v. Tonnemacher*, 593 F.3d 908, 910 (9th Cir. 2010) (citing *Knox v. Southwest Airlines*, 124 F.3d 1103, 1106 (9th Cir. 1997) (citing *Behrens v. Pelletier*, 516 U.S. 299 (1996))). The discretion afforded district courts in deciding whether to allow successive motions asserting qualified immunity is informed by such factors as: (1) waste of time, *Eddy*, 256 F.3d at 209 (citing

*Guzman-Rivera*, 98 F.3d at 667); (2) prejudice to the plaintiff, *id.* (citing *Guzman-Rivera*, 98 F.3d at 667); (3) "concerns about witnesses becoming unavailable, memories fading, attorneys fees accumulating, and imposing additional costs on the court system[,]" *id.* (citing *Guzman-Rivera*, 98 F.3d at 667); (4) scheduling imposed by the court, *id.* at 209-10; (5) defendant's failure to exercise due diligence, *id.* (citing *English*, 23 F.3d at 1090); and (6) defendant's assertion of the defense for dilatory purposes, *id.* (citing *English*, 23 F.3d at 1090).

After considering the foregoing factors, the Court concludes that Oravec has not waived reliance on qualified immunity. First, it is true that raising the issue late has wasted time. This matter has been pending for more than five years and the dispositive legal issue addressed below could have been raised at any point in the proceedings. But this relatively lengthy time arguably is attributable to the case's complexity and rather convoluted procedural history. For example, when the Amended Complaint was filed more than six months after the original Complaint, it included multiple plaintiffs and defendants and five claims for relief. *ECF 21*. Through motions practice that

ultimately led to appeals to the Ninth Circuit (*ECF 59 and 60*) and a petition for a writ of certiorari with the United States Supreme Court (*ECF 75*), the parties and claims were substantially narrowed to those parties and the remaining claim now before the Court.

But part of the qualified immunity theory now before the Court presents purely a question of law – that is, whether Oravec's actions occurring after Bearcrane's death give rise to a violation of Bearcrane's constitutional rights. Either party could have – and arguably should have – raised this issue long ago. That Oravec did not raise it earlier has wasted the time of this Court, the federal appellate courts, and the parties. This factor weighs in support of waiver.

Second, respecting prejudice to Plaintiffs from Oravec's delay in raising the issue, the Court concludes that any prejudice is neither unfair nor severe enough to result in waiver. While the Coles undoubtedly have suffered some prejudice from having to address Oravec's argument this far into the litigation, the prejudice is minimal considering the number and scope of other issues both parties raised and addressed through earlier motions and discovery. And, against

this prejudice the Court considers the purposes of the doctrine of qualified immunity. See discussion *infra* at 17.

Also, the Coles have not persuasively argued that Oravec's qualified immunity assertion has unfairly prejudiced them in any specific way. Although their brief generally alludes to the "insurmountable barrier to citizen suits seeking to vindicate constitutional rights[ ]" (*ECF 132 at 31*) occasioned by multiple motions asserting qualified immunity, they do not contend that they have faced such a barrier. Similarly, while they decry the United States' "unlimited funds" that permit the filing of "the same motions over and over again[,]" the Coles do not expressly argue or present evidence indicating that they have been stymied in their ability to prosecute this action. *Id.* Although the Coles, as noted, have suffered some prejudice by Oravec's delay in raising this issue, on the current record, the Court cannot conclude that the Coles will be unfairly prejudiced should the Court conclude that Oravec has not waived qualified immunity. This factor weighs against waiver.

Third, the Coles have neither argued nor presented evidence showing that the present qualified immunity defense will adversely affect witnesses' availability, witnesses' memories, amounts of attorneys fees, or court system costs. This factor weighs against waiver.

Fourth, as noted, Oravec filed the instant motion before the motions deadline to which the parties agreed. *ECF 118* (unopposed motion to stay scheduling order's summary judgment deadline) and *ECF 120* (text order granting unopposed motion and setting motions deadline of March 21, 2014). This factor weighs against waiver.

Fifth, although, as noted, Oravec lacked diligence in failing to raise the issue earlier, the Court is unpersuaded by the Coles' suggestion that Oravec filed the instant motion for a dilatory purpose. As discussed above, Oravec's lack of diligence likely resulted from this matter's complexity and multiple parties and claims at its inception. Those circumstances, coupled with the case's lengthy and time-consuming procedural history, render the timing of Oravec's motion more understandable. Thus, this factor, too, weighs against waiver.

In balancing the foregoing considerations, the Court concludes that Oravec has not waived his reliance on qualified immunity at this stage in the proceedings. Having so concluded, the Court next turns to the question of whether qualified immunity shields Oravec from liability against the sole remaining claim.

**B.   Is Oravec Entitled to Qualified Immunity?**

The United States Supreme Court recently reaffirmed that "[t]he doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Wood v. Moss*, ___ U.S. ___, 134 S.Ct. 2056, 2066-67 (2014) (quoting *Ashcroft v. al–Kidd*, 563 U.S. ___, ___, 131 S.Ct. 2074, 2080 (2011)). "Requiring the alleged violation of law to be 'clearly established' 'balances ... the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*. (quoting *Pearson v. Callahan*, 555 U.S. 223, 231

(2009)).  The "dispositive inquiry" "is whether it would [have been] clear

to a reasonable officer" in the agents' position "that [their] conduct was

unlawful in the situation [they] confronted."  *Id*. (quoting *Saucier v.*

*Katz*, 533 U.S. 194, 202 (2001)).

The Ninth Circuit recently restated familiar guidance for

analyzing qualified immunity in the instant case's context:

> At the summary judgment stage, [courts] ask whether the
> facts, "[t]aken in the light most favorable to the party
> asserting the injury," show that the officers violated a
> constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 201, 121
> S.Ct. 2151, 150 L.Ed.2d 272 (2001), overruled in part on
> other grounds by *Pearson v. Callahan*, 555 U.S. 223, 129
> S.Ct. 808, 172 L.Ed.2d 565 (2009).  If the officers violated a
> constitutional right, [courts] determine ... "whether federal
> rights asserted by a plaintiff were clearly established at the
> time of the alleged violation."  *Martinez v. Stanford*, 323
> F.3d 1178, 1183 (9th Cir. 2003).

*George v. Edholm*, ___ F.3d ___, ___ 2014 WL 2198581 at *6 (9th Cir.,

May 28, 2014).  Thus, courts in the Ninth Circuit

> employ a two-step test:  first, we decide whether the officer
> violated a plaintiff's constitutional right; if the answer to
> that inquiry is "yes," we proceed to determine whether the
> constitutional right was "clearly established in light of the
> specific context of the case" at the time of the events in
> question.  *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009)
> (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151,
> 150 L.Ed.2d 272 (2001)), *cert. denied*, ___ U.S. ___, 130 S.Ct.

> 1047, 175 L.Ed.2d 881 (2010). The Supreme Court has
> instructed that we may "exercise [our] sound discretion in
> deciding which of the two prongs of the qualified immunity
> analysis should be addressed first." *Pearson*, 129 S.Ct. at
> 818.

*Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011).

Consistent with the foregoing authority, the Court here begins by considering whether there occurred a violation of a constitutional right. If no constitutional right was violated, immunity attaches and the inquiry ends. *Saucier*, 533 U.S. at 201; *Aguilera v. Baca*, 510 F.3d 1161, 1167 (9th Cir. 2007). The precise question in the case before the Court, then, is whether Oravec's acts, which undisputedly occurred after Bearcrane's death, give rise to a violation of Bearcrane's constitutional right to equal protection. Put another way, the Court must consider whether a decedent has constitutional rights that may be violated from acts occurring after death.

In *Guyton v. Phillips*, 606 F.2d 248 (9th Cir. 1979), the Ninth Circuit addressed this issue in a case similar to this case, describing it as follows:

> This appeal involves the question of whether a claim may be
> stated under the Civil Rights Act for a violation of the civil

rights of a deceased person resulting from the alleged
actions of public officials after the death of the decedent, in
covering up and failing to prosecute properly the persons
who killed the decedent.

*Id*. at 249.

The court in *Guyton* addressed an appeal of a district court's

dismissal of claims brought by the administrator of a decedent's estate

against some named defendants alleged to have: (1) covered up

circumstances surrounding the decedent's death; and (2) interfered

with a prosecution related to the death. In affirming the district court,

the Ninth Circuit concluded:

We find that the Civil Rights Act, 42 U.S.C. §§ 1983 and
1985, does not provide a cause of action on behalf of a
deceased based upon alleged violation of the deceased's civil
rights which occurred after his death. A "deceased" is not a
"person" for the purposes of 42 U.S.C. §§ 1983 and 1985, nor
for the constitutional rights which the Civil Rights Act
serves to protect.

*Id*. at 250.

In reaching its conclusion, the Ninth Circuit reasoned that: (1)

"'person', as used in a legal context, defines a living human being and

excludes a corpse or a human being who has died[,]" *id*. (citations

omitted); (2) nothing in the Civil Rights Act's legislative history

indicates that Congress intended to deviate from the general meaning of the word "person" as it is used in 42 U.S.C. § 1983, *id.*; (3) no case law suggests that Civil Rights Act protections extend to deceased persons, *id.*; and (4) pertinent cases, rather than extending protections to deceased persons, actually "suggest that the definition of 'person' for purposes of protection of constitutional rights is limited only to a living human being[,]" *id.* (noting that the Supreme Court, in *Roe v. Wade*, 410 U.S. 113, 158 (1973), held that a fetus is not a "person" within the Fourteenth Amendment's meaning and adding that, under *McGarvey v. Magee-Womens Hosp.*, 340 F.Supp. 751 (W.D. Pa 1972), aff'd 474 F.2d 1339 (3d Cir. 1973), a fetus is not a "person" under the Civil Rights Act).

Finally, the Ninth Circuit in *Guyton* expressly rejected an argument similar to one the Coles raise here. The court in *Guyton* explained:

> Appellant urges us to extend the reach of the Civil Rights Act to actions which occur after the death of the person whose civil rights are allegedly violated, on the theory that if the Civil Rights Act is to be given the scope that its origins dictate, it must be interpreted broadly. We decline to accept appellant's argument. There is no indication that Congress

intended the Civil Rights Act to provide a cause of action for representatives to recover on behalf of a deceased for actions committed after the deceased's death.

*Id*. at 251.

The Court concludes that *Guyton* is controlling authority for the issue presented in this case.  The Ninth Circuit in *Guyton* clearly concluded that the Civil Rights Act does not provide a cause of action to a decedent for alleged violation of the decedent's civil rights that occurred after the decedent's death.  As noted, the Court reasoned, in part, that "[a] 'deceased' is not a 'person' for the purposes of 42 U.S.C. §§ 1983 and 1985, nor for the constitutional rights which the Civil Rights Act serves to protect."  *Id*. at 250 (emphasis added).  Other circuits have agreed.  *See, e.g., Riley v. St. Louis County of Mo.*, 153 F.3d 627, 632, n. 1 (8th Cir. 1998) (holding that section 1983 does not provide a cause of action on behalf of a deceased for events occurring after death); *Silkwood v. Kerr-McGee Corp,* 637 F.2d 743, 749 (10th Cir. 1980) (rejecting a *Bivens* claim, holding: "We agree with the Ninth Circuit that the civil rights of a person cannot be violated once that person has died.")

Applying *Guyton's* holding to this case, the Court concludes that Bearcrane does not have a cause of action for violation of his constitutional rights. Oravec's acts alleged to give rise to such a violation occurred after Bearcrane's death. Under *Guyton*, at the time of Oravec's acts, the decedent Bearcrane had no constitutional rights that could be violated. *Id.*; *see also Judge v. City of Lowell*, 160 F.3d 67, 76 n.15 (1st Cir. 1998), *overruled on other grounds by Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61 (1st Cir. 2004) (citing *Guyton* and noting that because actions forming basis of decedent's claim occurred after decedent's death, decedent had no rights of which he could be deprived).

In light of the foregoing controlling Ninth Circuit authority, the Court finds the Coles' arguments opposing summary judgment unpersuasive. Their attempt to distinguish their *Bivens* claim and *Guyton's* holding fails. *Guyton* included a *Bivens* claim and the Ninth Circuit noted that it "would be coextensive with, and an alternative remedy to, that provided by 42 U.S.C. §§ 1983 and 1985 .... The constitutional rights asserted are the same." *Guyton*, 606 F.2d at 249,

n.1. Thus, the Ninth Circuit made no distinction between the constitutional rights asserted based upon whether the alleged wrongdoer was a state actor, as in a § 1983 claim, or a federal actor, as in a *Bivens* claim.

Having concluded that no violation of a constitutional right occurred, the Court need not consider whether such constitutional right was "clearly established in light of the specific context of the case" at the time of the events in question. Immunity attaches and the Court's qualified immunity inquiry ends. *Saucier*, 533 U.S. at 201; *Aguilera v. Baca*, 510 F.3d 1161, 1167 (9th Cir. 2007). Because "[q]ualified immunity is an immunity from suit rather than a mere defense to liability[,]" *Pearson*, 555 U.S. at 237 (internal quotations and citations omitted), Oravec is entitled to summary judgment in his favor on the Coles' remaining claim against him.

## V.    CONCLUSION

Based on the foregoing, IT IS RECOMMENDED that Oravec's summary judgment motion (*ECF 126*) be GRANTED.

24

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 26th day of June, 2014.

/s/ Carolyn S. Ostby
United States Magistrate Judge