**Patricia S. Bangert**
Attorney at Law, LLC
3773 Cherry Creek North Drive, Suite 575
Denver, Colorado 80209
Phone: (303) 228-2175
Fax: (303) 399-6480
Email: trish@pbangertlaw.com

**Jean Bearcrane**
Attorney at Law
8416 Hwy 87 East
Billings, Montana 59101
Phone:  (406) 661-2870
Email: jean_bearcrane@hotmail.com
**Attorneys for Plaintiffs**

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## BILLINGS DIVISION

_____

|  |  |
|---|---|
| ) |  |
| **EARLINE  COLE,** ) | Case No: |
| **CLETUS COLE,** and ) | **CV-09-21-BLG- SEH-TJC** |
| **PRECIOUS BEARCRANE,** a minor child, ) |  |
| Plaintiffs, ) |  |
| ) |  |
| v. ) |  |
| ) |  |
| **FEDERAL BUREAU OF INVESTIGATIONS,** ) | **SECOND AMENDED** |
| **SALT LAKE CITY FIELD OFFICE,** ) | **COMPLAINT** |
| **FEDERAL BUREAU OF INVESTIGATIONS,** ) |  |
| **BILLINGS OFFICE,** and ) | Jury Trial Demanded |
| **MATTHEW  ORAVEC,** ) |  |
| Defendants. ) |  |
| _____ ) |  |

Earline Cole, Cletus Cole and Precious Bearcrane, by and through their undersigned attorneys, hereby bring this Second Amended Complaint against the above-named defendants.

## PARTIES

1.      Earline Cole ("Earline Cole") is an individual and a member of the Crow Tribe, and a current resident of Montana.

2.      Cletus Cole ("Cletus Cole") is an individual and a member of the Gros Ventre Tribe, and a current resident of Montana.

3.      Precious Bearcrane ("Bearcrane") is a minor child, currently age fifteen (15), a member of the Crow Tribe, and a current resident of Montana.

4.      The Salt Lake City Field Office is one of 56 field offices of the Federal Bureau of Investigations, a federal agency of the United States Department of Justice, with its principal offices located at 257 East 200 South, Suite 1200, Salt Lake City, Utah 84111.

5.      The Billings, Montana Office is a local office under the supervision of the Salt Lake City Field Office of the Federal Bureau of Investigations, a federal agency of the United States Department of Justice, with its principal offices located at 2929 3rd Avenue North, Room 205, Billings, Montana 59101.

6. Matthew Oravec ("Oravec") is an individual and was, at all times relevant to this complaint, a Special Agent in the Billings, Montana office of the FBI, whose business address is 2929 3rd Avenue North, Room 205, Billings, Montana 59101.

## JURISDICTION

7. The purpose of this action is to redress and restrain acts or practices by Defendants that federal law deems unlawful.

8. The Court has original jurisdiction over the subject matter of these claims pursuant to, 28 U.S.C. §1331, 28 USC §1361, and under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

9. Venue for this action properly lies in the District of Montana pursuant to 28 U.S.C. §1391(b).

## WAIVER OF SOVEREIGN IMMUNITY

10. The United States has waived its sovereign immunity for this action under the Administrative Procedure Act, 5 U.S.C. §§702-706.

## NATURE OF THIS ACTION

11. Plaintiffs bring claims against the United States, specifically, Department of Justice agencies the Federal Bureau of Investigation, Salt Lake City

Field Office, and the Billings, Montana Office, to enjoin their failure to accord the equal protection of the law required under the Constitution of the United States, by failing to provide law enforcement to Native Americans, including Precious Bearcrane, Cletus Cole, Earline Cole, as well as other members of federally-recognized Indian tribes, including their family member Steven Bearcrane, on and in the vicinity of the Crow Reservation because they are Native American.

12.     In this case, Plaintiffs bring claims under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), against defendant Oravec for intentionally and continuously failing to accord Precious Bearcrane, Cletus Cole, Earline Cole, as well as other members of federally- recognized Indian tribes, including their family member Steven Bearcrane, the equal protection of the law required under the Constitution of the United States, by failing to provide law enforcement services to them and other Native Americans on and in the vicinity of the Crow Reservation because they are Native American.

## FACTUAL ALLEGATIONS

*Introduction*

13.     The Plaintiffs, Precious Bearcrane, Cletus Cole, and Earline Cole (together referred to as "the Bearcrane family"), are members of the Crow Tribe or

other federally-recognized Indian tribes and reside on or near the Crow Reservation.

14.    Steven Bearcrane was the son of Earline and Cletus Cole and the father of Precious Bearcrane.

15.    Steven Bearcrane was murdered on a ranch located on the Crow reservation in Montana.

16.    The Defendants' investigation of Mr. Bearcrane's murder was so patently deficient that any reasonable person would know that Defendants were not providing the police services appropriate to the situation.

17.    Since Mr. Bearcrane's murder, the Bearcrane family has been seeking an adequate investigation of that crime, including but not limited to providing Defendants with relevant additional information, especially providing an affidavit from a witness about the murder to the Defendants in 2011, evidence which Defendants have ignored.

18.    Under the Crime Victims' Rights Act, 18 U.S.C. §3771, and, 42 U.S.C. §10607 (Victims Rights and Restitution Act of 1990) (together referred to as the "crime victims' statutes"), the members of the Bearcrane family would

qualify as "victims," entitled to protection and benefits accorded under those acts because Steven Bearcrane's murder was a crime.

19.     Continuing up until the present, the Defendants, through a patently inadequate investigation and intentional misrepresentation, have refused to classify Bearcrane's murder as a crime, thus, continuously depriving the Bearcrane family of the benefits and services available under the crime victims' statutes.

*Policy of Discrimination Against Native Americans in Investigation and Prosecution of Crimes*

20.     Crime is rampant and out of control in Indian Country, as admitted by the United States, for example:

a.     The most recent Bureau of Justice Statistics report showed that: (i) from 1976 to 2001 an estimated 3,738 American Indians were murdered; (ii) among American Indians age 25 to 34, the rate of violent crime victimizations was more than 2½ times the rate for all persons the same age; and (iii) rates of violent victimization for both males and females were higher for American Indians than for all races.  *See American Indians and Crime: A BJS Statistical Profile*, 1992-2002, 12/04 NCJ 203097.

b.     The highest crime rate *per capita* occurs on Indian reservations. Testimony of Hon. Anthony Brandenburg, Chief Judge, Intertribal Court of

Southern California before the Senate Committee on Indian Affairs, regarding a Legislative Hearing on S. 797, the Tribal Law Enforcement Act of 2009, June 25, 2009.

       c.      Former Secretary of the Interior, Ken Salazar, has stated that "the rule of law [has been] essentially abandoned" on reservations. Hearing Before the Committee on Indian Affairs, United States Senate, February 12, 2009.

       d.      There has been a serious increase of late in violent crime on reservations. Larry EchoHawk, Assistant Secretary for Indian Affairs, before the Senate Committee on Indian Affairs, regarding a Legislative Hearing on S. 797, the Tribal Law Enforcement Act of 2009, June 25, 2009.

21.    Native American women experience the highest rate of violence of any group in the United States. *Native American Women and Violence*, Lisa Bhungalia, National NOW Times, Spring, 2001.

       a.      A report released by the Department of Justice, American Indians and Crime, found that Native American women suffer violent crime at a rate three and a half times greater than the national average. *Native American Women and Violence*, Lisa Bhungalia, National NOW Times, Spring, 2001. National researchers estimate that this number is actually much higher than has

been captured by statistics; according to the Department of Justice over 70% of sexual assaults are never reported. *Id.*

b. Native American women also experience the highest levels of sexual and domestic abuse of any group. A report from the American Indian Women's Chemical Health Project found that three-fourths of Native American women have experienced some type of sexual assault in their lives.

c. One in three Native American women will be raped in their lifetime and 75 percent of perpetrators of those crimes are non-Indian. *See American Indians and Crime: A BJS Statistical Profile*, 1992-2002, 12/04 NCJ 203097; Statement Of Hon. Tom Udall, U.S. Senator from New Mexico, Hearing Before the Committee on Indian Affairs, United States Senate, February 12, 2009. Representatives of the Department of the Interior characterized violence against Indian women as being at "crisis level."

22. Refusal of federal agencies, such as defendant FBI, to provide the same law enforcement services to Native Americans as provided to non-Native Americans has played a major part in creating the serious crime problem in Indian Country, for example:

a. The Chair of the Fort Hall Business Council said: "The present status of Indian Country law enforcement has resulted in unsafe communities,

victimization of reservation families, promoted drug trafficking, and has deterred economic development."  Statement of Alonzo Colby, Chairman of the Fort Hall Business Council for the Shoshone-Bannock Tribes, for the Senate Committee on Indian Affairs, regarding a Legislative Hearing on S. 797, the Tribal Law Enforcement Act of 2009, June 25, 2009.

b.	John Barrasso, a United States Senator from Wyoming, has noted the federal "neglect" of law and order on Indian reservations, which has led to "unacceptable" law enforcement statistics in Indian Country.  Statement of John Barrasso, U.S. Senator from Wyoming,. Hearing Before the Committee on Indian Affairs, United States Senate, February 12, 2009.

c.	At a Senate hearing in North Dakota, the chairman of the Standing Rock Sioux, Ron His Horse Is Thunder, said that there had been nine suicides and 50 attempted suicides in the small villages of the reservation since January, a phenomenon he linked directly to rising crime and hopelessness. *Obama to Address Breakdown of Reservation Justice*, Michael Riley, Denver Post, 7/04/09

23.	Refusal of federal agencies to provide the same prosecutorial services to Native Americans as are provided to non-Native Americans has played a major part in creating the serious crime problem in Indian Country, for example

a.      Between 2004 and 2007, the U.S. declined to prosecute 62 % of Indian country criminal cases referred to federal prosecutors.  U.S. Senate Committee on Indian Affairs Press Release, April 3, 2009.  The Senate Committee on Indian Affairs recognizes that those statistics are unacceptable and is reviewing legislation to deal with the lack of prosecution in Indian Country.

b.      According to the Chairman of the Fort Hall Business Council, "In many cases, the lack of prosecution by federal and state authorities remains unexplained to Tribal leaders and the crime victims."  Statement of Alonzo Colby, Chairman of the Fort Hall Business Council for the Shoshone-Bannock Tribes, for the Senate Committee on Indian Affairs, regarding a Legislative Hearing on S. 797, the Tribal Law Enforcement Act of 2009, June 25, 2009.

c.      Alonzo Colby also said that "The unexplained failures to prosecute serious felonies on the Reservations gives the tribal membership the impression that it is OK to commit serious crimes against Indian people on the Reservation."  *Id.*

d.      A review by *The Denver Post* of dozens of criminal cases on more than 20 reservations substantiates widely-held concerns among American Indians that the system as it now stands functions poorly, including investigations that are chronically delayed or dropped, and serious crimes never prosecuted as

felonies.  *Promises, Justice Broken*, Michael Riley, Denver Post, 11/11/07.  The Reporter pointed out a situation on a reservation in Montana:  On the Fort Peck reservation in Montana, a man recently assaulted his girlfriend and broke her jaw, a result that didn't count as "serious bodily injury," according to the U.S. attorney, who therefore declined the case. According to the tribal prosecutor, who was forced to charge the suspect in tribal court, the same man has since committed several other crimes, "literally wreaking havoc here," she said.

24.     The United States has admitted disparate treatment of Native Americans in law enforcement, for example, Senator John Barrasso said: "Mr. Chairman, I'm sure that you would agree that non-Indian communities would not tolerate such a low level of protection.  There is no reason that Indian communities should expect anything less than other communities in the way of law and order and public safety." Statement of John Barrasso, U.S. Senator from Wyoming, Hearing Before the Committee on Indian Affairs, United States Senate, February 12, 2009.

## *FBI Discrimination Against Native Americans*

25.     Defendant Salt Lake City Field Office and the Billings, Montana Office (together referred to as "FBI") were and are the federal law enforcement

agencies assigned to provide law enforcement services related to major crimes on the Crow Reservation, including the investigation of those crimes.

26.     Defendants FBI and Oravec have adopted and engaged in a continuing pattern and practice of selectively discriminating against Native Americans in providing law enforcement services on the Crow reservation in Montana; such pattern and practice including, but not limited to the failure to adequately investigate crimes in which Native Americans are victims, which leads in many instances to a failure to prosecute crimes against Native Americans.

## *Death of Steven Bearcrane*

27.     An example of the Defendants' pattern and practice of selectively discriminating against Native Americans in providing law enforcement services in and around the Crow reservation in Montana is: (i) the failure to adequately investigate the death of Steven Bearcrane; (ii) the interference with adequate investigations by other organizations into that death; and (iii) the intentional misrepresentation of the facts surrounding Bearcrane's death.

28.     The FBI agents assigned to investigate Mr. Bearcrane's death were defendant Oravec, a senior special agent in the FBI Billings, Montana Office, and Earnest Weyand, the Resident Agent in Charge in the Billings, Montana Office.

29.     Because the case of Mr. Bearcrane's murder has never been reassigned, defendant Oravec is still the agent of record.

30.     The Defendants' investigation of Mr. Bearcrane's murder was so patently deficient that any reasonable person would know that they was not providing the police services appropriate to the situation, for example:

a.      It is undisputed that Steven Bearcrane, a member of the Crow Nation, was shot in the head and killed by a non-Indian on February 2, 2005, at a ranch located on the Crow Indian Reservation.

b.      Defendant Oravec, who was the special agent in charge of investigating the murder of Steven Bearcrane; and Weyand, who was the resident agent in charge of the office,  refused to do anything but the most cursory investigation of Steven Bearcrane's murder, for example:

(i)     Oravec completed his entire murder investigation in approximately a month (February 5-March 21, 2007);

(ii)    Despite there being ample evidence that the killer had a history of substance abuse, Oravec did no drug or alcohol testing of the killer after the murder of Mr. Bearcrane;

(iii)    Oravec refused to take statements from witnesses who volunteered information about the murder and the murderer; and

(iv)    Oravec did not order, or he left incomplete common investigative tests and data-gathering, including but not limited to fingerprint evidence, blood spatter analysis, criminal background information, and crime scene photographs, in investigating the death of Steven Bearcrane.

c.    Defendant Oravec declared that the killer, a white man, had acted in self-defense, but did nothing to investigate the validity of Bearcrane's killer's self-defense claim, for example:

(i)    Oravec did no investigation of Bearcrane's killer's character;

(ii)    Witnesses, including two of three other ranch workers, told Oravec that Bearcrane's killer was heavy drinker and/or used drugs, but Oravec failed to test him the night of the murder;

(iii)   Oravec failed to talk with another ranch worker, Dave Siegel, who had been identified as a person knowing about the killer's drinking and violent nature;

(iv)   People inside the U.S. Attorney's office and outside gave Oravec information as to the killer's bad character and propensity for violence, for example, a witness specifically told Oravec that the killer had refused to leave his job when he was fired, instead waiting on the property with a gun until the police came;

(v)   The killer alleged that Bearcrane was drunk (had drunk a bottle of whiskey) the day of the murder; but, when a bottle of whisky was found in the ranch pasture, Oravec had no fingerprint analysis done;

(vi)   Oravec ignored the Coroner's report stating that there was no powder residue around Bearcrane's wound and that there was no sign of a struggle; and

(vii)   Kassandra Leachman executed an affidavit saying that, during her interview, Oravec seemed completely uninterested in her observations about the validity of the self-defense claim.

d.      Defendant Oravec refused to take relevant testimony from knowledgeable witnesses, for example, he refused to take information from a witness who was on the ranch the day that Bearcrane was murdered, which information included:

> (i)      A month or so before Mr. Bearcrane's murder, his killer bragged about being a sniper, and the fact that he "could kill someone and make it look like self-defense;"
>
> (ii)      The ranch foreman had entered the trailer in which Mr. Bearcrane was killed right after the murder and saw no knife near his body, but did observe that a knife had been planted later; and
>
> (iii) The killer had a very aggressive dog who would not let anyone near him if the dog felt that the killer was threatened.

e.      Defendant Oravec and his supervisor, Agent Weyand, destroyed some evidence in the case, rather than preserving it, even though they refused to return personal belongings, saying that the belongings were needed for the on-going investigation.

f.      Defendant Oravec told local deputies to keep BIA investigators away from the scene of Mr. Bearcrane's murder.

31.     Plaintiffs have continued to provide the FBI, through its attorney, with significant new and incriminating information about Bearcrane's murder, the last instance being in 2011, information ignored by the Defendants.

32.     Defendant Oravec intentionally misrepresented the facts in the case of Mr. Bearcrane's murder in his summary to the prosecutor, which, along with Oravec's inadequate investigation into the murder, prevented the prosecutor from prosecuting the killer of Mr. Bearcrane, thus depriving the plaintiffs here of the justice and services afforded other crime victims.

33.     Plaintiffs Earline and/or Cletus Cole visited with FBI officials throughout 2005 and 2006 to request an adequate investigation of Steven Bearcrane's death and to request records of the investigation; records that were not received until June of 2006.

34.     Plaintiffs Earline and Cletus Cole repeatedly told Resident Agent in Charge Weyand that defendant Oravec was failing to perform an adequate investigation, Plaintiffs (a) asking that another agent be appointed to investigate the case, (b) asking that defendant Oravec be given assistance and (c) offering to hire a private investigator, all of which Weyand refused.

35.     The Bearcrane family has continued to ask the Defendants to perform an adequate investigation of Steven Bearcrane's murder, requests that the Defendants have ignored.

36.     Plaintiffs Earline and Cletus, and Precious Bearcrane were never informed that the investigation into Steven Bearcrane's murder was ever closed; and none of Mr. Bearcrane's personal belongings have been returned to his relatives, as is the practice when a case is closed.

37.     Not only did plaintiffs Earline and Cletus Cole complain about the inadequate investigation done by defendants FBI and Oravec into Steven Bearcrane's death, but the U.S. Commission on Civil rights complained and asked that the Defendants perform an adequate investigation also.

### *Death of Robert Springfield*

38.     Another example of the Defendants' pattern and practice of selectively discriminating against Native Americans in providing law enforcement services and protection in and around the Crow reservation in Montana is the Defendants' failure to investigate the disappearance and death of Robert Springfield.

39. The FBI agents assigned to investigate Mr. Springfield's disappearance and death were defendant Oravec, and his supervisor Earnest Weyand, the Resident Agent in Charge.

40. Mr. Springfield's family repeatedly asked Defendants FBI and Oravec and his supervisor Weyand to do an adequate investigation into Mr. Springfield's disappearance and death, to no avail, for example:

a. Springfield's wife reported her husband, Robert Springfield, missing after a hunting trip, but Defendants refused to investigate his disappearance.

b. After Mr. Springfield's body was found, Defendants refused to investigate his death, even though the death was suspicious; for example:

(i) A bow and arrow and some other items that Mr. Springfield had with him at the time he disappeared were not found with his remains;

(ii) Mr. Springfield's shoes and a belt, found neatly rolled up, were found next to his remains;

(iii) Gun shots were heard in the mountains on the day Mr. Springfield disappeared;

(iv)    A hole was found in the back of Mr. Springfield's hunting jacket that could have come from a bullet.

c.    Although many possible witnesses were available and desired to be interviewed regarding Mr. Springfield's death, defendant Oravec refused to interview any person except Mr. Springfield's son.

d.    The Defendants held Mr. Springfield's remains for over two years, apparently without performing any investigatory tests on those remains.

e.    The agent in charge of the investigation, defendant Oravec, refused to allow the Big Horn County coroner, Terry Bullis, to examine the site on which Mr. Springfield's remains were found, or to examine the remains.

### *Other Cases*

41.    Defendants FBI and Oravec, and his supervisor Weyand consistently closed cases involving Indian victims without adequate investigation, especially sexual and other assaults involving Indian children and women, for example, defendant Oravec took the local Coroner's camera away when the Coroner tried to document the murder of two young Native American girls.

42.    The lack of attention to sexual abuse cases by Defendants here is an example of the discriminatory manner in which sexual assaults are treated by the FBI on Indian reservations in general:

a. The human rights group "Amnesty International" has documented the deplorable lack of investigation and prosecution of sexual abuse involving Native Americans. *See*, *for example*,

http://www.amnestyusa.org/document.php?id=ENGAMR510352007.

b. The problem of violence against Native American women is exacerbated by federal apathy in law enforcement, along with other factors. *Native American Women and Violence*, Lisa Bhungalia, National NOW Times, Spring, 2001.

*Animus on the Part of Defendant Oravec*

43. Defendant Oravec has consistently shown animus against Native Americans, such that it may be inferred that his animus was a motivating factor in their discriminatory treatment of investigations involving Native Americans; for example:

a. When a person present on the ranch on the day on which Mr. Bearcrane was murdered offered evidence that the murder was not a case of self-defense, defendant Oravec refused to listen to her;

b. Defendant Oravec stated to a witness that Mr. Bearcrane's murder must have been a case of self-defense because Bearcrane "had been drinking and everyone knows that Indians cannot hold their liquor."

44.     Defendant Oravec has been heard to say that female Native American victims of sexual assault were asking for assault or words to that effect.

45.     Defendant Oravec not only refused to perform adequate investigations of crimes in which Native Americans were victims, but acted affirmatively to hinder the investigation of those crimes, for example:

a.      When Earline and Cletus Cole visited the FBI offices to ask about the investigation into their son's murder, defendant Oravec attempted to intimidate Cletus Cole by taking Mr. Cole out of the range of cameras and showing Mr. Cole his gun; and

b.      On many occasions, defendant Oravec actively interfered with the work of county officials, including the county coroner, regarding Indian cases, including the case of Steven Bearcrane and Richard Springfield.

46.     Defendant Oravec not only refused to perform adequate investigations of crimes in which Native Americans were victims, but acted to prevent victims from receiving assistance and other rights afforded crime victims under federal law, for example:

a.      Defendant Oravec told the state crime victims compensation office that Mr. Bearcrane had caused his own death, thus making Mr. Bearcrane's close relatives ineligible for benefits and other rights afforded by federal law;

b.      Despite the fact that the Victim's Advocate Specialist is the FBI's normal contact with the state crime victims compensation office, defendant Oravec told that office to contact him directly about anything related to benefits or assistance in the Bearcrane case; and

c.      Defendant Oravec failed to have the remains of Robert Springfield identified, or properly investigated, even though there was compelling evidence for the identification; failed to provide his wife, Veronica Springfield with necessary information; and delayed getting information to the local coroner so that a death certificate could be issued to Mrs. Springfield, thereby denying her and her children benefits and protections available and due to them.

47.     Plaintiffs Earline and Cletus Cole alerted Weyand, as the supervisor of the Billings FBI office, to the egregious mishandling of Mr. Bearcrane's case; but Weyand refused to remedy the situation.

48.     Defendant Oravec along with his supervisor Weyand destroyed some evidence in the case, rather than preserving it, even though they refused to return personal belongings, saying that the belongings were needed for the on-going investigation; and further maintained a secret file, called "B," that contained unnamed evidence that was subsequently destroyed.

49.     Defendant Oravec intentionally misrepresented the facts about Mr.
Bearcrane's murder to the prosecutor in the Bearcrane case, for example, saying
that the killing was in self-defense because a knife was found near Bearcrane's
body despite the fact that:

a.      There was a witness to the fact that the knife was planted on the
body; and

b.      Crime-scene photographs show that the knife with which
Bearcrane supposedly attacked the killer was lying in its sheath under an electrical
cord, under the left side of the body (Mr. Bearcrane was right-handed).

_Injuries to Plaintiffs_

50.     By performing a patently inadequate investigation of Steven
Bearcrane's death, interfering with other related organizations, and
misrepresenting the facts of the case, as well as  affirmatively identifying his death
as a non-crime to victim assistance personnel, defendants FBI and Oravec deprived
daughter Precious Bearcrane, mother Earline Cole, and father Cletus Cole of
benefits and protections accorded non-Native-Americans under the Crime Victims'
Rights Act, 18 U.S.C. §3771, and, 42 U.S.C. §10607 (Victims Rights and
Restitution Act of 1990), including but not limited to emergency medical and
social services, protection from a suspected offender and possible restitution and/or

other payments; as a result, on at least one occasion, Earline Cole and Mr. Beacrane's daughter, Precious, as well as other family members, encountered Mr. Bearcrane's murderer in a local store.

51.     In discriminating against Native Americans by engaging in a pattern and practice of selectively providing less law enforcement services to them than are provided to other citizens, Defendants have created a situation in which Native Americans live on lawless reservations, where crime is rampant, the well-documented result being that Native Americans living and/or working on or near reservations, including Precious Bearcrane, Earline and Cletus Bearcrane, suffer or have suffered severe psychological impacts, including "historical trauma," which severely impacts and cripples normal life activities.

52.     In discriminating against Native Americans by engaging in a pattern and practice of selectively providing less law enforcement services to them than are provided to other citizens, Defendants have created a situation in which Native Americans live and/or work on or near lawless reservations, where crime is rampant, the well-documented result being that: (a) Native Americans living and/or working on or near reservations are victimized by violent crime in much greater numbers than non-Native Americans, and (b) Native Americans living and/or working on or near reservations, including Precious Bearcrane, Earline and Cletus

Bearcrane, will be victimized by violent crime in much greater numbers than non-Native Americans.

53.     As admitted by the United States and Native American leaders, by selectively providing less law enforcement services to Native Americans than are provided to other citizens, defendants have (a) deprived the Plaintiffs of the security and protection accorded non-Native American citizens, and, thus, (b) denied them the existence of an organized society maintaining public order that is implied in the constitutional guarantee of liberty, and that is provided to other citizens; (c) resulting in the situation in which Native American children, such as Precious Bearcrane will have a one-in-three chance of being sexually assaulted in her lifetime, making her twice as likely to experience sexual assault crimes than children of other races.

54.     As a result of the actions of defendants, Earline Cole has suffered and continues to suffer severe emotional and physical damages, including, but not limited to depression, loss of sleep, loss of appetite, loss of enjoyment of life, stomach problems, severe headaches, and loss of family relations and structure; while Cletus Cole has suffered and continues to suffer severe emotional and physical damages, including, but not limited to depression, loss of appetite and weight, severe stomach aches, loss of enjoyment of life, and loss of family

relations and structure; and Precious Bearcrane has suffered and continues to suffer severe emotional and physical damages, including but not limited to depression and loss of family relations and structure.

55.     Earline and Cletus Cole have suffered and continue to suffer economic damages from the actions of the Defendants, including, but not limited to lost benefits under the crime victim's statutes, as well as lost income, lost benefits, travel expenses to plead with defendants to adequately investigate and prosecute the murder of their son, and expenses involved with preparation of materials for presentation to Defendants.

## <u>VIOLATIONS</u>

56.     As to the following claim for relief, paragraphs 1 through 55 above are incorporated by reference and re-alleged as if fully set forth in the claim.

## FIRST CLAIM FOR RELIEF
### (Violation of Fifth Amendment -Equal Protection)

57.     The Defendants are federal agencies or employees of federal agencies.

58.     Through the actions described above, especially the actions of:

a.      Defendant agencies and agency heads continuously engaging in a pattern and practice of selectively discriminating against Native Americans in providing law enforcement protection and/or services;

b.    Defendants FBI and Oravec refusing, in particular, to investigate and/or to adequately investigate the murder of Steven Bearcrane;

c.    Defendant Oravec interfering with adequate investigations and/or prosecutions of crimes on the Crow Reservation that involve Native American victims, such as Steven Beracrane; and

d.    Defendant Oravec acting to prevent Native American victims, such as the Plaintiffs here, from receiving assistance and other rights afforded crime victims under federal law; among other actions,

Defendant agencies and employees of agencies, (a) denied the Plaintiffs the same law enforcement services enjoyed by other citizens, (b) deprived the Plaintiffs of the security and protection accorded non-Native American citizens, and, thus, (c) denied them the existence of an organized society maintaining public order that is implied in the constitutional guarantee of liberty, that is provided to other citizens; and (d) denied Plaintiffs the protection and benefits accorded other citizens under the Crime Victims' Rights Act, 18 U.S.C. §3771, and 42 U.S.C. §10607 (Victims Rights and Restitution Act of 1990), thus depriving the Plaintiffs of the equal protection of the law required under the due process clause of the Fifth Amendment to the United States Constitution.

## SECOND CLAIM FOR RELIEF
### (*Bivens*-Violation of Equal Protection)
### [Against Individual Defendant Oravec]

59.     Defendant Oravec is an employee of the United States Department of Justice.

60.     Through the actions described above, especially the actions of defendant Oravec in:

a.      Engaging in a pattern and practice of selectively discriminating against Native Americans in providing law enforcement protection and/or services;

b.      Refusing, in particular, to investigate and/or to adequately investigate the murder of Steven Bearcrane;

c.      Interfering with adequate investigations and/or prosecutions of crimes on the Crow Reservation that involve Native American victims, such as Steven Bearcrane; and

d.      Acting to prevent Native American victims, such as the Plaintiffs here, from receiving assistance and other rights afforded crime victims under federal law; among other actions,

Defendant Oravec (a) denied the Plaintiffs the same law enforcement and prosecutorial protection and services enjoyed by other citizens, (b) deprived the Plaintiffs of the security and protection accorded non-Native American citizens,

and, thus, (c) denied them the existence of an organized society maintaining public order that is implied in the constitutional guarantee of liberty, that is provided to other citizens; and (d) denied Plaintiffs the protection and benefits accorded other citizens under the Crime Victims' Rights Act, 18 U.S.C. §3771, and, 42 U.S.C. §10607 (Victims Rights and Restitution Act of 1990), thus depriving the Plaintiffs of the equal protection of the law required under the due process clause of the Fifth Amendment to the United States Constitution.

61.     In his actions, defendant Oravec acted intentionally, and in a willful and wanton manner, for example, despite the pleas of Earline and Cletus Cole and their presentations of substantial evidence, defendant Oravec refused to adequately investigate the murder of Steven Bearcrane, and to declare his death a murder, actively interfered with the investigation of Mr. Bearcrane's murder, and intentionally misrepresented the facts of Mr. Bearcrane's killing, among other actions.

62.     As a result of the actions of defendant Oravec, Plaintiffs have been deprived of due process of the law, and have suffered damages to their person and property, including but not limited to those damages described above.

# PRAYERS FOR RELIEF

## AS TO CLAIMS AGAINST FEDERAL AGENCY DEFENDANTS

A.      In view of all of the preceding, Plaintiffs respectfully request that this Court award, adjudge and decree that the conduct alleged is violative of the Constitution of the United States and of Plaintiffs' rights thereunder; and enjoin further such violations, and

B.      Plaintiffs be awarded their costs of suit, including reasonable attorneys' fees and costs;

C.      Plaintiffs have such other, further and different relief as this Court deems just and proper.

## AS TO CLAIM AGAINST DEFENDANT ORAVEC

A.      In view of all of the preceding, Plaintiffs respectfully request that this Court award, adjudge and decree that:

(1)     The conduct alleged is violative of the Constitution of the United States and of Plaintiffs' rights thereunder;

(2)     In accordance with federal law, including, but not limited to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971),

(a) Individual defendant Oravec pay to plaintiffs an amount – the exact total of which is presently undetermined – comprised of

    (I) The actual damages they have sustained as a result of such violations, economic and emotional, and

    (II) Exemplary or punitive damages;

(b) Plaintiffs be awarded their costs of suit, including reasonable attorneys' fees and costs;

(c) Interest on the above; and

B. Plaintiffs have such other, further and different relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

In accordance with Fed. R. Civ. P. 38(b), Plaintiffs hereby demand a trial by jury.

**DATED** this 1st day of February, 2018.

Respectfully submitted:

*/s/Patricia S. Bangert*

_____

Patricia S. Bangert
**Attorney for Plaintiff**

<u>Address of Plaintiffs</u>:

Cletus and Earline Cole and Precious Bearcrane
8416 Hwy 87 East
Billings, Montana 59101