IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| EARLINE COLE, CLETUS COLE, and PRECIOUS BEARCRANE, a minor child,<br><br>                Plaintiffs,<br><br>vs.<br><br>FEDERAL BUREAU OF INVESTIGATION, Salt Lake City, Utah Office; FEDERAL BUREAU OF INVESTIGATION, Billings, Montana Office; and MATTHEW ORAVEC, in his individual capacity,<br><br>              Defendants. | CV 09-21-BLG-SEH-TJC<br><br><br>**ORDER AND FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

Plaintiffs Earline Cole, Cletus Cole, and Precious Bearcrane bring this action against Defendants Matthew Oravec and the Federal Bureau of Investigation Billings, Montana and Salt Lake City, Utah offices.  Jurisdiction is based on 28 U.S.C. § 1331, 1361 and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).  District Judge Sam E. Haddon has referred this case to the undersigned to conduct all pretrial proceedings and to submit findings and recommendations for the disposition of all motions excepted from a Magistrate Judge's jurisdiction, pursuant to 28 U.S.C. § 636(b)(1)(B).  (Doc. 154.)

Presently before this Court is Defendant Oravec's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[1]  (Doc. 162.)  The motion has been fully briefed and is ripe for decision.  (Docs. 162, 166, 169.)  Having reviewed the parties' arguments and submissions, and for the reasons discussed below, it is recommended that Oravec's motion be GRANTED.

## I.     Background

This case arises out of the tragic death of Steven Bearcrane on February 2, 2005.  Mr. Bearcrane, a member of the Crow Nation, was fatally shot and killed on the Crow Indian Reservation by Bobby Holcomb, a non-Native American.  (Doc. 133 at ¶¶ 1, 8.)  The shooting was investigated by the FBI.  Defendant Matthew Oravec ("Oravec"), a Senior Special Agent in the FBI Billings, Montana office, was assigned to the investigation.  (Doc. 159 at ¶ 28.)  After concluding its investigation, the FBI classified the shooting as a "non-crime."  The Plaintiffs allege that the FBI and Oravec's investigation was "patently deficient," and that Oravec failed to provide the Plaintiffs and other Native Americans equal protection of the law by failing to provide law enforcement services to them because they are Native American.   (Doc. 159 at ¶ 12.)

---

[1] Plaintiffs' Motion for Leave to File Sur-Reply to Defendant Oravec's Motion to Dismiss (Doc. 170) and Plaintiffs' Motion for Extension of Time to Complete Discovery (Doc. 182) are also pending before the court and are **DENIED** as **MOOT**.

The case has a lengthy procedural history; only the relevant procedural posture is provided.  The action was initially filed on February 24, 2009 by the Estate of Steven Bearcrane and members of his family individually.  (Doc. 1.) [2] The action was asserted against the FBI, Billings, Montana Office, the United States Attorney's Office for South Dakota, and numerous individuals from those governmental entities.  *Id.*

The Defendants moved to dismiss on various grounds.  U.S. Magistrate Judge Carolyn Ostby recommended that all of Plaintiffs' claims be dismissed, except for an equal protection claim against Oravec by the Personal Representatives of the Estate.  (Doc. 56 at 13.)  Judge Ostby found the individual Plaintiffs did not have standing to sue in their individual capacities, but she determined the Personal Representatives had standing to pursue claims on behalf of the Estate.  (Doc 56 at 6-7.)

Judge Ostby also specifically addressed the issue of qualified immunity, and found Oravec was not entitled to qualified immunity on the Personal Representatives' claims.  (Doc. 53 at 45.)  Judge Ostby determined that the Personal Representatives had adequately alleged the violation of a federally

---

[2]  The action initially included claims on behalf of the family of Robert Springfield, but those claims have since been dismissed.

3

secured right to nondiscriminatory investigative services, and that the right was clearly established.  (Doc. 53 at 35-37, 44.)

Judge Ostby's Findings and Recommendations were adopted in full by U.S. District Court Judge Richard Cebull on June 17, 2010.  (Doc. 56 at 13.)  Oravec appealed the Court's denial of his qualified immunity motion; the Ninth Circuit affirmed.  *Cole v. Oravec*, 465 Fed.Appx. 687 (9th Cir. 2012).  Oravec subsequently filed a petition for a writ of certiorari with the United States Supreme Court; the Supreme Court denied Oravec's petition.  (Doc. 75.)

After remand, Oravec filed a motion for summary judgment on the Personal Representatives' sole remaining *Bivens* claim.  (Doc. 126.)  In his motion, Oravec again asserted he was entitled to qualified immunity because his alleged discriminatory acts occurred after Bearcrane's death.  Judge Ostby agreed, finding Bearcrane's Estate did not have a cause of action for violation of his constitutional rights when the alleged acts giving rise to the violation occurred after his death. (Doc. 138 at 23.)  District Judge Sam E. Haddon adopted Judge Ostby's Findings and Recommendations, granting Oravec's Motion for Summary Judgment in full on July 22, 2014.  (Doc. 142.)

Plaintiffs appealed Judge Haddon's July 2014 order granting summary judgment, and also Judge Cebull's June 2010 order dismissing Plaintiffs' individual capacity claims.  (Doc. 146.)  The Ninth Circuit reversed the dismissal

of the individual capacity claims, finding the individual Plaintiffs have standing to assert equal protection claims based on their denial of benefits under the crime victims' rights statutes. (Doc. 152.) The Ninth Circuit also found Plaintiffs plausibly alleged an equal protection claim against the FBI. *Id.* The court remanded the case for consideration of Oravec's qualified immunity defense. *Id.*

After the case was remanded to this Court, Plaintiffs filed a Second Amended Complaint. (Doc. 159.) The Second Amended Complaint alleges violations of the Plaintiffs' Fifth Amendment equal protection rights against the FBI and Oravec. *Id.* at ¶¶ 57-58. Plaintiffs' claim against Oravec is asserted under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) ("*Bivens*"). *Id.* at ¶ 12.

In the Second Amended Complaint, Plaintiffs allege a "Policy of Discrimination Against Native Americans in [the] Investigation and Prosecution of Crimes." *Id.* at 6. The Plaintiffs allege "[c]rime is rampant and out of control in Indian Country," and they cite crime statistics, political statements, and news articles to support their claim. *Id.* at ¶¶ 20-22. They further allege that the refusal of federal agencies to provide the same law enforcement services to Native Americans as provided to non-Native Americans has played a major role in creating this serious crime problem. *Id.* at ¶ 22.

The Second Amended Complaint further alleges Oravec and the FBI have "adopted and engaged in a continuing pattern and practice of selectively

5

discriminating against Native Americans in providing law enforcement services on the Crow reservation."  (Doc. 159 at ¶¶ 26, 51, 52, 60.)  Plaintiffs allege that Oravec's discriminatory pattern and practice, including "the failure to adequately investigate crimes," has led "in many instances to a failure to prosecute crimes against Native Americans."  *Id.* at ¶ 26.

Plaintiffs also make several allegations concerning Oravec's investigation of the death of Steven Bearcrane.  Plaintiffs claim that due to his alleged "patently inadequate investigation," they have been denied benefits and services under the crime victims' statutes.  *Id.* at ¶¶ 19, 60.

## II.    Legal Standard

Oravec moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Dismissal is proper under Fed. R. Civ. P. 12(b)(6) only when the complaint lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory.  *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

6

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility is context-specific, requiring courts to draw on judicial experience and common sense when evaluating a complaint. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).

When considering a 12(b)(6) motion, a court must accept as true the allegations of the complaint and construe them in the light most favorable to the nonmoving party. *Hardesty v. Barcus*, 2012 WL 705862, *2 (D. Mont. Jan. 20, 2012). However, "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 555 (2007).

## III.   Discussion

Oravec sets forth two arguments in support of his motion to dismiss. First, Oravec asserts the Plaintiffs have not stated a cognizable claim for an implied right of action for damages under *Bivens*. (Doc. 162.) Second, Oravec argues he is entitled to qualified immunity. *Id.*

///

7

### A. *Bivens* Cause of Action

A *Bivens* claim is an implied right of action for damages against a government official alleged to have violated an individual's constitutional rights. *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1854 (2017) ("*Abbasi*"). The Supreme Court first acknowledged the claim in the context of a Fourth Amendment search and seizure violation. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). The Court has since recognized *Bivens* claims in only two other cases – a Fifth Amendment due process claim based on gender discrimination, and an Eighth Amendment cruel and unusual punishment claim for failure to provide a prisoner with adequate medical treatment. *Davis v. Passman*, 442 U.S. 228 (1979) and *Carlson v. Green*, 446 U.S. 14 (1980), respectively. Apart from these three cases, the Supreme Court has consistently declined to extend *Bivens* to other constitutional contexts. *Abbasi*, 137 S.Ct. at 1855-57 (noting "[i]n cases decided after *Bivens*, and after the statutory implied cause-of-action cases that *Bivens* itself relied upon, the Court adopted a far more cautious course before finding implied causes of action.").

The Supreme Court recently reaffirmed and underscored its hesitation to extend *Bivens*. In *Abbasi*, the Court observed that it "has made clear that expanding the *Bivens* remedy is now a disfavored judicial activity." *Abbasi*, 137 S.Ct. at 1857 (internal quotations omitted.) Using judicial power to create such a

8

remedy, the Court said, is a "significant step under separation-of-powers principles." *Id.* at 1856. The Court went so far as to suggest the three recognized *Bivens* cases may have resulted differently had they been decided today. *Id.* The Court said "[i]t is not necessarily a judicial function to establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation, with all of its burdens on some and benefits to others." *Id.* at 1858.

In determining whether to extend an implied cause of action under the Constitution, "separation-of-powers principles are or should be central to the analysis." *Id.* at 1857. The analysis focuses on answering the question, "who should decide whether to provide for a damages remedy, Congress or the courts?" *Id.* "The answer most often will be Congress." *Id.*

The Court also articulated a two-part test to determine whether *Bivens* should be extended. *Id.* at 1859. The test first focuses on whether a case presents a new *Bivens* context. *Id.* "If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." *Id.* In that event, the court should conduct "a special factors analysis" to determine whether a *Bivens* remedy should be implied. *Id.* at 1860.

///

///

### 1. Step One – Are the Plaintiffs Seeking a Bivens Remedy in a New Context

This case clearly differs in a meaningful way from the three *Bivens* claims recognized by the Supreme Court.  Plaintiffs allege Oravec deprived Plaintiffs of equal protection of the law required under the Due Process Clause of the Fifth Amendment by engaging in racially discriminatory police practices.  *Davis v. Passman* is the only *Bivens* case recognized by the Supreme Court based on an alleged violation of the Fifth Amendment.  442 U.S. 228 (1979).  But *Davis* involved allegations against a Congressman for discriminating against an employee on the basis of sex, not race.  In fact, "[t]he Fifth Amendment has never been the subject of a *Bivens* claim related to racial discrimination."  *Bierwiler v. Goodwin*, 2018 WL 3559134, *3 (D. Mont. May 22, 2018).

Additionally, other than the fact that they are both broadly based upon equal protection under the Fifth Amendment Due Process Clause, this claim bears very little resemblance to *Davis*.  The claims obviously involve substantial differences in the bases for the alleged discrimination (sex v. race), the interests being protected (employment v. law enforcement services), and the nature of the alleged discriminatory action (adverse employment action v. failure to provide investigative services).  The present case thus seeks to expand *Bivens* to a new category of cases – equal protection claims based on the failure to provide equal law enforcement services.  Recognizing such a claim would provide a *Bivens*

10

remedy for an entirely new class of plaintiffs; it would greatly expand the liability

exposure of officers and employees of law enforcement agencies; and it would

extend liability for conduct never before recognized in a *Bivens* context.

In *Abbasi,* the Supreme Court pointed out that "even a modest extension is

still an extension." *Abbasi*, 137 S.Ct. at 1864.  Here, Plaintiffs clearly seek much

more than a modest extension of any equal protection *Bivens* claim previously

recognized by the Supreme Court.  The claim therefore arises in a new *Bivens*

context.

### 2.  Step Two – Should Bivens be Extended into a New Context

At step two in the *Abbasi* analysis, the Court is required to determine (1)

whether there is an "alternative, existing process for protecting" the Plaintiffs'

interests, and (2) whether there are "special factors counseling hesitation in the

absence of affirmative action by Congress."  *Id.* at 1857 (quoting *Bivens*, 403 U.S.

at 396.)

### a.  Alternative Process

Oravec argues an alternative process is available to protect the Plaintiffs'

interests.  First, Oravec asserts the Plaintiffs could report their concerns with

Oravec's investigatory practices to the Assistant United States Attorney or to

Oravec's superiors.  (Doc. 163 at 21.)  Alternatively, Oravec argues the Plaintiffs

complaints could have been investigated through the Office of the Inspector

11

General.  *Id.* at 22.  Finally, Oravec argues a wrongful death action under Montana law would provide Plaintiffs with an alternative remedy.  *Id.* at 23.

"[A]n alternative remedy need not be perfectly congruent with *Bivens* or perfectly comprehensive, [but] it still must be adequate."  *Rodriguez v. Swartz*, 899 F.3d 719, 739 (2018) (internal citations omitted).  The Court finds none of Oravec's suggested alternatives to be adequate.  First, simply reporting Oravec's alleged discriminatory conduct to his superiors, the AUSA, or the Inspector General is plainly not an alternative remedy.  If simply reporting a constitutional violation to a federal employee's agency constitutes an adequate alternative remedy, it would effectively eliminate a *Bivens* remedy entirely.  Such a recourse is always available.  But there is certainly no assurance that it provides a meaningful avenue for the initiation, review, and resolution of a complaint of unlawful discrimination.

This situation differs significantly from the cases cited by Oravec.  In each of the cases he relies upon the plaintiff had a well-established, comprehensive remedial scheme available to address their complaints.[3]  Here, there is no similar

---

[3]  Oravec cites *Doe H. v. Haskell Indian Nations Univ.*, 266 F.Supp.3d 1277, 1285 (D. Kan. 2017) (plaintiff's complaint was subject to an executive order prohibiting discrimination and providing procedural due process for investigation of complaints); *Spagnola v. Mathis*, 859 F.2d 223 (D.C. Cir. 1988) (plaintiff's complaint was subject to the Civil Service Reform Act); *Schweiker v. Chilicky*, 487 U.S. 412 (1988) (plaintiff had a remedy under the Social Security Disability Benefits Reform Act of 1984).

process in place providing for the initiation of a complaint by an aggrieved party, requiring the agency to investigate the complaint, or for any remedial measures to be taken as a result of the investigation.  What, if any, action may be taken in response to a complaint of discrimination would be completely up to the agency or supervising official's discretion.

Oravec's argument that Plaintiffs may pursue a wrongful death action under Montana law is also unpersuasive.  Any wrongful death claim could only be asserted against Holocomb, seeking damages for his actions in causing the death of Steven Bearcrane.  The claim could not be asserted against Oravec.  Oravec's conduct occurred after Mr. Bearcrane's death, and obviously had no causal relationship to the death itself – at least under a tort law, proximate cause analysis. Such a claim would also do nothing to redress the Plaintiffs' equal protection claim.  Plaintiffs are seeking a remedy for a violation of a constitutional right, not tort damages for wrongful death.

### b.  Special Factors Counseling Hesitation

Although there is no adequate alternative avenue for protecting the Plaintiffs' interests, that does not end the inquiry.  As noted by the Fifth Circuit, "the *absence* of a remedy is only significant because the *presence* of one precludes a *Bivens* extension."  *Hernandez v. Mesa*, 885 F.3d 811, 821 (5th Cir. 2018) (emphasis in original); *See also Wilkie v. Robbins,* 551 U.S. 537, 550 (2007)

("even in the absence of an alternative, a *Bivens* remedy is a subject of judgment.")
A court must still determine whether there are "special factors counseling
hesitation in the absence of affirmative action by Congress."  *Bivens,* 403 U.S. at
396.  Special factors can include public policy concerns, congressional action,
separation-of-powers issues, and alternative forms of relief available, among
others.  *Id.* at 1860-65.  Several of these factors are applicable here.

### i.   Congressional Action

In its special factors discussion in *Abbasi*, the Supreme Court made clear
that "legislative action suggesting that Congress does not want a damages remedy
is itself a factor counseling hesitation."  *Id*. at 1865.  In determining congressional
intent, the silence of Congress may also be relevant.  In *Abbasi*, for example,
detainees who were held on immigration violations following the September 11,
2001 terrorist attacks sought a *Bivens* remedy relating to the conditions of their
confinement.  The Supreme Court pointed out that congressional interest in the
government's response to the attack had been "frequent and intense," including
interest in the conditions of confinement for detainees.  *Id.* at 1862.  "Nevertheless,
'[a]t no point did Congress choose to extend to any person the kind of remedies
that respondents seek in this lawsuit."  *Id.* (quoting *Schweiker*, 487 U.S. at 426.)
Given that high-level policies attract the attention of Congress, the Court found it

difficult to believe that congressional inaction in those circumstances was inadvertent.  *Id.*

With respect to the detainees' separate claims against the warden of the facility, the Court also noted that Congress had passed the Prison Litigation Reform Act of 1995, which brought comprehensive changes to prisoner abuse claims in federal court.  The Court found it significant that Congress did "not provide for a standalone damages remedy against federal jailers," suggesting that it chose not to extend a damages remedy to all claims of prisoner mistreatment.  *Id.* at 1865.

In this case, Oravec points out that Congress did not provide for a private right of action for damages for crime victims under the Crime Victims' Rights Act, 18 U.S.C. § 3771, or the Victims' Rights and Restitution Act of 1990, 34 U.S.C. § 20141.  (Doc. 163 at 23-24.)  He argues this omission is a strong indication of "Congress' judgment that it is not desirable to empower crime victims to take the Government to court over its enforcement decisions."  *Id.* at 16.  Plaintiffs respond that they are not asserting a claim for a violation of the crime victims' statutes. Instead, "[t]hey are alleging an equal protection violation that resulted in the creation of a barrier to the benefits afforded by those statutes."  (Doc. 166 at 23-24.)

Nevertheless, Plaintiffs' claims are dependent on the crime victims' statutes. The Ninth Circuit found Plaintiffs' standing to assert equal protection claims in their individual capacities arose from the denial of benefits under those statutes. (Doc. 152 at 3.) It is significant to the special factors analysis, then, that Congress enacted these statutes to provide rights for crime victims, but explicitly declined to create a damages remedy against the United States or its officers or employees. Under the Crime Victims' Rights Act, Congress provided:

> Nothing in this chapter shall be construed to authorize a cause of action for damages or to create, to enlarge, or to imply any duty or obligation to any victim or other person for the breach of which the United States or any of its officers or employees could be held liable in damages. Nothing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction.

18 U.S.C. § 3771(d)(6).

Moreover, the Act directed the Attorney General to promulgate regulations to enforce the rights of crime victims, and required the designation of an administrative authority to receive and investigate complaints relating to the rights of crime victims. 18 U.S.C. § 3771(f)(1)(A). The Act further provides, however, that the Attorney General "shall be the final arbiter of the complaint, and that there shall be no judicial review of the final decision of the Attorney General by a complainant." 18 U.S.C. § 3771(f)(2)(D).

The Victims' Rights and Restitution Act of 1990 similarly makes clear that the Act does not create a private right of action, stating: "[t]his section does not

16

create a cause of action or defense in favor of any person arising out of the failure of a responsible person to provide information as required by subsection (b) or (c)."  34 U.S.C § 20141(d).

The absence of a remedy against the United States or its officers and employees under either Act may not be determinative in the circumstances presented here. Plaintiffs are correct that they are asserting an equal protection claim, not a direct claim for damages under either statute.  But Congress' deliberate omission of any private right of action or claim for damages by a crime victim against an officer of the United States under either Act certainly counsels hesitation.  It suggests that Congress considered the rights to be afforded crime victims, but expressly chose not to provide for a right of action for damages.

### ii.  Separation of Powers Considerations

Separation of powers principles also caution against extending a *Bivens* remedy in this matter because such an extension may "require courts to interfere in an intrusive way with sensitive functions of the Executive Branch."  *Abbasi*, 137 S.Ct. at 1861.  Plaintiffs challenge the adequacy of Oravec's investigation.  The Plaintiffs dispute this (s*ee e.g.,* Doc. 166 at 10), but their Second Amended Complaint alleges otherwise.  They repeatedly claim Oravec's investigation of Mr. Bearcrane's death was "patently deficient," and was not "an adequate investigation."  (Doc. 159 at ¶¶ 16, 17, 19, 26, 27, 30, 34, 35, 40, 41, 46, 50, 51,

52, 60, 61.)  Therefore, extending a *Bivens* remedy to this claim may invite judicial interference with the Executive Branch's criminal investigatory functions.  "The investigation and prosecution of a crime has long been a core responsibility of the executive branch."  *Gonzalez v. U.S.*, 814 F.3d 1022, 1028 (9th Cir. 2016.)

It is true that *Bivens* arose from a law enforcement investigatory function in the context of search-and-seizure.  But courts routinely evaluate law enforcement actions in the realm of search and seizure, and are well equipped to determine whether a law enforcement action in that area is within the bounds of the Constitution.  Courts are less equipped to evaluate the adequacy of law enforcement investigation decisions.  Judicial guidance in this area is sparse, again counseling hesitation.

Moreover, Plaintiffs suggest that Oravec's failure to adequately investigate crimes involving Native Americans "leads in many instances to a failure to prosecute crimes against Native Americans."  (Doc. 159 at ¶ 26.)   Plaintiffs also allege that Oravec's misrepresentation of facts to the prosecutor and his "inadequate investigation into the murder, prevented the prosecutor from prosecuting the killer of Mr. Bearcrane . . . ."  *Id.*  at ¶ 32.  To the extent Plaintiffs' claim calls on the Court to evaluate the government's prosecution decisions, it is particularly not suited for judicial review.  The Supreme Court "has recognized on several occasions over many years that an agency's decision not to prosecute or

18

enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion. This recognition of the existence of discretion is attributable in no small part to the general unsuitability for judicial review of agency decisions to refuse enforcement." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985).

Finally, the Supreme Court in *Abbasi* stressed that "a *Bivens* claim is not 'a proper vehicle for altering an entity's policy.'" *Abbasi,* 137 S.Ct. at 1860 (quoting *Correctional Serv. Corp. v. Malesko,* 534 U.S. 61, 74 (2001). Plaintiffs' Second Amended Complaint alleges a policy of discrimination against Native Americans in the investigation and prosecution of crimes, and that Defendants "have adopted and engaged in a continuing pattern and practice" of discrimination against Native Americans. (Doc. 159 at 6, 12.) To the extent Plaintiffs are challenging FBI policies, patterns and practices through this action, the claim is ill suited for judicial intrusion. Such a broad claim could "call into question the formulation and implementation of a general policy." *Abbasi*, 137 S.Ct. at 1860.

### iii.  Suitability for Judicial Remedy

Ultimately, the special factors "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi,*

137 S.Ct. at 1857-58.  If a Court must "hesitate before answering that question in the affirmative" there are special factors counseling hesitation.  *Id.*  at 1858.

The Supreme Court emphasized that there are many economic and governmental concerns to consider in determining whether to extend a *Bivens* remedy.  *Abbasi*, 137 S.Ct. at 1856.  The Court pointed out that "[c]laims against federal officials often create substantial costs, in the form of defense and indemnification," and that Congress "has a substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government."  *Id.*  The Court said the time and administrative costs of the litigation process are "significant factors to be considered."  *Id.*  "When an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws, rather than those who interpret them."  *Id.* at 1857 (internal quotations and citations omitted).  Therefore, "[i]n most instances . . . the Legislature is in the better position to consider if the public interest would be served by imposing a new substantive legal liability."  *Id.* (internal quotations omitted).

Heeding this admonition, the Court finds that Congress is in the best position to evaluate whether to extend liability in the circumstances presented here. As discussed above, recognition of a claim for race-based discrimination for failing

to provide law enforcement services would constitute a substantial extension of the *Bivens* remedy. It could have a significant impact on the liability of officers and employees of law enforcement agencies, and impose all of the costs and burdens attendant to the litigation process. In situations such as this, the judiciary is simply not well suited to "consider and weigh the costs and benefits" of permitting such a claim to proceed. *Id.* at 1858.

It is also important to note that Congress has found it appropriate to create remedies for race-based discrimination in other areas. For example, the Civil Rights Act of 1964 protects individuals from racial discrimination in employment, in places of public accommodation, or by any program or activating receiving federal benefits. 42 U.S.C. §§ 2000e-3, 2000a, 2000d, respectively. The Fair Housing Act of 1968 also prohibits racial discrimination in the sale or rental of a dwelling. 18 U.S.C. § 3604. But in establishing those remedies, Congress also created a comprehensive statutory and regulatory scheme to efficiently and fairly adjudicate those claims. It also crafted appropriate remedies for violation of the anti-discrimination laws, and defined the damages recoverable for violation of those laws.

Just as with these other anti-discrimination enactments, Congress, rather than the judiciary, is better suited to evaluate the benefits and costs of establishing a remedy for racial discrimination in the provision of law enforcement services.

Congress can determine whether a remedy is appropriate.  If so, it can establish a procedure for the initiation and resolution of those claims.

If the Court were to create an expansion of *Bivens* in this case and provide an implied right of action for the denial of equal protection of law enforcement services, it would be in direct contravention of the clear instruction provided by the Supreme Court in *Abbasi*.  Therefore, the Court finds that Plaintiffs do not have a cognizable claim for an implied right of action under *Bivens* against Oravec. Accordingly, Oravec's Motion to Dismiss should be granted.

### B.  Oravec is Not Entitled to Qualified Immunity

Having found that Plaintiffs do not have a cognizable claim for an implied right of action under *Bivens*, the Court need not further determine whether Oravec is entitled to qualified immunity.  Nevertheless, the issue of Oravec's qualified immunity has already been determined by this Court.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Rodriguez*, 899 F.3d at 728 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The Court is therefore required to "evaluate two independent questions: (1) whether the officer's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident." *Rodriguez*, 899 F.3d at 729

(quoting *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1066 (9th Cir. 2016)).  This Court has already answered both question in the affirmative.

Defendants filed a motion to dismiss Plaintiffs' First Amended Complaint on October 9, 2009.  (Doc. 28.)  The motion was made on several grounds, including Oravec's entitlement to qualified immunity.  *Id.*  Judge Ostby issued Findings and Recommendations on the motion on May 25, 2010.  (Doc. 53.)  In her findings, Judge Ostby addressed both issues relevant to the qualified immunity determination.

As to the first issue, Judge Ostby found "it is clear that the PRs' decedents had a right to nondiscriminatory investigatory services."  (Doc. 53 at 36.)  Quoting with approval from *Elliot-Park v. Manglona*, 592 F.3d 1003, 1007 (9th Cir. 2010), Judge Ostby said "[t]he government may not racially discriminate in the administration of any of its services."  *Id.*  Judge Ostby also relied on *Estate of Macias v. Ihde*, 219 F.3d 1018, 1028 (9th Cir. 2000), where the Ninth Circuit stated "[t]here is a constitutional right . . .  to have police services administered in a nondiscriminatory manner – a right that is violated when a state actor denies such protection to disfavored persons."  *Id.* at 29.

Judge Ostby also found "[t]he right to non-discriminatory law enforcement and prosecutorial services is clearly established."  *Id.* at 36.  In so holding, Judge Ostby stated" "[t]he Ninth Circuit reasoned that '[it] hardly passes the straight-

23

faced test to argue at this point in our history that police could reasonably believe

they could treat individuals disparately based on their race.'  There need not be a

prior case with materially similar facts in order for a right to be clearly

established."  *Id.* at 36-37.  Further quoting from *Elliot-Park*, 592 F.3d at 1008-09,

Judge Ostby said:

> This is especially true in equal protection cases because the
> nondiscrimination principle is so clear.  "The constitutional right to be free
> from such invidious discrimination is so well established and so essential to
> the preservation of our constitutional order that all public officials must be
> charged with knowledge of it."

(Doc. 53 at 37.)

Judge Cebull adopted Judge Ostby's findings and recommendations in full.

(Doc. 56.)  Oravec appealed the Court's denial of his qualified immunity motion,

but the Ninth Circuit affirmed.  (Doc. 69.)  Oravec requested review of the decision

*en banc*, which was denied.  (Doc. 71.)  Oravec then filed a petition for a writ of

certiorari, which was also denied.  (Docs. 73, 75.)

Therefore, the issues relevant to Oravec's qualified immunity defense have

been determined.  In his present motion, however, Oravec argues that the Court's

prior decision related to whether Oravec had qualified immunity for the Personal

Representatives' claims on behalf of the estate, not to the Plaintiffs' individual

capacity claims.  (Doc. 169 at 10-11.)  Oravec further argues that the decision was

made with respect to the Amended Complaint before the Court at that time, and no

court has determined whether the Second Amended Complaint also sufficiently states a claim. *Id.* at 11.

While both of these statements are true, Oravec does not further explain – and it is not apparent to the Court – why either of these factors distinguish the Court's prior determination on the qualified immunity issue. The Court previously determined in the Personal Representatives' claims that individuals have a constitutionally secured right to non-discriminatory law enforcement and prosecutorial services, and that the right was clearly established. That conclusion is not changed in any way with respect to the individual capacity claims pled in the Second Amended Complaint. The existence of a constitutional right to non-discriminatory law enforcement services is not diminished when it is pled individually instead of in a representative capacity.

In addition, the asserted constitutional right has not changed from the Amended Complaint to the Second Amended Complaint. And Oravec once again seeks dismissal based on qualified immunity under a Fed. R. Civ. P. 12(b)(6) motion to dismiss. The Court is therefore tasked with conducting an identical qualified immunity analysis under the same standard previously applied by this Court.

In short, Oravec has not explained how the Court's previous conclusion is changed in any way with respect to the individual capacity claims. Nor has he

explained how the Amended Complaint sufficiently pled a plausible equal protection claim, but the Second Amended Complaint fails to do so.  Therefore, the Court will not reexamine Judge Ostby's analysis, which was adopted in full by the District Judge and affirmed by the Ninth Circuit.

## IV.    Conclusion

Based on the foregoing, **IT IS RECOMMENDED** that Defendant Oravec's Motion to Dismiss (Doc. 162) be **GRANTED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 7th day of February, 2019.

TIMOTHY J. CAVAN
United States Magistrate Judge

26