**JOSEPH H. HUNT**
Assistant Attorney General
**C. SALVATORE D'ALESSIO, JR.**
Acting Director, Torts Branch
**RICHARD MONTAGUE**
Senior Trial Counsel
**JAMES G. BARTOLOTTO**
Senior Trial Attorney
**KELLY HEIDRICH**
Trial Attorney
Civil Division
United States Department of Justice
P.O. Box 7146, Washington, DC 20044
james.bartolotto@usdoj.gov
Tel: 202-616-4174
Fax: 202-616-4314
*Attorneys for the Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | | |
|---|---|---|
| EARLINE COLE, CLETUS COLE, and PRECIOUS BEARCRANE, a minor child, | ) ) ) ) | CV-09-21-BLG-SEH-TJC |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT FBI'S MOTION FOR SUMMARY JUDGMENT** |
| FEDERAL BUREAU OF INVESTIGATION, SALT LAKE CITY FIELD OFFICE, FEDERAL BUREAU OF INVESTIGATION, BILLINGS OFFICE, and MATTHEW ORAVEC, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... iii

INTRODUCTION ....................................................................................... 1

BACKGROUND ........................................................................................ 2

PROCEDURAL HISTORY ........................................................................... 3

STANDARD OF REVIEW ........................................................................... 6

ARGUMENT ............................................................................................ 8

I.     The FBI's Actions Are Not Reviewable Under the APA ................................. 9

II.    Plaintiffs Lack Standing to Bring Their Equal Protection Claims Against
       the FBI .......................................................................................... 13

       a.   Plaintiffs' alleged injury is not concrete or particularized. ..................... 15

       b.   Plaintiffs' alleged injury cannot be redressed by the Court. .................... 20

III.   The Record Evidence Shows No Fifth Amendment Rights Violation .......... 23

CONCLUSION ......................................................................................... 26

# TABLE OF AUTHORITIES

Cases

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986).....................................................................................6

*Bates v. United Parcel Serv.,*
511 F.3d 974 (9th Cir. 2007) ......................................................................14

*Benigni v. City of Hemet,*
879 F.2d 473 (9th Cir. 1988) ......................................................................25

*Brinson v. Lind Rose Joint Venture,*
53 F.3d 1044 (9th Cir. 1995) ................................................................6, 23

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)............................................................................ 6, 7, 25

*Cole v. FBI,*
719 F. Supp. 2d 1229 (D. Mont. 2010)........................................................4

*Cole v. FBI,*
2019 WL 1100507 (D. Mont. Mar. 7, 2019) ...............................................5

*Cole v. FBI,*
2019 WL 1102569 (D. Mont. Feb. 7, 2019).................................................5

*Cole v. Oravec,*
700 Fed. Appx. 602 (9th Cir. 2017)................................................... passim

*Cole v. Oravec,*
2014 WL 2918314 (D. Mont. Jun. 26, 2014) ...............................................4

*Cole v. Oravec,*
2014 WL 3667918 (D. Mont. Jul. 22, 2014) ................................................4

*Devereaux v. Abbey,*
  263 F.3d 1070 (9th Cir. 2001) .......................................................................7, 23

*Elliot-Park v. Manglona,*
  592 F.3d 1003 (9th Cir. 2010) ..............................................................................24

*Fairbank v. Wunderman Cato Johnson,*
  212 F.3d 528 (9th Cir. 2000) ....................................................................................7

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
  528 U.S. 167 (2000).........................................................................................9, 16

*Heckler v. Cheney,*
  470 U.S. 821 (1985)............................................................ 8, 10, 11, 13

*Jesinger v. Nevada Fed. Credit Union,*
  24 F.3d 1127 (9th Cir. 1994) ....................................................................................6

*Linda R.S. v. Richard D.,*
  410 U.S. 614 (1981)............................................................. 17, 18, 19

*Los Coyotes Band of Cahuilla & Cupeno Indians,*
  729 F.3d 1025 (9th Cir. 2013) ..............................................................................11

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992)........................................................ 14, 15, 16, 19

*Lujan v. Nat'l Wildlife Fed.,*
  497 U.S. 871 (1990)....................................................................................................9

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986)................................................................. 6, 7, 23

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos. Inc.,*
  210 F.3d 1099 (9th Cir. 2000) ..................................................................................7

iv

*Norton v. Southern Utah Wilderness Alliance*,
    542 U.S. 55 (2004) ............................................................ 9, 10, 12, 13

*Orson, Inc., v. Miramax Film Corp.*,
    79 F.3d 1358 (3rd Cir. 1996) ...........................................................7

*Raines v. Byrd*,
    521 U.S. 811 (1997)...........................................................14

*Sierra Club v. Morton*,
    405 U.S. 727 (1972)...........................................................16

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) .......................................................... 14, 16, 19

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)........................................................... 14, 21

*United States v. Mitchell,*
    502 F.3d 931 (9th Cir. 2007) ...........................................................11

*Village of Willowbrook v. Olech*,
    528 U.S. 562 (2000)...........................................................24

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990)........................................................... 16, 18

*Ziglar v. Abbasi,*
    137 S. Ct. 1843 (2017)...........................................................5

Statutes

5 U.S.C. § 551(1) ...........................................................9

5 U.S.C. § 701(a) ...........................................................8

5 U.S.C. §§ 702-706 ....................................................................................1

5 U.S.C. § 706(1) ......................................................................................10

18 U.S.C. § 1152 ........................................................................................11

18 U.S.C. § 1153 ........................................................................................11

18 U.S.C. § 3771 ................................................................................. 17, 18

28 U.S.C. § 533 ..........................................................................................11

The Declaratory Judgment Act, 28 U.S.C § 2201(a)...............................21

42 U.S.C. § 10607 .............................................................................. 17, 18

Montana Code Annotated 46-18-241(2)(b) ............................................ 18

Montana Code Annotated 53-9-101, *et seq.* ......................................... 18

Montana Code Annotated 53-9-128........................................................ 19

## Rules

Fed. R. Civ. P. 56 ............................................................................ passim

L.R. 1 ............................................................................................... 27, 28

L.R. 7 ........................................................................................................27

## Regulations

25 C.F.R. § 12.23 ......................................................................................12

## INTRODUCTION

The Plaintiffs, relatives of decedent Steven Bearcrane, sue the Federal

Bureau of Investigation (FBI) for a Fifth Amendment equal protection violation

under the Administrative Procedure Act (APA), 5 U.S.C. §§ 702-706. *See* Second

Amended Complaint (Compl.), ¶¶ 10, 57-58 (Doc. 159). They contend the FBI

violated their equal protection rights by erecting a barrier which prevented them

from accessing crime victim benefits because they are Native Americans. *Cole v.*

*Oravec*, 700 Fed. Appx. 602, 604 (9th Cir. 2017) (Doc. 152); Compl., ¶¶ 46, 50,

58. Plaintiffs allege this barrier arose when FBI Special Agent Matthew Oravec,

due to an alleged animus against Native Americans, told the Montana Crime

Victim Compensation Program (CVCP) office that Bearcrane "caused his own

death," thus making them ineligible for benefits. Compl., ¶ 46a. For this, Plaintiffs

seek equitable relief from the FBI. *Id.*, at 31 (Prayers for Relief). After prior

dismissal orders by this Court and two opinions by the Ninth Circuit, the Plaintiffs'

equitable relief claim against the FBI (Count I) is the only remaining cause of

action. Docs. 56, 69, 122, 143, 152, 159, 200. The FBI now moves for summary

judgment pursuant to Federal Rule of Civil Procedure 56(a).

**BACKGROUND**

The material facts are straightforward and not genuinely disputed. On February 2, 2005, Bearcrane was shot and killed by his friend Bobby Holcomb in a trailer on reservation land, where Holcomb was living at the time. Holcomb claimed they argued, Bearcrane physically attacked him, and he shot Bearcrane in self-defense. No one else witnessed the shooting. Holcomb called 911, the Yellowstone County Sheriff's Office (YCSO) responded, and after it was determined the FBI had jurisdiction, FBI Supervisory Senior Resident Ernst Weyand assigned Oravec to investigate the case. After fully investigating the matter, the FBI submitted the evidence to the U.S. Attorney's Office, District of South Dakota[1] for prosecution consideration. Following presentation of the case to a grand jury by criminal Assistant U.S. Attorney (AUSA) Mara Kohn, prosecution of Holcomb was declined. Statement of Undisputed Facts (SOUF) (Doc. 230), ¶¶ 1-7, 11, 14-15, 18, 27-30.

During this time, Weyand also assigned FBI Victim Specialist Michele Stewart to advise and assist Plaintiffs in obtaining crime victim assistance. Stewart and Weyand met with the Plaintiffs several times and kept them informed about

---

[1] The U.S. Attorney's Office, District of Montana was recused.

the investigation and potential benefits available under Montana's crime victim compensation program. Stewart helped Plaintiffs submit a claim for crime victim compensation benefits with the State of Montana Crime Victim Compensation Program office. The claim was denied because the Montana office determined Bearcrane was "an offender" and his actions were "100% causally related to the crime." Plaintiffs appealed that denial and the Crime Victim Compensation Program office requested additional information from various sources to include the FBI, YCSO, and the U.S. Attorney's Office. Months later following receipt of additional information, and after the U.S. Attorney's Office decided it against prosecuting Holcomb, the Crime Victim Compensation Program office concurred with their original decision to deny Plaintiffs' claim for benefits. *Id.*, ¶¶ 8-10, 12-13, 16-17, 19-26, 31-33.

## PROCEDURAL HISTORY

This action was commenced February 24, 2009. The Defendants moved to dismiss on various grounds, including lack of standing and failure to state a claim on which relief can be granted. Initially, all five counts and all of the defendants were dismissed for lack of standing, with the exception of the equal protection

*Bivens* claims against Oravec on behalf of the Estates for Bearcrane and Robert Springfield.[2] *Cole v. FBI*, 719 F. Supp. 2d 1229, 1233-34 (D. Mont. 2010).

Following the close of discovery, Oravec moved for summary judgment on qualified-immunity grounds. Doc. 126. That was granted because the challenged conduct did not occur until after Bearcrane's death and couldn't have violated his rights. *Cole v. Oravec*, 2014 WL 3667918 (D. Mont. Jul. 22, 2014) (adopting *Cole v. Oravec*, 2014 WL 2918314 (D. Mont. Jun. 26, 2014)). Judgment was entered in favor of the FBI and Oravec and the case closed. Doc. 144. Plaintiffs appealed the 2010 dismissal of their personal claims against the FBI and Oravec. Doc. 146.

In an unpublished memorandum opinion, the Ninth Circuit affirmed the dismissal of the Plaintiffs' substantive due process and treaty-based claims as well as the dismissal of all claims on behalf of Bearcrane's Estate. *Cole*, 700 Fed. Appx. at 602. But the panel split on the question of whether Plaintiffs had demonstrated standing as to their personal Fifth Amendment equal protection claims against the United States and Oravec. The majority held the Plaintiffs had standing based on their "alleged denial of benefits under the crime victims' rights statutes." *Id*. at

---

[2] Springfield was the decedent in an unrelated case. The Springfield claims are no longer before the Court.

4

604.[3] Judge Callahan dissented on the grounds the majority misapplied circuit precedent, the Plaintiffs had not alleged a redressable grievance, and because they had not shown a causal connection between the Government's action and their claimed injuries. *Id.* at 608-09.

Following remand, the Court allowed Plaintiffs to amend the complaint to better comport with the Ninth Circuit's 2017 opinion. Doc. 158. On February 1, 2018, they filed this complaint, setting forth the two reversed claims alleging a violation of their own personal Fifth Amendment equal protection rights; one against the FBI for declaratory and injunctive relief and one against Oravec individually for compensatory damages under *Bivens*. Compl., ¶¶ 57-62. The FBI answered the Complaint (Doc. 161), and Oravec moved to dismiss under *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) (Doc. 162). The Court granted Oravec's motion and dismissed the *Bivens* claim. *Cole v. FBI*, 2019 WL 1100507 (D. Mont. Mar. 7, 2019) (adopting *Cole v. FBI*, 2019 WL 1102569 (D. Mont. Feb. 7, 2019)). Accordingly, Plaintiffs' Fifth Amendment equitable relief claim against the FBI is the only claim that remains. Consistent with the scheduling order (Doc. 202), the FBI now moves for summary judgment.

---

[3] "But the Bearcrane Family Members' other alleged injuries-in-fact do not confer standing to proceed with their equal protection claims, as these injuries are merely 'generalized grievances.'" *Cole*, 700 Fed. Appx. at 605 (citations omitted).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires a court to grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Jessinger,* 24 F.3d at 1130. Under Rule 56, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson,* 477 U.S. at 247-48 (original emphasis). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Id.* at 248. The movant bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex,* 477 U.S. at 323. If the movant meets this burden, Rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine dispute for trial as to elements essential to the nonmoving party's case. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986); *Brinson v. Lind Rose Joint Venture,* 53 F.3d 1044, 1049 (9th Cir. 1995). The nonmoving party cannot rest on mere allegations or

denials to meet this burden. *Celotex,* 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c)(1). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," no genuine issue for trial exists. *Matsushita,* 475 U.S. at 587 (1986). "When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc) (quoting *Celotex,* 477 U.S. at 325); *see also Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000) (holding that the *Celotex* "showing" can be made by "pointing out through argument—the absence of evidence to support plaintiff's claim"). Once the moving party carries its initial burden of production, the nonmoving party is "obligated to produce evidence in response." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos. Inc.*, 210 F.3d 1099, 1107 (9th Cir. 2000). Summary judgment presents the Court with the "opportunity to dispose of meritless cases and avoid wasteful trials." *Orson, Inc., v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3rd Cir. 1996) (citing *Celotex*, 477 U.S. at 327).

As demonstrated below, there are no genuine disputes of material fact regarding whether the FBI created a barrier to the Plaintiffs' access to statutory benefits and did so based on racial animus. *Cole*, 700 Fed. Appx. at 604. Moreover, Plaintiffs' allegations which purportedly demonstrate such a barrier for

discriminatory purposes are not a basis for overcoming summary judgment, are unsupported by the record, and will not improve at trial. Accordingly, based on the record before the Court, summary judgment for the FBI should be granted as a matter of law and the remaining claim dismissed.

## ARGUMENT

Plaintiffs' equal protection claim fails, and the FBI is entitled to summary judgment for three basic reasons: First, Plaintiffs have invoked the APA as the basis for suing the FBI, yet the FBI's actions under these circumstances are not APA-reviewable here. Plaintiffs ask this Court to declare the FBI's conduct during the Bearcrane investigation—based on their allegations that the investigation was patently inadequate and Oravec sabotaged their claim with the CVCP—violated their Fifth Amendment equal protection rights. They seek judicial review under the APA, but to the extent that they have challenged any specific agency action, those actions are not reviewable because they are committed to agency discretion by law. *See* 5 U.S.C. § 701(a); *Heckler v. Cheney*, 470 U.S. 821, 832 (1985).

Second, although they possessed standing to bring this action, they do not have standing at this summary judgment stage to proceed any further. Even if Plaintiffs' claim fell within the APA's waiver of sovereign immunity, they lack standing to bring a claim for the broad declaratory relief they request. *See Friends*

*of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180-81

(2000).

And Third, Plaintiffs cannot demonstrate a genuine dispute of material fact

on the issue that the FBI allegedly erected a barrier preventing them from

accessing statutory benefits for crime victims because of racial animus toward

Native Americans. Summary judgment is appropriate here because discovery has

turned up no evidence that the FBI violated Plaintiffs' equal protection rights in the

course of the Bearcrane investigation.

## I.  The FBI's Actions Are Not Reviewable Under the APA

Plaintiffs bring their claim against the FBI under the auspices of the APA,

which waives the sovereign immunity of the United States to allow "'[a] person

suffering legal wrong because of agency action, or adversely affected or aggrieved

by agency action within the meaning of the relevant statute'" to bring suit. *Norton*

*v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 61 (2004) (quoting 5 U.S.C. §

702); *see also* Compl., ¶ 10. "Under the terms of the APA," the plaintiff "must

direct its attack against some particular 'agency action' that causes it harm." *Lujan*

*v. Nat'l Wildlife Fed.*, 497 U.S. 871, 891 (1990). "Agency action" includes the

failure to act, 5 U.S.C. § 551(1), but the plaintiff must identify the inaction with the

same specificity; allegations of "[g]eneral deficiencies in compliance, unlike the

failure to issue a ruling … lack the specificity requisite for agency action." *Norton*, 542 U.S. at 66. The reviewing court may "compel agency action unlawfully withheld or unreasonably delayed[,]" 5 U.S.C. §706(1), but only agency action that is legally required may be compelled. *Norton*, 542 U.S. at 63. Thus, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton*, 542 U.S. at 64 (original emphasis).

Moreover, Section 701(a) bars judicial review when the action contested is committed to the agency's discretion by law. *Heckler*, 470 U.S. at 828. The Supreme Court has repeatedly recognized that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion. *Id*. at 831 (citations omitted). Thus, agency decisions not to take enforcement action are presumed immune from judicial review under the APA. *Id.* at 832.

The absolute discretion vested in law enforcement agencies "is attributable in no small part to the general unsuitability for judicial review of agency decisions to review enforcement." *Id.* This is no less the case when a plaintiff seeks to challenge an agency's failure to act rather than agency overreach, as "[t]he danger that agencies may not carry out their powers with sufficient vigor does not

necessarily lead to the conclusion that courts are the most appropriate body to police this aspect of their performance." *Id.* at 834. For example, a law enforcement agency's decisions regarding the funding of law enforcement services on reservations falls outside of the APA's waiver of sovereign immunity. *Los Coyotes Band of Cahuilla & Cupeno Indians*, 729 F.3d 1025, 1038 (9th Cir. 2013) (finding BIA's denial of funding for proposed law enforcement not reviewable under APA). Nor does a claim become reviewable if it is characterized as a challenge to the "*eligibility* to be considered" rather than the actual award; the distinction between eligibility for a benefit and receipt of the benefit is academic when the agency's decision is not reviewable in any instance. *Id.* at 1039.

Federal law vests the authority to investigate all federal crime not exclusively assigned to another federal agency with the FBI. *See generally* 28 U.S.C. § 533. The jurisdiction of the United States to investigate and prosecute crimes committed in Indian Country is governed by "the interplay between the Indian Country Crimes Act … 18 U.S.C. § 1152, and the Major Crimes Act, 18 U.S.C. § 1153[;]" ultimately, the United States retains jurisdiction over all major crimes committed on reservations. *United States v. Mitchell,* 502 F.3d 931, 946 (9th Cir. 2007). Pursuant to Federal regulations, the FBI and BIA maintain a memorandum of understanding "describing the relationship between the [FBI] and

the [BIA] in the investigation and prosecution" of those crimes. 25 C.F.R. § 12.23.

The FBI does not, however, make decisions regarding prosecution—that lies

within the province of the United States Attorney's Office.

Despite ostensibly bringing their equal protection claim under the auspices

of the APA, Plaintiffs have not identified what specific FBI actions (or inaction)

they challenge. Instead, they allege that the FBI did only "the most cursory"

investigation of Bearcrane's death, and that Oravec intentionally misrepresented

the facts of the case to the CVCP, which resulted in the CVCP's denial of

Plaintiffs' claim for crime victim compensation benefits. Compl., ¶¶ 27, 30(b),

45(a)-(b). But the allegation that the FBI was generally deficient in conducting the

Bearcrane investigation "lacks the specificity requisite for agency action." *Norton*,

542 U.S. at 66. Plaintiffs have not—and cannot—identify any "discrete action"

that the FBI was "required to take." *Id.* Alleging that the FBI failed to conduct

certain forensic tests or speak to certain witnesses, *see* Compl., ¶ 30(b)(iii), (c)(iii),

(c)(iv), is not sufficient to overcome this; the means and manner by which an FBI

agent conducts necessarily involves individual judgment and expertise, and the

judiciary is not in the business of determining whether or not, for example, a blood

spatter analysis should have been done in a particular case. *See Norton*, 542 U.S. at

63; *Heckler*, 470 U.S. at 832; *see also* Compl., ¶ 30(b)(iv).

Assuming they can present evidence on this allegation, Plaintiffs' claim Oravec misrepresented the facts by telling the CVCP that Bearcrane "caused his own death" is subject to the same analysis, as is their claim that Oravec misrepresented the facts to AUSA Kohn. Moreover, the FBI's decisions regarding how an investigation is conducted, what resources should be allocated to an investigation, and how information is presented to the prosecutor (or state government officials, for that matter), are discretionary enforcement decisions and presumably immune to judicial review. *Heckler,* 470 U.S. at 832. Accordingly, Plaintiffs' Fifth Amendment claim is not reviewable under the APA, and summary judgment should be granted.

## II. Plaintiffs Lack Standing to Bring Their Equal Protection Claims Against the FBI

Even if Plaintiffs had identified a reviewable FBI action under the APA, they lack standing to bring their Fifth Amendment claim because they have not alleged any concrete, particularized, injury arising from the FBI's conduct, and because the injury they do allege is not redressible in court. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional imitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). The doctrine of standing ensures that "federal courts do not exceed their authority as it has been traditionally

understood" by limiting "the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1574 (2016) (collecting cases). The "'irreducible constitutional minimum' of standing consists of three elements." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The plaintiff must have: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan*, 504 U.S. at 560-61; *see also Bates v. United Parcel Serv.*, 511 F.3d 974, 985 (9th Cir. 2007). This "triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998).

Each element of standing must be sufficiently alleged or proven "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. At the summary judgment stage, standing requires "a factual showing of perceptible harm." *Id.* at 566. To establish standing, therefore, the responding party must set forth specific facts, supported by evidence, to establish standing. *Id.* When one of the elements of standing "depends on the unfettered choices made by independent actors not before the courts and whose

14

exercise of broad and legitimate discretion the courts cannot presume to either control or predict … it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such a manner as to produce causation and permit redressability of injury." *Id.* at 561-62 (internal citations and quotation marks omitted).

At the pleading stage in this case, the Ninth Circuit ruled that Plaintiffs' articulated injury—that they were denied "access to" potential benefits under the various victims' compensation statutes—was sufficiently alleged to establish standing to bring their equal protection claim against the FBI. *Cole*, 700 Fed. Appx. at 604. Discovery, however, has failed to bring to light any facts that could support and maintain this standing theory. *See Lujan*, 504 U.S. at 561. Consequently, Plaintiffs lack standing to pursue their equal protection claim beyond the pleadings.

### a. Plaintiffs' alleged injury is not concrete or particularized.

Plaintiffs have not suffered the concrete, particularized injury required for standing. To establish injury-in-fact, a plaintiff must show the invasion of a legally protected interest, which is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. An "injury-in-fact" is more than an injury to a cognizable interest; "[i]t requires that the party seeking

review be himself among the injured." *Id.* at 563 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972)). A particularized injury affects the plaintiff "in a personal and individual way[,]" *Lujan*, 504 U.S. at n.1, but while particularization is necessary to establish injury-in-fact, it is not sufficient. *Spokeo*, 136 S. Ct. at 1548.

In *Spokeo*, the Court emphasized that "the injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete *and* particularized.'" 136 S. Ct. at 1545 (quoting *Friends of the Earth*, 528 U.S. at 180-81) (adding emphasis). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist[]" in a real, not abstract, terms. *Id.* Allegations of a possible future injury to do satisfy the requirements of Article III; a threatened injury must be "certainly impending" to constitute injury-in-fact. *Whitmore v. Arkansas*, 495 U.S. 149, 159 (1990). And while an injury need not be tangible to be concrete, the plaintiff must show more than the bare violation of a statutory right. *Spokeo*, 136 S. Ct. at 1549. Thus, "deprivation of a procedural right without some concrete interest that is affected by the deprivation" is insufficient for Article III standing. *Lujan*, 504 U.S. at 572. Finally, an individual does not have a judicially cognizable interest in the prosecution or non-prosecution of another, even where the prosecution may potentially result in some tangible benefit to the individual. *See Linda R.S. v.*

16

*Richard D.*, 410 U.S. 614, 619 (1981) (custodial parent seeking child support did not have standing to seek injunction forbidding district attorney to decline prosecution of non-custodial parent under criminal "deadbeat" parent law, because it was "at best only speculative" that threat of prosecution would result in payment of support). Because a private citizen lacks a judicially cognizable interest in the prosecution of another, the possibility that criminal prosecution may provide tangential benefits to a third party is not the "direct nexus" between party's interests and the enforcement of the criminal law, such as is required to demonstrate standing. *Id.* at 619.

Plaintiffs' claim they were deprived of "the protection and benefits accorded to other citizens under the Crime Victims' Rights Act, 18 U.S.C. § 3771, and 42 USC § 10607" is not sufficiently concrete or particularized to confer standing at this stage. Compl., ¶ 58 (First Claim for Relief). As a threshold matter, Plaintiffs have never identified what benefits they feel they were wrongly denied under any statute. The federal statutes are largely concerned with the procedural rights of a victim during a criminal prosecution. *See* 18 U.S.C. § 3771 and 42 U.S.C. § 10607. In fact, Plaintiffs never filed any claims for crime victim compensation benefits under those provisions, but rather filed for benefits with CVCP under the provisions of the Montana Code Annotated (MCA). SOUF, ¶¶ 12, 16. Denial of a

procedural right cannot form the basis for standing without evidence that some actual harm resulted from the violation. Plaintiffs cannot show that here, as there was never a criminal prosecution in the first place. *See Whitmore*, 495 U.S. at 1150. Aside from the procedural rights, the federal statutes provide only for restitution, which is paid by the criminal defendant, and only after conviction. *See* 18 U.S.C. § 3771 and 42 U.S.C. § 10607. More than a little speculation is required to infer that, had the FBI taken some other action, Holcomb would have been indicted, prosecuted, and convicted, and an order for restitution to the Plaintiffs entered. *See Linda R.S.*, 410 U.S. at 619. Moreover, the MCA indicates that crime victims who receive monetary restitution from the criminal defendant must reimburse the CVCP for any crime victim benefits it paid out to them. *See* MCA 46-18-241(2)(b). Even assuming Plaintiffs received crime victim compensation from Montana, and then Holcomb was convicted and an order of restitution entered, they would have to reimburse CVCP for the benefits they received. *Id.*

Plaintiffs have also failed to identify which benefits they believe they should have received under the Montana Victims Compensation Act, MCA 53-9-101, *et seq.* While Plaintiffs did file a claim under that Act, the CVCP's denial does not amount to an injury-in-fact. First, Plaintiffs can point to no concrete injury arising from that denial because they cannot demonstrate that they would have met the

statutory requirements to receive any of the specific benefits even if the Board had approved their claim. For example, the MCA provides for 66 2/3% of the primary victim's lost wages but that compensation can only be claimed by the victim's dependents. *See* MCA 53-9-128. Medical costs and funeral expenses are also provided for, but only where those costs are not otherwise covered. *Id.* The record, however, does not show that the Plaintiffs incurred any such costs. Finally, the statute provides a limited amount for mental health services, but the Plaintiffs have not established they sought or paid for any covered treatment within the time limits required under MCA 53-9-128.

Moreover, the CVCP's denial of Plaintiffs' claim cannot constitute a concrete injury because the line of causation between the FBI's conduct and the CVCP's determination wanders deep into the realm of conjecture. *See Spokeo*, 136 S. Ct. at 1545; *Lujan*, 504 U.S. at 561. Plaintiffs ask the Court to assume that the CVCP determined that Bearcrane's death was a result of self-defense because the FBI failed to uncover clear evidence to the contrary. But they have never adequately articulated exactly what it was that the FBI did or failed to do, much less supported that assertion with material facts. Further, the sheer number of third-party actors and decision-makers involved in the investigation—the FBI, BIA, YCSO, and U.S. Attorney's Office—confounds Plaintiffs' theory that the CVCP's

decision was solely informed by the FBI's allegedly corrupted conclusion. The CVCP received information from the U.S. Attorney's Office and the YCSO, and considered the claim both directly and on appeal. Had there been any patent deficiencies in the investigation, there were multiple points at which multiple third-parties could or should have raised concerns. Plaintiffs' theory of injury thus fails at two levels; they can neither show that they were denied crime victims' benefits because of the FBI's conduct during the investigation, nor that they would have qualified for any of the statutory benefits they were denied. Consequently, they cannot show that they suffered the "concrete, particularized injury" necessary to establish standing.

**b.      Plaintiffs' alleged injury cannot be redressed by the Court.**

Even if there were any evidence to support Plaintiffs' claim that the FBI sabotaged their claim for benefits or erected a barrier based on racial bias—none of which has been demonstrated beyond mere allegations—they still lack standing because the equitable relief they seek—for the Court to declare that the FBI acted unconstitutionally in the course of the Bearcrane investigation and to enjoin the FBI from doing that in the future—will not redress that grievance.

The Declaratory Judgment Act, 28 U.S.C § 2201(a), establishes the power of a federal court to "declare the rights and other legal relations of any interested

party seeking such a declaration," when there is "a case of actual controversy within its jurisdiction." Relief that does not remedy the particular injury alleged "cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel*, 523 U.S. at 107. Moreover, the remedy must alleviate the injury in some tangible way; mere "psychic satisfaction" at seeing "the Nation's laws … faithfully enforced" is "not an acceptable Article III remedy because it does not redress a cognizable Article III injury." *Id*. at 107. Thus, if the "relief sought" by the plaintiff would not "likely remedy its alleged injury in fact, we must conclude that [plaintiffs] lack standing to maintain [their] suit." *Id.* at 109.

Here, the Court can provide no tangible remedy to the alleged wrongs. The Court cannot order the State of Montana to reverse its CVCP's discretionary denial of Plaintiffs' claim for crime victim compensation benefits, and even if the Court could compel the FBI to reinvestigate the Bearcrane homicide or require the U.S. Attorney's Office to prosecute Holcomb, Plaintiffs expressly disclaim such relief. *See* Plaintiff-Appellants' Reply Brief, *Cole v. FBI*, No. 14-35664 (9th Cir. Mar. 20, 2015) (Dkt. 31-1), at 27 (Plaintiffs "are not asking the Court to direct the government to take any specific action.").

Plaintiffs have repeatedly explained that they are only asking the Court to "declare the FBI's conduct unconstitutional[.]" Plaintiff-Appellants' Opening

Brief, *Cole v. FBI*, No. 14-35664 (9th Cir. Dec. 17, 2014) (Dkt. 11-1), at 11; *see also* Pl. Opp. to Oravec's MTD at 20 (Doc. 166) (Plaintiffs are "asking the Court to order the FBI not to discriminate."); Plaintiff-Appellants' Reply Brief, *Cole v. FBI*, No. 14-35664 (9th Cir. Mar. 20, 2015) (Dkt. 31-1), at 27 (Plaintiffs are "asking only that the Court declare a practice unconstitutional[.]"). But to establish standing, Plaintiffs must demonstrate that the sweeping declaratory judgment they seek would actually redress their specific injury—the denial of crime victims compensation benefits. It is difficult to imagine how a judicial declaration that the FBI "acted unconstitutionally" would remedy that harm. Even if Plaintiffs could reapply for Montana crime victims compensation benefits in the wake of such a declaration, the declaration would not alter the information provided to the CVCP or its analysis. A different investigation outcome presumably would be needed for that. And recognizing the legal pitfalls involved, Plaintiffs steer clear of asking the Court to compel the FBI to reinvestigate the Bearcrane homicide or to alter its investigative conclusions. Moreover, whether or not Plaintiffs meet the statutory qualifications for each specific benefit is a question independent of the underlying investigation, and, as discussed above, Plaintiffs cannot show that they actually qualified for any of them. Consequently, a declaration regarding the

constitutionality of the FBI's conduct would not redress their injury, and therefore Plaintiffs lack standing to bring their claim.

### III. The Record Evidence Shows No Fifth Amendment Rights Violation

Rule 56 requires the Plaintiffs to designate specific facts showing that there is a genuine dispute for trial as to the elements essential establishing the FBI erected a barrier to their access to crime victim compensation benefits because of racial animus toward Native Americans. *Matsushita,* 475 U.S. at 586-87; *Brinson,* 53 F.3d at 1049. Plaintiffs cannot now rest on mere allegations or denials, as previously done, to meet this burden. Fed. R. Civ. P. 56(c)(1), (e). Furthermore, because Plaintiffs have the burden of proof at trial, and the FBI has shown herein an absence of evidence to support Plaintiffs' claims, the FBI is entitled to summary judgment as a matter of law. *Devereaux*, 263 F.3d at 1076.

The record established in this case readily demonstrates that there are no genuine disputes of material fact regarding Plaintiffs' sole remaining claim; whether the FBI's actions during the Bearcrane investigation violated Plaintiffs' Fifth Amendment equal protection rights by denying them access to crime victim compensation benefits. Plaintiffs have failed to adduce any evidence that the FBI violated their equal protection rights in the course of the Bearcrane investigation.

Accordingly, based on the record before the Court, the FBI's motion for summary judgment should be granted and the claim dismissed.

Both this Court and the Ninth Circuit have previously held that law enforcement officers must administer police services in a nondiscriminatory manner. *See*, *e.g.*, Doc. 56 at 5-6. To establish an equal protection violation arising from the provision of law enforcement services, Plaintiffs must show that the police services provided were clearly inadequate. In some circumstances, a plaintiff may do so by showing that he or she was denied services otherwise made available to the general public, and that the denial was due to some arbitrary or otherwise constitutionally impermissible reason. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). In the Ninth Circuit, a plaintiff may do this by pointing to an obviously appropriate investigative step that inexplicably was not taken. *See Elliot-Park v. Manglona*, 592 F.3d 1003, 1006 (9th Cir. 2010). Plaintiffs cannot do that here. Discovery has failed to turn up any evidence that the Bearcrane investigation was so "obviously deficient" as to constitute a violation of equal protection. And the Plaintiffs' "evidence" will not improve from now until trial.

Unlike the DUI traffic case that gave rise to *Elliot-Park*, homicide investigations are complex and necessarily involve the discretionary judgment of

the agents involved. That is not to say a homicide case cannot support an equal protection "denial of law enforcement services" claim, but it is to say that a discriminatory abuse of law enforcement discretion in a case like the one here will be comparatively harder to prove. The *Elliot-Park* officers' failure to perform a breathalyzer test readily showed an inadequate investigation of a potential DUI. But Plaintiffs can point to nothing comparable here—there are no investigative steps so obviously required that the FBI's failure to conduct them amounted to a denial of any investigation at all. In the absence of such obvious steps, Plaintiffs— still, after several rounds of discovery—can only point to the allegations in their Complaint, which consist of suggested additional or alternative steps, or alternative interpretations of the evidence. SOUF, ¶¶ 34, 35(a)-(c). Their allegations that Oravec failed to interview key witnesses or gather physical evidence are not supported by the record. SOUF, ¶¶ 28-29, 35(a)-(c). Nor does the record demonstrate that the FBI harbored the discriminatory motive required to prove an equal protection claim. *See Benigni v. City of Hemet*, 879 F.2d 473, 477 (9th Cir. 1988). Moreover, allegations are not evidence and cannot defeat summary judgment if the movant has met his burden. Fed. R. Civ. P. 56(c)(1), (e); *Celotex*, 477 U.S. at 324. Finally, there is no evidence indicating that the FBI or Oravec "misrepresented" the facts of the case to either AUSA Kohn or the CVCP. SOUF,

¶¶ 14-30, 33. For these reasons, Plaintiffs have failed to demonstrate a violation of their Fifth Amendment rights.

## CONCLUSION

For the foregoing reasons, the FBI respectfully requests this Court to grant its motion, thereby awarding the FBI summary judgment as to Plaintiffs' equal protection claim and dismiss the Second Amended Complaint in its entirety, with prejudice.

Dated: March 29, 2019   Respectfully submitted,

          JOSEPH H. HUNT
          Assistant Attorney General

          C. SALVATORE D'ALESSIO, JR.
          Acting Director, Torts Branch

          RICHARD MONTAGUE
          Senior Trial Counsel

          */s/James G. Bartolotto*
          JAMES G. BARTOLOTTO
          Senior Trial Attorney

          */s/Kelly Heidrich*
          KELLY HEIDRICH
          Trial Attorney

          Torts Branch, Civil Division
          United States Department of Justice
          *Attorneys for the Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(d)(2)(E), I hereby certify that the foregoing

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT FBI'S**

**MOTION FOR SUMMARY JUDGMENT** complies with the word limitation

requirements set forth in L.R. 7.1(d)(2)(A) (*i.e.,* briefs are limited to 6,500 words)

and L.R. 7.1(d)(2)(C) (*i.e.,* TOC, TOA, and Ex. Index required if brief over 4,000

words). Using the word count function of Microsoft Word 2010©, the number of

words contained in this brief, excluding the caption and certificates of compliance

and service as allowed by L.R. 7.1(d)(2)(E), is: **5,699.**

Dated: March 29, 2019      */s/James G. Bartolotto*
                                    JAMES G. BARTOLOTTO
                                    Senior Trial Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2019, a true and correct copy of the

foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**

**FBI'S MOTION FOR SUMMARY JUDGMENT** was filed with this Court

electronically pursuant to L.R. 1.4(a) and served electronically pursuant to L.R.

1.4(c)(2), or by mail on any party to this action unable to accept electronic filing.

Notice of this filing will be sent by electronic mail (e-mail) to Plaintiffs' counsel

and all parties by operation of the Court's electronic filing system (ECF) or by

mail to any party unable to accept electronic filing. Parties may access this filing

through the Court's CM/ECF System. This Memorandum comports with L.R. 1.5,

7.1(b), 7.1(d)(1)(A), 7.1(d)(2), and 56.1(a).

*/s/James G. Bartolotto*
JAMES G. BARTOLOTTO
Senior Trial Attorney
